IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In Re:

| | | |
|---|---|---|
| COUNTRYWIDE HOME LOANS, INC., | : | Misc. No. 07-00204 TPA |
| f/k/a COUNTRYWIDE FUNDING CORP., | : | Chapter 13 |
| | : | |

## CERTIFICATION OF TRANSCRIPT

**AND NOW**, this **10th** day of **March, 2008**, it is hereby **CERTIFIED** that the accompanying transcript of the proceeding held on **February 28, 2008** in regards to the Argument on *Objections to Notices of Examination* Document No. 12 and *Motion to Quash* Document No. 13 in the above-captioned matter is the official transcript of record. This Certification is preliminary, and the transcript is subject to appropriate correction following a complete review of its content by the Court.

Thomas P. Agresti
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION


IN RE:                        )    CASE NO:  07-204-TPA
                              )
                              )    Pittsburgh, Pennsylvania
COUNTRYWIDE HOME LOANS, INC,  )
                              )    Thursday, February 28, 2008
                              )     (8:45 a.m. to 11:00 a.m.)
          Debtor.            )
─────────────────────────────)

ARGUMENT ON OBJECTIONS TO NOTICES OF EXAMINATION
AND MOTION TO QUASH

BEFORE THE HONORABLE THOMAS P. AGRESTI,
UNITED STATES BANKRUPTCY JUDGE


Appearances:              See next page

Court Recorder:           Irene Wenzel

Video Operator:           Jeff Furis

Transcribed By:           Exceptional Reporting Services, Inc.
                          14493 South Padre Island Drive
                          Suite A-400
                          Corpus Christi, TX 78418-5940
                          361 949-2988







Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

**APPEARANCES:**

For Countrywide:                THOMAS A. CONNOP, ESQ
                                Locke Lord Bissell & Liddell
                                2200 Ross Avenue, Suite 2200
                                Dallas, TX 75201

                                DOROTHY A. DAVIS, ESQ
                                Eckert Seamans Cherin & Mellott
                                44th Floor, U.S. Steel Tower
                                600 Grant Street
                                Pittsburgh, PA 15219

                                - And -

                                CHARLES TOWNSEND, ESQ
                                (In-house counsel)

For U.S. Trustee:               LEONARD J. DE PASQUALE, ESQ
                                Executive Office for U.S. Trustee
                                20 Massachusetts Avenue, N.W.
                                Washington, DC 20530

                                NORMA HILDENBRAND, ESQ
                                Office of the U.S. Trustee
                                Suite 960, Liberty Center
                                1001 Liberty Avenue
                                Pittsburgh, PA 15222

1      **Pittsburgh, PA; Thursday, February 28, 2008; 8:55 a.m.**

2                        **(Call to Order)**

3           **THE COURT:**  Good morning; please be seated.

4           All right.  This is the time set for the Argument on

5      Objections to Notices of Examination and the Motion to Quash

6      filed by Countrywide at Document Numbers 12 and 13 in

7      Miscellaneous Matter Number 07-204.  At this time I'd like all

8      of the attorneys in the courtroom representing the various

9      parties to enter your appearances.

10          **MR. CONNOP:**  Good morning, your Honor; Tom Connop of

11     Locke Lord Bissell and Liddell; Dallas, Texas, on behalf of

12     Countrywide Home Loans, Inc.  Appearing with me is Dorothy

13     Davis of Eckert Seamans.  Also at counsel table is Charles

14     Townsend, in-house counsel with Countrywide Home Loans.

15          **THE COURT:**  Thank you.

16          **MS. DAVIS:**  Good morning, your Honor.

17          **THE COURT:**  Good morning.

18          **MR. DePASQUALE:**  Good morning, your Honor; Leonard

19     DePasquale for the United States Trustee and accompanying me is

20     Norma Hildenbrand for the United States Trustee.

21          **THE COURT:**  Thank you, Counsel.

22          Before we get started on the argument itself, I'd

23     like to put on the record the fact that we met via telephonic

24     conference -- I'd like to say Monday, maybe it was Tuesday; I

25     can't recall but in any event we had all parties represented to

4

```
 1   work out, informally, some issues related to the exhibit books

 2   so that we could begin promptly at 9:00 and spend the next two

 3   hours, if we need that long, hard at work at the arguments on

 4   the various pleadings that are pending.  Since that time I

 5   received a Motion to Accept New Exhibit 49 which appears to

 6   have met the substance of the original Countrywide objection

 7   during the telephone conversation, but I'm not going to presume

 8   anything.

 9          Mr. Connop, do you have any objection to the motion,

10   the motion being granted?

11          MR. CONNOP:  Your Honor, the only observation

12   Countrywide would make is that there is an additional page that

13   was -- according to the United States Trustee, not part of the

14   original facsimile that was transmitted by Mr. Miscavage's

15   office, if I understand the Trustee correctly.  That would be

16   an e-mail from a Christopher Ammon to Mr. Miscavage.  Your

17   Honor, nonetheless, Countrywide's not going to object to

18   Exhibit 49.  If the U.S. Trustee wishes to use it and argue,

19   that's fine.

20          THE COURT:  Thank you.  All right.  Then we will

21   grant that request to admit it and sign that order.

22      (Exhibit 49 admitted)

23          Also, we had some objections ... I'm not sure if

24   we've resolved.  Let me go through the specific objections of

25   Countrywide to the U.S. Trustee's exhibits.
```

1           The first objection that's filed -- I don't have the

2    document number -- Objection A on that pleading which is dated

3    February 21st, 2008 appears to be the issue of Exhibit 49;

4    that's been resolved.  Is that a fair statement, Mr. Connop?

5           **MR. CONNOP:**  Yes, it is, your Honor.

6           **THE COURT:**  All right.  Exhibits from the Roberts'

7    case should not be admitted.  That too, I understand, has been

8    resolved because Roberts is to be withdrawn and we agreed that

9    we would sustain that during the telephone conversation.

10          Mr. DePasquale, is that a fair statement?

11          **MR. DePASQUALE:**  Yes, your Honor.

12          **THE COURT:**  All right, then, Item C:  "Additional

13   exhibits from proceedings in other jurisdictions should not be

14   admitted."  How has that been resolved, if at all?

15          Mr. Connop, has that been resolved -- all right, let

16   me go to Mr. De -- Mr. Connop, it's your objection; I'll let

17   you address that.

18          Mr. Connop?

19          **MR. CONNOP:**  Thank you, your Honor.

20          Your Honor, in consideration of the issues that are

21   before the court today; specifically directed to the United

22   States Trustee's powers, we are not going to object to the

23   introduction of the additional exhibits from the two Florida

24   proceedings.  We'll be happy to argue to the extent those are

25   relevant -- the impact of those orders and other related

1    matters.

2            **THE COURT:**  All right, very good.  So you withdraw

3    that Objection C, then?  Is that a fair statement?  You're

4    going to continue being able to reference and use your Exhibits

5    S, T and U and you will withdraw your exhibit --

6            **MR. CONNOP:**  That --

7            **THE COURT:**  -- your objection?  Go ahead.

8            **MR. CONNOP:**  That is correct, your Honor.

9            **THE COURT:**  All right.  Very good.  So all the

10   objections to the exhibits have now been either -- well, all

11   resolved.  Is that a fair statement?

12           Mr. Connop?

13           **MR. CONNOP:**  From Countrywide's standpoint, that's

14   correct, your Honor.

15           **THE COURT:**  How about the U.S. Trustee's objections?

16   Mr. DePasquale, you had some --

17           **MR. DePASQUALE:**  I believe they were all resolved,

18   your Honor.

19           **THE COURT:**  In your objections you've also indicated

20   a request to withdraw all exhibits pertaining to the Ramsey

21   case, Number 01-31062, the Ennis case, Case Number 05-1195 and

22   the Roberts case, Number 05-25324; and all the exhibits in

23   regards to those three cases, specifically Exhibits 12 through

24   29, Exhibits 102 through 121 and Exhibits 156 through 172,

25   respectively.

1              Is that a fair statement, Mr. DePasquale?

2         **MR. DePASQUALE:**  Yes, your Honor.

3         **THE COURT:**  I will grant that request.

4     **(Request granted)**

5              Now, apparently Countrywide, you've objected to S, T

6    and U but alternatively you indicated in paragraph 4 of your

7    objection that, in the event S, T and U are permitted, you'd

8    like to provide documentation regarding the Del Castillo and

9    Chadwick cases from Florida -- and it sounds like Countrywide

10   has no objection, Mr. DePasquale.  Would you like to submit

11   those exhibits?

12        **MR. DePASQUALE:**  Yes, your Honor.

13        **THE COURT:**  And then withdraw your objection to S, T

14   and U?

15        **MR. DePASQUALE:**  That is correct, your Honor.

16        **THE COURT:**  Okay.  We will rule accordingly.

17     **(Objection to S, T and U ruled withdrawn)**

18             All right.  Based on that, all of the exhibits,

19   subject to the rulings we just made, will be offered and

20   admitted for purposes of this proceeding, argument and then

21   ultimate decision by the court.

22             With that, Mr. Connop, we'll let you begin.  Again,

23   it's your pleasure if you'd like to stand at the podium or

24   remain seated.  Whatever you'd like to do or you feel more

25   comfortable doing, it's up to you, but go ahead.  Tell me why I

1   should grant your request to have the Objections to the Notices

2   of 2004 Exam granted and the Motion to Quash Subpoenas granted.

3          **MR. CONNOP:**   Thank you, your Honor.

4          A brief overview of the seven remaining cases that

5   are at issue in this consolidated miscellaneous proceeding,

6   those cases are the Topper case -- which apparently from the

7   U.S. Trustee's perspective involves the denial of a motion for

8   relief from stay without prejudice that had been filed by

9   Countrywide on August 20th of 2006.  Mr. Topper, the debtor,

10  was discharged approximately one year later on August 24th of

11  2007.

12         The next case is the *Carleski* case which, according

13  to the U.S. Trustee, the issue that it believes exists consists

14  of three motions to dismiss that were filed by Countrywide

15  because the Carleskis were serial filers.  Two of those motions

16  were dismissed for failure to comply with a Local Rule of this

17  District.  The third was withdrawn.  These motions to dismiss

18  were all filed three years ago.

19         *Benvenudo* case, your Honor, is a third.  That case,

20  the issue apparently involves a motion to determine if mortgage

21  is current, filed by the debtor April 17th of 2007.  That

22  motion was resolved by a consent order May 24th of 2007, and

23  the debtor was discharged June 8th of 2007.

24         The *Stemple* case apparently involves, from the U.S.

25  Trustee's perspective, a claim objection that was filed by the

1  debtor in November of 2003.  Countrywide filed a response in an

2  amended claim, and the debtors withdrew their objection to that

3  claim.  Subsequently, there was a notice of change in monthly

4  payment submitted to the debtor, to which the debtor objected.

5  The Court denied Countrywide's request to increase the debtor's

6  payment.

7       The fifth case, the *Olbetor* case, involved a motion

8  for relief from stay filed from Countrywide.  Although the U.S.

9  Trustee has advised the Court that this involves a failure to

10  remit payment of pre-petition arrears, in fact this case

11  involved and the motion for relief from stay dealt with the

12  failure to receive post-petition payments from the Chapter 13

13  Trustee.

14       The issue, according to the Court's docket in that

15  matter, involved the Chapter 13 Trustee's position that

16  Countrywide had not filed a proof of claim and that she was

17  unable to determine the address to remit the payments.

18  Countrywide in fact filed a proof of claim on July 2nd of 2005,

19  and the Chapter 13 Trustee began remitting payments in August

20  of 2005.

21       The *Bach* case involves a motion for relief from stay.

22  The Bachs had their case converted to a Chapter 7 in March of

23  2006, and they subsequently reaffirmed their mortgage debt.

24  They missed post-petition, post-conversion payments, and

25  Countrywide filed a motion for relief from stay.  That motion

1   for relief from stay was denied.  The grounds for the denial

2   were not stated by the Court in its order.  The Bachs were

3   discharged June 15th of 2006.

4        The seventh case, and the single case with a pending

5   contested matter, is the *Hill* case with which the Court is

6   familiar; a motion to enforce discharge.  This is a contested

7   matter under Rule 9014.  Following the Court's rulings over the

8   past month and a half, the parties are now engaging in

9   discovery, not under Rule 2004 but rather under Federal Rule of

10  Civil Procedure 30 as incorporated in Rule 9014.

11       Of these seven cases, your Honor, three were

12  discharged and closed; *Topper, Benvenudo,* and *Bach*.  *Benvenudo*

13  involved a consent order negotiated by debtor's counsel.

14       Three of these cases involve contested motions,

15  contested motions that were adjudicated by the Court, responded

16  to by the debtor; *Stemple*, *Topper,* and *Olbetor*.

17       Two of these matters involve nothing having to do

18  with the specific pre-petition debtor/creditor relationship;

19  *Carleski*, involving serial filers; and *Olbetor*, involving post-

20  petition Trustee plan payments.

21       The notices of Rule 2004 examination filed by the

22  United States Trustee have now been consolidated into a single

23  notice and subpoena.  These notices call for wide-ranging

24  document requests dealing with the protocols, policies, and

25  procedures of Countrywide in a variety of matters; the

1    protocols and procedures for receiving, processing, handling

2    accounting, and applying for payments; for drafting, verifying,

3    and filing proofs of claim; for the collection of debts,

4    including any communications that Countrywide had with debtors

5    -- and that's policies and procedures with any debtor, not

6    these specific debtors; policies and procedures regarding

7    filing of motions for relief from stay.

8            Finally, there are some specific documents that were

9    requested; the note and mortgage for each debtor and the

10   payment history for each debtor.

11           There are four other categories of documents dealing

12   with the preparation and support for proofs of claim apparently

13   filed in each of the seven remaining cases; all documents

14   supporting the amounts claimed, apparently also in each of the

15   seven cases; all internal and external communications regarding

16   the debtors; and all documents regarding Countrywide's attempts

17   to collect on debts owed by the debtors.

18           These categories of documents requested are not tied

19   to the specific issues apparently identified by the United

20   States Trustee.  They do not ask, for example, why Countrywide

21   filed three serial motions to dismiss the *Olbetor* case.  They

22   do not ask the basis for the allegations contained in the

23   debtor's motion to deem mortgage current.  Rather, they seek

24   documents that pertain to overall policies and procedures of

25   Countrywide whether or not relevant to the issues that the U.S.

1    Trustee has identified.

2         Moreover, there are no open issues in any of these

3    cases other than the *Hill* case, and that matter is being

4    addressed by the Court and by the parties through discovery

5    conducted not only by the U.S. Trustee, but by the Chapter 13

6    Trustee and the debtor herself.  That discovery is in process.

7    The parties, including the debtor, are very actively

8    participating in prosecuting that motion.  Indeed, your Honor,

9    that is the adversary process within the bankruptcy context

10   that is supposed to work.

11        And indeed, I think it is correct to say, your Honor,

12   that in virtually all cases, indeed the cases that have been

13   cited as examples by the U.S. Trustee in which they seek to

14   examine, the debtors have actively participated in those cases.

15   This is not a matter where the debtors have ignored what they

16   perceive to be deficiencies or inaccuracies in pleadings by

17   Countrywide.

18        The topics that the U.S. Trustee wishes to examine

19   are similarly broad-ranging.  They deal with the application of

20   payments in all Chapter 7 and Chapter 13 bankruptcies

21   administered by Countrywide; Countrywide's policies and

22   procedures for filing proofs of claim; for filings motions for

23   relief from stay; for collection on accounts; its treatment of

24   mortgage arrearages; calculation of escrow accounts and

25   disbursements from escrow accounts; the media for storage of

1   customer records, its handbooks and training materials; and

2   then finally, the examination topic of questions regarding the

3   documents that had been requested.

4          On November 20th, the Court issued an order directing

5   the parties to brief 12 issues.  Countrywide attempted to

6   collate those issues into three general topics in order to, we

7   believe, focus the argument.  The first is the source and

8   extent of the U.S. Trustee's power to conduct an investigation

9   of a party in interest.  We then turned to the limits on the

10  breadth of the discovery proposed by the U.S. Trustee.  And

11  finally whether, as the Court called them, 'the context cases',

12  pointed to a systemic abuse of the bankruptcy system.

13         The overriding question, your Honor, that Countrywide

14  submits must be addressed is the first.  Does the U.S. Trustee

15  have the power to conduct an investigation, which is what the

16  U.S. Trustee now terms its 2004 process, to conduct an

17  investigation into the policies, procedures, systems, and

18  practices of a non-debtor party in interest -- in this case, a

19  creditor -- in the absence of any outstanding issue in a case?

20         The answer to that question, your Honor, based upon

21  the statutory authority granted to the U.S. Trustee,

22  particularly when read in context with the Bankruptcy Code and

23  other federal statutes governing agencies, is a resounding

24  'No'.

25         Nowhere in the numerous statutory references that the

1    U.S. Trustee has cited and that have also been cited by

2    Countrywide, is there a single reference to or grant of power

3    to the U.S. Trustee to conduct the investigation that the U.S.

4    Trustee wishes to launch in these cases.  The organic statute

5    governing the U.S. Trustee's duties and powers is Section

6    586(a)(3) of Title 28.

7            Under that statute, the U.S. Trustee is empowered to

8    review applications for compensation and file comments; to

9    monitor Chapter 11 plans and disclosure statements and file

10   comments; to monitor plans filed under Chapters 12 and 13 and

11   file comments; to take actions to ensure that reports,

12   schedules, and fees are properly and timely filed; to monitor

13   creditors committees; to notify the U.S. Attorney of matters

14   that may involve crimes; to monitor the progress of cases; to

15   perform certain additional duties in the context of small

16   business cases; and to monitor employment applications.

17           Now, as the U.S. Trustee points out, there are

18   additional specific directions in the Bankruptcy Code as to

19   matters that the U.S. Trustee can become involved in.  We

20   counted 27 separate Code sections that dealt with those powers

21   and duties.

22           Without enumerating each of those sections, the U.S.

23   Trustee is, for example, empowered to review, comment on

24   applications for employment and fee applications for

25   professionals hired by the estate.  They are empowered to take

1    actions against bankruptcy petition preparers, appoint interim

2    Trustees, preside at creditors meetings and examine the debtor;

3    to consult with creditors committees and appoint creditors

4    committees; and to request the appointment of a Trustee or

5    examiner in Chapter 11 cases; and request the removal of

6    Trustees.

7            Now, this is just a small delineation of the number

8    of specific duties that the U.S. Trustee has, as well as its

9    powers.  However, additionally, specifically in reference to

10   Chapter 13 proceedings, the U.S. Trustee has the power to

11   appoint the standing Chapter 13 Trustee and to request

12   conversion or dismissal of a Chapter 13 case.

13           Conspicuously and noticeably absent from all of those

14   statutory grants of powers and authorities is any authority

15   granted to the United States Trustee to investigate the affairs

16   of a creditor.  Indeed, the examination of parties in interest

17   by the United States Trustee is mentioned in only two sections

18   of the Code; Section 343, which empowers the United States

19   Trustee to convene and preside over the examination of the

20   debtor; and its power to investigate debtors under Section

21   27(c) in connection with the debtor's right to a discharge.

22           The United States Trustee however, argues that its

23   broad source of power is created by Section 307 of the

24   Bankruptcy Code.  It argues that that broad grant of power is

25   effectively unlimited, noting that Congress, in its view, knows

1    how to limit powers of the United States Trustee or other

2    governmental agencies when it chooses.

3         Countrywide would also posit, your Honor, that

4    Congress, when it enacted the Bankruptcy Code, knew also how to

5    authorize the conduct of investigations.  There are four

6    specific Code sections which deal with investigations, in

7    addition to the two that I just cited, that address the United

8    States Trustee's powers.

9         Chapter 7 Trustees are empowered to conduct

10   investigations.  I would cite the Court to Section 704(a)(4),

11   which permits the Chapter 7 Trustee to investigate the

12   financial affairs of the debtor.

13        Creditors committees appointed under Section 1103

14   likewise are authorized to conduct investigations.  That

15   statute states that a committee appointed under Section 1102 of

16   the Title may investigate the acts, conduct, assets,

17   liabilities, and financial condition of the debtor, the

18   operation of the debtor's business, and the desirability of the

19   continuance of such business, and any other matter relevant to

20   the case or to the formulation of a plan.

21        Chapter 11 examiners are likewise empowered to

22   conduct investigations under Section 1104(c), which states if

23   the Court does not order the appointment of a Trustee under

24   this Section, then at any time before the confirmation of a

25   plan, on request of a party in interest and after notice and a

1    hearing, the Court shall order the appointment of an examiner

2    to conduct such an investigation of the debtor -- of the debtor

3    -- as is appropriate, including an investigation of any

4    allegations of fraud, dishonesty, incompetence, misconduct,

5    mismanagement, or irregularity in the management of the debtor

6    of or by current or former management of the debtor.  And even

7    then, the examiner may conduct that investigation only if it is

8    in the interest of creditors, equity security holders, and

9    other interests of the estate, and, if the debtor's debts

10   exceed the sum of $5 million dollars.

11         Finally, Trustees under Chapter 11 are empowered to

12   conduct examinations, investigations, under 1106(a)(3).  That

13   Code section permits a Chapter 11 Trustee, except to the extent

14   the Court orders otherwise, to investigate the acts, conduct,

15   assets, liabilities, and financial condition of the debtor, the

16   operation of the debtor's business, and the desirability of the

17   continuance of such business, and any other matter relevant to

18   the case or to the formulation of a plan.

19         Congress dealt with investigations.  It dealt with

20   those investigations in four Code section; 704, 727, 343, 1103,

21   1104, and 1106.  Notably, only two of those Code sections deal

22   with the powers of the United States Trustee.

23         Nowhere in Title 28, Section 586 or Title 11 is the

24   United States Trustee empowered to conduct investigations of

25   creditors or other parties in interest under Title 11.

1          Your Honor, in addition to the limitations, or

2    absence I should say, of statutory authority to the United

3    States Trustee, Congress likewise knew how to empower other

4    federal agencies with the ability to conduct investigations.

5    The United States Trustee, for example, at one part of its

6    brief, notes that Congress' limitation of Title 11 powers

7    extends to the Securities and Exchange Commission, in Section

8    1109(a).

9          We examined the United States Code and the allocation

10   of powers to investigate and conduct investigations granted by

11   Congress in specific sections of federal law.  The Securities

12   and Exchange Commission, for example, is authorized to have the

13   power to conduct investigations, investigations specifically,

14   summon witnesses, and order production of documents; 15 U.S.C.,

15   Section 77(s) and 78(u).

16         The Commodities Futures Trading Commission is

17   empowered to conduct investigations, demand information, issue

18   subpoenas, demand production of documents, administer oaths,

19   and appoint administrative law judges.  That authorization is

20   found at 7 U.S.C., Sections 2 and 15.

21         The Consumer Products Safety Commission is authorized

22   to investigate injury data and issue rules and regulations; to

23   inspect, upon written notice, any factory, manufacturing

24   center, or warehouse.  That is found at 15 U.S.C., Section

25   1065.

1          OSHA is empowered to inspect work places, question

2    employees and employers, review records of inspected

3    businesses; 28 U.S.C., Section 657.

4          The Occupation Safety and Review Commission is

5    empowered to investigate safety violations by summoning

6    witnesses and requiring the production of documents.

7          The EPA can issue subpoenas for the production of

8    witnesses or documents, inspect records of polluting

9    facilities, conduct criminal investigations, inspect

10   facilities, documents, and records to ensure compliance with

11   regulations.

12         The NLRB is empowered to investigate unfair labor

13   practices.

14         The National Transportation Safety Board is empowered

15   by Congress to conduct hearings and subpoena witnesses.

16         The list goes on, your Honor.  The Federal Election

17   Commission; the Department of the Interior; Department of

18   Health and Human Services; the Equal Employment Opportunity

19   Commission; the Department of Transportation; the Surface

20   Transportation Board; the Federal Aviation Administration; the

21   Transportation Security Administration; the SBA; and the

22   Federal Reserve.  Each of those federal agencies, your Honor,

23   has been specifically empowered by statute, by Congress, to

24   conduct investigations, issue subpoenas, examine witnesses, and

25   compel the production of documents.

1           As the Trustee contends that Congress that knew how

2     to limit its powers, so too did Congress understand how to

3     grant powers, and the power that it did not grant to the United

4     States Trustee is the power to examine the internal business

5     affairs and policies of a creditor or any other party in

6     interest.

7           We are focused in this proceeding, your Honor, on

8     Countrywide, but the effect of what the U.S. Trustee seeks to

9     accomplish here is much further ranging than Countrywide.

10    Countrywide does appear in many Chapter 13 cases before this

11    Court and before other Courts.  However, the authority and the

12    power that the U.S. Trustee wishes to exercise in this case

13    will extend far beyond Countrywide, but can extend, according

14    to the U.S. Trustee's hypothesis, to any party in interest

15    regardless of their particular interest in the Chapter 13 case

16    or in a case under Chapter 7, Chapter 11, Chapter 12, or

17    Chapter 9.

18          Unquestionably, the Office of the United States

19    Trustee is an agency that is located under the Executive

20    Department of the United States Government.  A well-reasoned

21    examination of the United States Trustee's status as an agency

22    is set forth in *In Re: Vance* cited in our pleading.  It is 120

23    Bankruptcy Reporter, 181.

24          It is well-settled, your Honor, that an agency can

25    only act within the framework specifically granted to it by

1   Congress.  The United States Supreme Court spoke to that issue

2   in *Ragsdale versus Wolverine Worldwide*, a case involving the

3   Family Medical Leave Act, where the Department of Labor argued

4   that a regulation extended to override certain employer-granted

5   medical leave provisions.

6        The Supreme Court stated regardless of how serious

7   the problem an administrative agency seeks to address, however,

8   it may not exercise its authority in a manner that is

9   inconsistent with the administrative structure that Congress

10  enacted into law.

11       The Court of Appeals for the District of Columbia

12  Circuit has also written on this topic, your Honor, in a case

13  dealing with the Environmental Protection Agency and, as noted,

14  the Environmental Protection Agency is at least an agency that

15  has been specifically authorized by Congress to conduct

16  investigations.  That case involved a dispute over the EPA's

17  authority to enact Clean Air Act permit programs in lands where

18  a designation as Indian country was in question.

19       Much as the United States Trustee in this case has

20  cited as the basis for its power legislative history and

21  submits a self-enacted mission statement granting it the

22  authority to act as watchdog, the EPA in *Michigan versus EPA*

23  cited as its basis for authority its own statement in a

24  regulation it enacted that empowered it to take that action.

25       The language of the District of Columbia Court of

1    Appeals is very significant, and it dates back to the founding.

2    It is elementary that our federal government is one of limited

3    and enumerated powers.  The powers to the legislature are

4    defined and limited, and that those limits may not be mistaken

5    or forgotten the Constitution as written, citing *Marbury versus*

6    *Madison*.

7            This principle applies with equal force to the so-

8    called modern administrative stake.  EPA is a federal agency, a

9    creature of statute.  It has no Constitutional or common law

10   existence or authority but only those authorities conferred

11   upon it by Congress.  It is axiomatic that an administrative

12   agency's power to promulgate legislative regulations is limited

13   to the authority delegated by Congress, citing *Bowlen versus*

14   *Georgetown University Hospital*, and going on: Thus, if there is

15   no statute conferring authority, a federal agency has none.

16           The Court further stated that mere ambiguity in a

17   statute is not evidence of the Congressional delegation of

18   authority, and courts are not to presume a delegation of power

19   in the absence of an express withholding of such power.

20   Essentially, that is what the United States Trustee asks this

21   Court to do in its interpretation of 11 U.S.C., Section 307.

22           **THE COURT:**  Mr. Connop.

23           **MR. CONNOP:**  Yes, your Honor.

24           **THE COURT:**  Could you give me the cite to that

25   *Michigan versus EPA*.  I don't think that's in your brief, and

1    you didn't mention it in your presentation.

2         **MR. CONNOP:**  Your Honor, I do think it is in our

3    brief, your Honor.

4         **THE COURT:**  Is it?

5         **MR. CONNOP:**  Yes.

6         **THE COURT:**  All right, if it is, then we'll find it.

7    We'll find it.  I didn't --

8         **MR. CONNOP:**  But I can give it to your Honor.  It's

9    268 F.3d 1075.

10        **THE COURT:**  Date?  Year?

11        **MR. CONNOP:**  October 30, 2001, your Honor.

12        **THE COURT:**  That's the one.  Thank you, okay.

13        **MR. CONNOP:**  I have just mentioned Section 307 of the

14   Code, your Honor.  The Trustee believes that that Section of

15   the Code grants it, effectively, as I read its brief, unlimited

16   power, except it is restricted from filing a plan of

17   reorganization.  That statute states 'The United States Trustee

18   may raise and may appear and be heard on any issue in any case

19   or proceeding under this Title' -- And that's important

20   language which I will quote to your Honor again in a moment --

21   'but may not file a plan pursuant to 1121(c) of this Title.'

22        That section, according to the United States Trustee,

23   is the alpha and omega of its powers; beginning, the end.  It

24   can do anything.  'It can appear and be heard on any issue in

25   any case or proceeding under this Title.'  Countrywide submits

1   that that is not an appropriate interpretation of that statute

2   to use as a basis to conduct creditor investigations.

3            Indeed, if the United States Trustee's interpretation

4   is correct, there is no need for the specific grants of power

5   and duties that are indicated by Congress in the 27 separate

6   Code provisions that are cited in both the U.S. Trustee's and

7   Countrywide's briefs.  The U.S. Trustee would have no need to

8   resort to the statutory authority to monitor committees; it

9   could do that anyway.  It could clearly appoint committees;

10  it's entitled to raise and be heard on any issue; monitor and

11  comment on fee applications; move for dismissal or anything

12  else that arises in the context of a case filed under Title 11.

13           By analogy, I mentioned earlier in my argument, the

14  United States Trustee points to Section 1109(a) in which

15  similar authority is granted to the Securities and Exchange

16  Commission in Chapter 11.  But the United States Trustee

17  ignores the grant of Section 1109(b), and that's a very

18  important provision to distinguish between the powers that the

19  U.S. Trustee purports to assume in this case and the authority

20  granted to any party in interest in a Chapter 11 case.

21           1109(b) provides that a party in interest, including

22  the debtor, the Trustee, a creditors committee, an equity

23  security holder's committee, a creditor -- a creditor -- an

24  equity security holder, or any indenture Trustee may raise and

25  may appear and be heard on any issue in a case under this

1  chapter.  That is identical language to the language of Section

2  307 that the United States Trustee cites as the source of its

3  organic authority to conduct the 2004 investigations and

4  subpoenas in this matter.

5        Accepting the U.S. Trustee's postulate, were this a

6  Chapter 11 case, any creditor, any party in interest, no matter

7  what the stake of that creditor in the case, could examine any

8  other creditor, without the context of an adversary proceeding

9  or a contested matter, to investigate that creditor's actions

10 not only in connection with that case but, indeed, in

11 connection with that creditor's involvement in any other Title

12 11 matter or Chapter 11 matter.

13       The Court needs to reconcile the broad scope of the

14 U.S. Trustee's assumed power with the scope of any creditor or

15 party in interest's power which would presumably be co-

16 extensive with that granted to the United States Trustee in a

17 Chapter 11.  Your Honor, we'd submit that looking at those two

18 statutes as well as 1109(a), renders the U.S. Trustee's

19 interpretation of Section 307 incorrect.

20       Further, taking the U.S. Trustee's position to its

21 logical conclusion, granted the powers it assumes under Section

22 307 to raise, appear, and be heard on any issue in a case under

23 Title 11, the U.S. Trustee could file adversary proceedings on

24 a debtor's behalf, could sue the debtor's management, could

25 move for relief from the automatic stay, could move for

1    authorization for the debtor to use, sell, or lease property of

2    the estate.  It could on its own behalf file transfer avoidance

3    actions, powers that are clearly understood to extend to the

4    debtor and not to the office of the United States Trustee.

5           Simply put, your Honor, in its brief the United

6    States Trustee admits to no power -- no limitation whatsoever

7    on its powers under Title 11.  This is a Constitutional

8    government.  The United States Trustee's authority is generated

9    by federal statute.  As we noted above, if Congress intended

10   the United States Trustee to have the power to investigate non-

11   debtor's conduct, it would have granted that power.  It did

12   not.  Congress knew how to grant the power to investigate to

13   other federal agencies.  It did.  The same power is not granted

14   to the office of the United States Trustee.

15          Your Honor, specifically turning to the attempt to

16   conduct these examinations under Rule 2004, notwithstanding

17   what we believe to be the utter lack of authorization under

18   statute to conduct these investigations, it is clear that under

19   Rule 2004, the United States Trustee has no greater rights than

20   those afforded to any other creditor or party in interest.  Its

21   examination may only relate to the acts, conduct, property,

22   liabilities, or financial condition of the debtor or to any

23   matter which might affect the administration of the debtor's

24   estate or to the debtor's right to a discharge.

25          The U.S. Trustee must also show good cause for taking

1   the examinations.  Good cause has been defined as the

2   examination being necessary for the protection of a legitimate

3   interest.  We would submit that in the absence of statutory

4   authority to conduct the very investigation that the United

5   States Trustee attempts to conduct, there is no interest that

6   is affected.

7        Good cause may also be found if it's necessary to

8   establish a claim of the examiner or if denial of the

9   examination would cause undue hardship.  The U.S. Trustee has

10  no claim in these cases, and the U.S. Trustee has shown no

11  hardship.  What is known and what is certain is that good cause

12  does not exist when there are no remaining issues affecting the

13  administration of the estate.  That is clearly the case here.

14       In each of these cases, with the exception of *Hill*,

15  the requested examinations will have no affect on the

16  administration of these Chapter 13 debtors' cases or their

17  estates.  Three have been closed and discharged.  The so-called

18  issues, and that is the mantra that the United States Trustee

19  seems to use, I quote, in each of its cases, quote, 'issues

20  remain.'  There are no issues.  There are no contested matters

21  save and except in *Hill*.  Matters have been resolved by the

22  debtor and by the creditor, Countrywide.  That is the process,

23  the adversary process, of the Chapter 13 system at work, and

24  that is how it is supposed to work.

25       Indeed, the *Hill* case is a prime example of how it

1    does work.  The debtor filed a motion to enforce discharge.  It

2    disagreed with the action Countrywide took.  The debtor has

3    served discovery pursuant to that motion.  The debtor has

4    actively participated in that case to enforce what the debtor

5    perceives as its rights and to what the debtor objects to on

6    the part of Countrywide.

7          That matter is a contested matter under Rule 9014.

8    It carries with it the protections and limitations of discovery

9    under Rule 7030.  That is not what the United States Trustee

10   seeks to do in this case; rather, these cases.  It seeks to

11   exhume long since retired matters in order to conduct some as

12   yet unstated investigation into the acts and conduct of

13   Countrywide.  If Countrywide is going to be called into an

14   examination room to answer questions to the degree that it has

15   been called under these subpoenas, Countrywide or any other

16   party in interest should be afforded some due process notice of

17   exactly what it is being investigated of, if indeed the

18   investigator has the power to conduct the investigation.

19         We would submit that the U.S. Trustee's attempt is,

20   as the Court in *Continental Forge Company* indicated, a device

21   to launch into a wholesale investigation of a non-debtor's

22   private business affairs.  That effort was specifically

23   rejected by this Court in the *Continental Forge* case.

24         **THE COURT:**  Mr. Connop, I have to interrupt there.

25   Just as an aside, did you notice who the attorneys were in that

1   case?

2         **MR. CONNOP:**  I did, your Honor.

3         **THE COURT:**  Very good; keep going.

4         **MR. CONNOP:**  All right.

5         Your Honor, I pointed out initially in my argument

6   the over-breadth of the document requests and examination

7   topics.  None of these document requests or examination topics

8   are specifically focused on the somewhat ambiguous issues that

9   the U.S. Trustee has proffered.  As I indicated, they don't ask

10  for an examination of a representative of Countrywide to tell

11  them why there were three motions to dismiss filed.  They don't

12  ask Countrywide to produce a witness to testify why a motion

13  for relief from stay was filed in the *Olbetor* case.  They don't

14  ask for a witness to testify why a proof of claim was filed in

15  any particular case or if there was merit to the debtor's

16  objection.

17        We cite the case *Koch versus Koch Industries*, 203

18  F.3d 1202, out of the Tenth Circuit.  This is not a case

19  involving the U.S. Trustee, and indeed, we're somewhat

20  hamstrung because there are no reported decisions involving the

21  U.S. Trustee in the broad, wide-ranging effort to take

22  discovery that it is seeking in this case.

23        But the Tenth Circuit noted in a very lengthy opinion

24  involving a family dispute over ownership of certain oil and

25  gas assets 'When a plaintiff first pleads its allegations in

1   entirely indefinite terms without knowing of any specific

2   wrongdoing by the defendant and then bases massive discovery

3   requests on those nebulous allegations in the hope of finding

4   particular evidence of wrongdoing, that plaintiff abuses the

5   judicial process.'

6          The language of the Tenth Circuit describes this

7   situation to a 'T'.  The allegations raised by the U.S. Trustee

8   or, as it puts it, 'nonetheless, issues remain', are not even

9   indefinite; they are absent.  The discovery requests are

10  predicated wholly, presumably, on these indecipherable

11  allegations.  We would submit, your Honor, that it is not

12  Countrywide in the context of its activities in these Chapter

13  13 cases that has abused the judicial process.  The abuse

14  occurs when an agency that is not empowered by statute presumes

15  to overstep the bounds of its statutory authority.

16          Finally, your Honor asked us to address whether the

17  context cases pointed to any situation of systemic abuse of the

18  bankruptcy system, and the answer to that, we submit, is 'No'.

19  The Court observed that, in its review of the CM-ECF database

20  in this District, Countrywide appeared as a creditor or as a

21  party in interest in over 5,000 cases and had filed, from the

22  Court's investigation, over 800 proofs of claim.  These cases

23  point to no systemic abuse of the system.

24          Three motions for relief; one was denied without

25  prejudice; one was precipitated by the Chapter 13 Trustee's

1   withholding of payments; and one was precipitated by a Chapter

2   7 debtor's post-conversion default.  One case involved a claim

3   objection; one case involved a motion to determine that

4   mortgage current; one involved motions to dismiss for serial

5   filings; and the final one, the *Hill* case, involved a motion to

6   enforce discharge.

7           The U.S. Trustee argues that the fact that these

8   cases were closed or that final orders were entered should not

9   bar its attempt to take discovery in this case.  The U.S.

10  Trustee cites several cases for that proposition at footnote

11  six of its brief.  We would submit that when read, your Honor,

12  those cases stand for substantially the opposite proposition.

13          The first case was *Adair versus Sherman*.  In that

14  case, a Chapter 13 debtor attempted to assert a Fair Debt

15  Collection Practices Act claim against the seller and financer

16  of an automobile.  The debtor contended that the creditor had

17  filed an inflated proof of claim and attempted to secure the

18  collateral back, and fees and costs associated with that,

19  through the filing of this over-inflated proof of claim.

20          The debtor had not objected to that proof of claim

21  before confirmation of its plan but instead attempted to attack

22  the proof of claim through a separate Federal Act violation

23  filed in federal court.  The Court, dealing with and denying

24  the debtor's attempt to end-run the *res judicata* effect of the

25  confirmation order, noted that the series of authorities it

1   cited led the Court to the conclusion that, when a proof of

2   claim is filed prior to confirmation and the debtor does not

3   object prior to confirmation, the debtor may not file a post-

4   confirmation collateral action that calls into question the

5   proof of claim, citing a case, *Justice Oaks*, an Eleventh

6   Circuit case in 1990, and the *Ross* case, which I don't see

7   immediately here, for that proposition.  I'll get the Court the

8   cite -- Oh, it's *In Re: Ross*, 162 B.R. 785.

9          The law is well-settled that a confirmation order is

10  *res judicata* as to all issues decided or which could have been

11  decided at the hearing on confirmation.

12         The Court went on to state, in short: 'The bankruptcy

13  process provides protection against fraudulent proofs of claim.

14  Mr. Adair, the debtor, had the opportunity to contest Sherman

15  and Sherman's proof of claim and practices related thereto in

16  the Bankruptcy Court.  Because he chose not to, he is barred

17  from doing so here.'

18         Similarly, in the *In Re: Knox* case, the Court there

19  held that a debtor could not prosecute in a separate action a

20  similar case asserted by the debtor in *Adair* when she had

21  already received the damages relief that she had sought by the

22  process of a proof of claim objection that she had actually

23  prosecuted.  The Court did note, however, that the damages

24  remedy was separate from any claim for 9011, violation of Rule

25  9011, and the debtor could pursue that separately.  It does

1  not, however, indicate that old cases long since disposed of

2  can be resurrected for the purpose of examination.

3        In each of these cases, they have been adjudicated,

4  the contested matters have been adjudicated, hearings held and

5  orders entered.

6        Your Honor, I thank you for your patience.  I'd like

7  to conclude.

8        In sum, the United States Trustee has pointed to no

9  statute that authorizes it to conduct investigations of parties

10  in interest or creditors.  Yet, four specific sections of the

11  Bankruptcy Code do authorize investigations by the Chapter 7

12  Trustee, by creditors committees, by examiners, and by

13  Trustees.  The U.S. Trustee is empowered to examine debtors at

14  the first meeting of creditors under 343 and to examine the

15  debtor on whether the debtor can obtain a discharge under

16  727(c).  The U.S. Trustee can point to no reported opinion that

17  has authorized it to conduct these investigations.

18        Section 307 requires issues; issues, matters that are

19  before the Court.  There are none in these cases with the

20  exception of the *Hill* case.  And the *Hill* case is a prime

21  example of how the adversary system works.  There is a

22  contested matter.  The parties are engaging in Rule 7030

23  discovery and other discovery presumably under the deposition

24  rules and other discovery rules in the Federal Rules of Civil

25  Procedure.

1          The debtor in that case has vigorously supported its

2   position.  The Chapter 13 Trustee, although the Court noted in

3   its recent order, has not moved for leave to intervene, has

4   that power and presumably will do so, as presumably will the

5   United States Trustee.  The propriety of their interventions

6   can be addressed when that issue is taken up.

7          I would submit to the Court that the ramifications of

8   the United States Trustee's interpretation of its power is

9   really staggering, and it doesn't relate simply to Countrywide.

10  It affects any party in interest in any case under Title 11

11  filed in any court.  Countrywide happens to be the subject of

12  this proceeding.  Other creditors and parties in interest have

13  the right to avoid an unreasonable intrusion into their

14  affairs.

15         As we noted in the materials that we submitted to the

16  Court, the U.S. Trustee is proceeding with parallel

17  investigations, or attempts to investigate, in two cases in

18  Florida.  The United States Trustee has threatened

19  investigations in other cases, yet its investigation is

20  directed overall to Countrywide, not to the specific issues in

21  these cases.

22         The Court has noted that there are 5,000 cases where

23  Countrywide is involved.  Who can guess how many are involving

24  other mortgage lenders, how many involve credit card companies,

25  how many involve Duquesne Power and Light, how many involve

1    automobile financing companies; companies that are regular

2    creditors in cases?

3         The U.S. Trustee presumes, without limitation, there

4    is no time limit on the look-back period that it seeks to

5    examine, resurrect and exhume old cases that have been

6    discharged, dismissed, and closed, and adversary proceedings

7    and contested matters that have been settled by the parties in

8    interest.

9         The toll on this system is substantial.  It is

10   inappropriate.  The U.S. Trustee in one of the Florida

11   proceedings, in attempting to address the burden on

12   Countrywide, made the following statement, which I found

13   telling.  This is Exhibit U of Countrywide, page 19, paragraph

14   52, in its argument that Countrywide would not suffer

15   irreparable injury if a stay is not granted.  I quote:

16   'Countrywide is a mammoth company.  It can afford to spend a

17   modest sum to explain why it filed an improper claim' -- I will

18   say allegedly improper claim -- 'and it can always go back to

19   the trial court if it develops evidence that its expenses are

20   really getting out of hand.  The motion to stay should

21   therefore be denied.'

22        Your Honor, the right of a creditor to be examined

23   where there is an appropriate statutory basis for the

24   examination is not a means test.  The fact that Countrywide is

25   a large company involved in a number of bankruptcy cases does

1    not, I submit, mean that the United States Trustee is empowered

2    to conduct examinations beyond its power, leaving Countrywide

3    or any other party in interest with the option of going back to

4    court if it's getting too expensive.  That is inappropriate.

5           Your Honor, the U.S. Trustee lacks the statutory

6    authority to conduct the discovery requested.  Even if it did,

7    the discovery it requested does not pertain to the issues that

8    it purports to identify.  Your Honor, we would submit that

9    these notices of examination and subpoenas should be quashed.

10          Additionally, your Honor, in our discussion of the

11   *Hill* case, I would point to the Court that that matter is a

12   contested matter, and the parties are entitled to conduct

13   discovery in that contested matter under Rule 9014, and the

14   parties are engaging in discovery.  If discovery is permitted

15   on an issue, a viable issue in a case, that is the vehicle for

16   conducting discovery, where the protections afforded by the

17   federal rules are available.

18          Your Honor, thank you for your time.

19          **THE COURT:**  Let me ask you one question.  Your last

20   comment, 'If discovery is effected based upon a viable existing

21   issue in a case'; is that what you're saying would be the only

22   time that the U.S. Trustee ever has an opportunity for

23   participation in a discovery because there's a contested matter

24   or an adversary matter pending?  Is that your position?

25          **MR. CONNOP:**  Your Honor has --

1          **THE COURT:**  Yes or no, and then explain it to me.

2          **MR. CONNOP:**  Yes.

3          **THE COURT:**  Okay.

4          **MR. CONNOP:**  And the reason, your Honor, is that

5    Congress granted the United States Trustee the power to

6    investigate; investigate in the two specific Code Sections I

7    cited.

8          Additionally, as your Honor noted last week or early

9    this week in your order governing intervention, if the U.S.

10   Trustee can establish the requisite ground rules or predicate

11   for intervention in a contested matter or intervention --

12         **THE COURT:**  I think I said appropriate pleading.  Now

13   you're putting words in my mouth.

14         **MR. CONNOP:**  I don't mean to --

15         **THE COURT:**  The order speaks for itself.

16         **MR. CONNOP:**  I understood.

17         **THE COURT:**  Okay, keep going, keep going, keep going.

18         **MR. CONNOP:**  The appropriate standards to --

19         **THE COURT:**  I said appropriate pleading.

20         **MR. CONNOP:**  Okay, the appropriate pleading --

21         **THE COURT:**  Go ahead.  Very careful how I chose my

22   words on that phrase.  Go ahead.

23         **MR. CONNOP:**  Thank you, and I apologize because I

24   don't have your order in front of me.

25         **THE COURT:**  All right.

1      **MR. CONNOP:**  But if it can establish by appropriate

2   pleading which, presumably, would also establish the

3   appropriate grounds for intervention, then it can conduct the

4   discovery it believes is relevant and that can lead to the

5   discovery of admissible evidence.  That's --

6      **THE COURT:**  Okay.  So your position is that the U.S.

7   Trustee never has the right to take a 2004 examination?

8      **MR. CONNOP:**  In the absence of a statutory

9   authorization or an issue.

10      **THE COURT:**  Okay.  If there's an issue; you're saying

11   issue equates to adversary proceeding or contested matter?

12   2004 exams are not available when you have adversaries or

13   contested matters?  You're relegated to your federal discovery

14   as authorized by the Federal Rules of Civil Procedure

15   incorporated into the Bankruptcy Procedure Rule context?

16      **MR. CONNOP:**  The answer to your question, your Honor,

17   is 'Yes.'  Investigations and examinations under Rule 2004 are

18   authorized to parties in interest to examine the acts and

19   affairs of the debtor to the administration of the bankruptcy

20   estate, not to the internal business affairs of a creditor.

21      Moreover, again, the -- I suppose that if the U.S.

22   Trustee can establish its role as a party in interest, although

23   Congress was very careful to identify the U.S. Trustee separate

24   from the role of party in interest in connection with the Code.

25   Otherwise, there would be no distinction between 1109(b) and

 1   Section 307.

 2          The U.S. Trustee can move and the Court can -- It's

 3   been an hour and my throat's getting dry -- can consider

 4   whether the circumstances are appropriate.  In this case, your

 5   Honor, I would submit they cannot.  They have not shown the

 6   requisite grounds or standing to step into these closed cases

 7   and conduct Rule 2004 examinations.

 8          **THE COURT:**  All right.  Thank you very much.

 9          Mr. DePasquale?

10          **MR. DEPASQUALE:**  Your Honor, with your permission, I

11   would like to rest on my briefs and just discuss briefly, very

12   briefly, standing and then answer any questions that the Court

13   may have.  I believe that my colleagues and I have well-briefed

14   the law and the issues of this case, so I'd rather use my time

15   to just answer your questions, if any.

16          With regard -- just some brief comments, your Honor,

17   though, on standing.

18          **THE COURT:**  Mr. DePasquale, I'll give you a little

19   heads up.  My questions will be few, if any.

20          **MR. DEPASQUALE:**  Great.

21          **THE COURT:**  Okay.  Just so you know.  So if you're

22   just going to rest on a few comments, don't count on me to ask

23   extensive questions.  I've asked a lot up to this point, and

24   I've read all the pleadings and all the briefs, and I have a

25   pretty good idea of what's going on.  But just to give you a

1   little heads up there, okay, so you're not surprised if there

2   are no questions, okay?

3          **MR. DEPASQUALE:**  Understood, your Honor.  It's been

4   well-briefed, and I hope that our brief has answered the 12

5   questions that you had placed to the parties.

6          With regard to standing, your Honor, it is clear the

7   six Circuits that have addressed this, including the Third

8   Circuit, and have held that we have broad statutory standing to

9   do a number of things.

10          With regard to our oversight responsibility, that is

11   incumbent upon us under 586 to supervise and monitor all

12   matters under Title 11.  There are, to my knowledge, Judge,

13   this issue with regard to our standing to rise and be heard,

14   has been addressed in Georgia in the *Miles* case which we cited.

15   In that case, we opted to object to venue, and the debtor in

16   that case said you had no standing under 307.  The Bankruptcy

17   Court in Georgia overruled that objection and specifically

18   cited 307.

19          Three other Judges, your Honor, who have heard this

20   issue on creditor abuse -- Judge Crystal in the *Del Castillo*

21   matter, as you're aware of; Judge Hymen in the *Chadwick* matter

22   -- have rejected these arguments and held that 307 is clear;

23   586 is clear.  We have the authority to raise and be heard on

24   any issue, except we cannot file a plan of reorganization.  I

25   cannot think of broader language that anyone could use to tell

1    the world what our standing and authority is.

2           When Congress created the United States Trustee

3    program, again, they empowered us and posed an obligation: You

4    will supervise and monitor and take those actions as you deem

5    appropriate to prevent delay of the process.  One cannot

6    imagine, given the legislative history to the United States

7    Trustee program which we've placed in our pleadings, from that

8    predicate where we are the watchdog, the broad statutory

9    standing in 307, that we cannot make inquiry into a creditor

10   abuse.

11          Yesterday -- or strike that -- the day before in

12   White Plains, in a case where we're litigating similar issues

13   against GMAC, Judge Harding, in what I would characterize as a

14   preliminary ruling, said that he believed we had standing under

15   307 and 586 to conduct a 2004 exam of GMAC.  The courts, the

16   Bankruptcy Courts that have addressed that issue, your Honor,

17   have all held that we have standing.

18          Countrywide wants the Government out of the creditor

19   abuse business, your Honor.  If the Government, if the United

20   States Trustee is expelled from the creditor abuse business,

21   creditors will be left to their vices with consumers who lack

22   the financial wherewithal to challenge and to remedy abuses of

23   the bankruptcy system because they do not have the economic

24   means.  That's an absurd proposition, your Honor, given the

25   history of the United States Trustee program from its inception

1    to now.

2           This Court is well aware that we take action against

3    debtors.  We bring actions under 329 against attorneys when the

4    value of their services is less than -- strike that -- the

5    value of their services is greater than what they provided to

6    their client.  This Court presumably hears a number of 329

7    actions to disgorge attorney's fees.  We examine bankruptcy

8    petition preparers.  We examine fees from creditors committees.

9    We examine and oversee all matters under Title 11 because

10   that's our obligation.  The law on that --

11          **THE COURT:**  Let me stop you.  Mr. DePasquale, I

12   apologize, but now you're saying things that -- Mr. Connop's

13   argument is, though, where you have statutory authority to do

14   all those things, you don't have statutory authority to do a

15   2004 exam.  Tell me where you get that authority and tell me

16   especially, when Rule 2004(a) says -- limits the rights, at

17   least ostensibly, on motion of any party in interest.

18          Mr. Connop says that Congress was very careful and

19   the rules are very clear that the U.S. Trustee is not a party

20   in interest and therefore, by its very terms, even if you have

21   standing in all these other matters, by its very term, Rule

22   2004 excludes the U.S. Trustee because it doesn't fit within

23   the definition.  Tell me why he's wrong.

24          **MR. DEPASQUALE:**  He's wrong, your Honor, because one,

25   respectfully, the rule cannot supersede the statute.  Congress

1   was clear when they said we can raise any matter in any case or

2   proceeding, presumably an implied task.  If I'm going to come

3   before you and say, 'Your Honor, under your inherent authority,

4   we ask that you issue an order to show cause why a creditor

5   should not be held in contempt or should not be sanctioned for

6   a litigation abuse'; if I'm going to raise that matter, I have

7   to do due diligence in an investigation.  To do that, I'm

8   relegated to the tools that are available to me, the procedural

9   tools in the rules, which are Rule 2004.

10        The case law in the Third Circuit, *United Artists v.*

11  *Walton* is what we cited on our brief, says that our standing is

12  broad, and, unlike a private party, your Honor, and this isn't

13  in *Walton* but, your Honor, a private party under the Supreme

14  Court case law, which we cite in our brief, has to demonstrate

15  a concrete and specific injury.  There is no case law that says

16  the Government, the United States Trustee, has to have an

17  injury.  We exist to protect the public's interest in the

18  integrity of the system.  Nothing in Rule 2004 says the United

19  States Trustee cannot conduct one, and I'm --

20        **THE COURT:**  No.  No, but it says -- it defines who

21  can, and Mr. Connop says you don't fit that definition.

22        I understand 307 statute trumps rules, okay, a

23  procedure; I understand that argument.  Tell me where you have

24  case law support, by analogy or otherwise, that brings the U.S.

25  Trustee within the same level or equates it to the party in

 1    interest envisioned by Rule 2004.

 2           **MR. DEPASQUALE:**  Your Honor, a rule does not create

 3    the case law on rules, on any procedural rule.  Procedural

 4    rules do not create substantive rights; they're merely a

 5    procedural rule.  Rule 2004 cannot limit the right of the

 6    Government, under its authority under 307, to take an

 7    examination.  I would reject that.  I do not have case law on

 8    that.  That was not briefed, your Honor.

 9           **THE COURT:**  Well, it should have been briefed.

10    That's important.  This is the rule.  This is the very language

11    of the rule that they've been saying you don't fit under.  You

12    should have provided that to me.  I think that's critical to

13    what we're talking about here.  You're relying on mom, apple

14    pie, and the American way to say that you have the right to

15    come in here, and we have a procedural rule that creates the

16    2004 exam.  But for that rule, 2004 exams don't exist.

17           Tell me why the U.S. Trustee can take advantage of a

18    procedural mechanism that, by its terms, appears to exclude the

19    U.S. Trustee?

20           **MR. DEPASQUALE:**  Your Honor, again, my proposition is

21    simple; 307 and 586 give us broad statutory standing to examine

22    creditor abuses.  The rule cannot abdicate that.  If this Court

23    makes a finding that Rule 2004 is not available to us, then we

24    would seek alternate remedy and bring a contested matter under

25    Rule 9014 and avail ourselves to the discovery rules.

1           We do not believe we need to, your Honor.  I'm

2    unaware of any authority that says 2004 is not applicable to

3    the United States Trustee.  To the contrary, your Honor, and I

4    will file a supplemental brief if this Court wishes, there are

5    a number of cases where the United States Trustee has brought

6    motions for 2004 exams.  I know myself because I've litigated

7    them where there have been motions to quash, and I am unaware

8    of any reported decision where we've been denied a 2004

9    examination.  However --

10          THE COURT:  All right, is there any reported decision

11   where you've been sustained in these disputes over your

12   authority on the motions to quash?  That's what I'm asking.

13          MR. DEPASQUALE:  Your Honor, I would have to file a

14   supplemental memorandum.

15          THE COURT:  All right.  Okay, I think we've briefed

16   this pretty *ad nauseum* here.  That's a pretty important issue.

17   I'm kind of surprised it was just assumed, by virtue of your

18   status as the watchdog of the bankruptcy process, that you

19   would fall within the parameters of the rule.  It seemed pretty

20   basic that we would do some wordsmithing here and parsing and

21   figure out just how you actually do fit within that.

22          But okay, go ahead.  I apologize for interrupting.

23   Keep going.  Go.

24          MR. DEPASQUALE:  Your Honor, in sum, Countrywide

25   wants us out of the creditor abuse business.  That is an

1    unsupported theory of law.  If not for the United States

2    Trustee, creditor abuses, debtor abuses, abuses that occur

3    every day by the parties that appear before this Court, will go

4    unchecked.  That's why the language in 307 is as broad as it

5    is.

6           Without the United States Trustee, this Court would

7    be limited to hiring special counsel, on its own authority,

8    under its inherent authority, and under the authority under

9    105(a), to investigate creditors, and then you would be

10   overseeing the very lawyers that you appointed to do the

11   investigation.  That is axiomatic.  The problems of that are

12   axiomatic, your Honor.

13          There is a watchdog for the bankruptcy system; it is

14   the United States Trustee.  307 gives us plenary authority to

15   examine the conduct of parties that come before you and then

16   report to you those facts and take such actions -- whether it

17   be an order to show cause or whether it be a complaint -- to

18   seek the proper redress; to vindicate the integrity of this

19   system.

20          Whether or not debtors resolve their issues with

21   Countrywide does not resolve whether or not violence has been

22   done to the integrity of this Court.  That is a separate issue

23   that runs parallel to every matter that comes before this

24   Court.  It cannot be resolved by private parties; it can only

25   be resolved by this Court and the agency, the Department of

1   Justice, which has been given the obligation and the mandate to

2   supervise and monitor cases before you.

3          So with regard to the standing, your Honor, again, I

4   would rest on my briefs, but I believe that based upon the

5   holding of the cases, the precedents that have been established

6   with regard to these matters, particularly against Countrywide,

7   every court that has addressed this specific issue has held we

8   have standing.  The dearth of any contrary authority that we do

9   not have standing, your Honor, I think that it is clear that

10  this Court can comfortably rule we have standing and permit

11  this inquiry to go forward.

12         Whether we call it an inquiry or an investigation is

13  irrelevant.  We want to look into what happened in these

14  specific cases, then report to this Court what we find, and, if

15  we feel appropriate, bring the appropriate motion to report

16  these facts to you without passion or prejudice, and recommend

17  appropriate sanction, if warranted.  That's what we're seeking

18  to do here.

19         With regard to the cases, your Honor, I would

20  disagree, and I find it a bit disingenuous that the statement

21  has been made that they don't understand what we're looking

22  for.  2004 motions are very broad.  They are, as at least one

23  commentator Collier's reports, a legal fishing expedition.  In

24  the beginning when a party or when the Government looks at this

25  matter, we're relegated to what we have in the papers and what

1   we can talk to local counsel for.

2          We want to get documents, we want someone to come in

3   and sit down and we want to look at the documents first, find

4   out what the policies were with regard to proofs of claim,

5   filing motions for relief from stay; escrow, the escrow issues;

6   the issues of the bouncing escrow.

7          Of course the initial discovery request is going to

8   be broad, but it's broad within this topic, proofs of claim,

9   motions for relief from stay, escrow.  What is the policy?

10  Then, what happened in this case?  Come in and sit down with us

11  and then we'll ask you: What happened in this case?

12         If during the course of a 2004 examination , the

13  examinee, Countrywide, feels that it's overbroad, it doesn't

14  relate to any matters with regard to this case or the issues in

15  this case, they can move for a protective order; they can move

16  to quash the 2004 examination.

17         Countrywide knows what we're looking for in these six

18  cases, seven cases if we include *Hill*.  Why was the escrow

19  reported at one amount, then dropped, and then adjusted again?

20  Why didn't they get it right the first time?  We're worried

21  about accounting issues; we're worried about representations

22  made in motions for relief from stay; we're worried about

23  representations made with regard to escrows.  We want to know

24  what happened in these cases.

25         We looked at ten cases initially that arose out of

1    over a hundred, 200 cases that the Chapter 13 Trustee had

2    brought to this Court's attention because of stale checks.

3    That was the beginning of our inquiry.  We whittled that down

4    to three cases because the debtors do not wish us to make

5    inquiry into their financial affairs.

6         This is a very focused examination, contrary to what

7    my colleague has represented to this Court.  I need to know

8    what the policies are with regard to how they account for

9    proofs of claim and filed them with this Court, and I need to

10   ask them, if this is the policy, then why did this happen in

11   this case?  Why was this escrow reported in one case at one

12   amount, and then, at least in the initial mortgage statement

13   with regard to Benvenudo, the mortgage statement that was sent

14   to the debtor said an escrow was $3,081 in the hole.  Then in

15   their phone call, reportedly they were told that it was 4326.

16   And then in an e-mail, they're told that it's a 1,078.  And

17   then finally, in a consent order they're told that it's $1,295.

18        You have a party coming before you filing thousands

19   of proofs of claim.  If there are problems, we merely want to

20   identify it.  Presumably they want to cure it themselves.  We

21   have no reason to believe that they would not want to cure it;

22   they're a legitimate corporation.  But we want to make sure

23   that we do our job to monitor and supervise to make sure the

24   pleadings that are being filed with this Court are accurate.

25        If they provide us sound explanations, your Honor,

1   we'll go away.  If we don't and I file a pleading with this

2   Court that is over the top, I'll face the consequences from

3   this Court.  I am fully confident that this Court will tell me

4   that I've got no case if I have no case.

5          But all I'm asking right now, your Honor, is for

6   limited discovery in these cases to tell me -- sit down with

7   me, tell me what happened on the proof of claim in this case.

8   Was this filed in accordance with your policy or is your policy

9   broken?  What happened with this motion for relief from stay?

10         There are three motions to dismiss that were filed.

11  Countrywide will tell you that that's serial filings.  Your

12  Honor, there were three Chapter 13s; each one lasted over a

13  year and the debtor made significant payments.  In the second

14  Chapter 13, the debtor made over $21,000 of payments to

15  Countrywide.  So to characterize that as, when we filed the

16  motions to dismiss for this -- you know, sometimes some

17  bankruptcy debtors will file back-to-back 13s.  That didn't

18  happen, your Honor, with regard to that case.  I believe it was

19  the *Bach* case.  No, strike that; it was the *Carleski* case.

20         The first 13 was commenced in March of 2000, and

21  lasted --

22         **THE COURT:**  I'm familiar with *Carleski*.  I'm familiar

23  with *Carleski*.  I know exactly what happened.  I read all the

24  pleadings, I read all the --

25         **MR. DEPASQUALE:**  Your Honor, it's my --

1          **THE COURT:**  -- briefs.

2          **MR. DEPASQUALE:**  It's my -- I'm sorry.

3          **THE COURT:**  No, go ahead.

4          **MR. DEPASQUALE:**  It's my job to bring the facts to

5    you.  I think we've articulated cause.  We want to conduct

6    narrow discovery.  I'm not looking for privilege documents.  I

7    would like a privilege log, and I would like the Court to

8    review matters *in camera*.  We're looking to get to the bottom

9    of what happened in these cases.  That's all.

10          We have standing.  This is an appropriate inquiry

11   into what happened here.  I would respectfully -- I understand

12   this Court's concern about the language in 2004, in Rule 2004;

13   however, I do not believe that rule can take away our authority

14   to use that vehicle as a means to obtain information and get to

15   the bottom of matters.

16          Bankruptcy Rule 1001, Judge, says that the Code and

17   the Rules shall be interpreted to ensure the just, speedy, and

18   efficient adjudication of issues before you.  That's the *sine*

19   *qua non* of bankruptcy; get cases administrated quickly.

20          If I have to bring contested matters, your Honor, and

21   utilize formal discovery rules every time there may be an issue

22   with a creditor or a debtor or an attorney, we're going --

23   that's antithetical to how Congress and how the Rules Committee

24   want us to administer cases.  So, I would ask that the Court

25   reject the argument that 2004 is not available to the

1    Government.  And with that, your Honor, I'll wrap up my

2    comments and thank you for your patience.

3              **THE COURT:**  Thank you.

4              Tell me, in these other courts, have any rendered a

5    formal opinion, a published opinion vindicating your rights or

6    validating the Trustee's rights to proceed under 2004?

7              **MR. DEPASQUALE:**  We've provided you with the orders,

8    I believe, your Honor.  I do not know whether they've been

9    published so I'll not comment on that.  I just don't know.  I

10   can find out for the Court.

11             **THE COURT:**  No, no, that's okay; I just thought I'd

12   ask.

13             All right, very good.  I appreciate your comments;

14   very helpful, and your briefs and everything is very helpful.

15             A couple of things though.  First of all, anything we

16   do here in this proceeding does not affect the contested matter

17   and the discovery taking place in that contested matter in

18   *Hill*, okay.  This is all outside of the umbrella of that

19   particular proceeding.  So any of my comments, rulings,

20   whatever, *Hill* is unaffected, the contested matter involving

21   Countrywide.  I just wanted to make sure that was clear.

22             Also, I have by no means come to a final conclusion

23   as to how I'm going to rule on this particular matter, but I do

24   have a focus.  The critical issue in this matter is the

25   standing and jurisdiction of the U.S. Trustee, as both of you

1    have indicated.  The Court believes that the relevant statutory

2    authority for the actions of the U.S. Trustee in this case is

3    found in the provisions of Section 307 of Title 11.

4         Section 307 trumps everything.  At this stage, the

5    Court is inclined to agree that even Rule 2004, although the

6    Court is troubled with the language in 2004, vis-à-vis the U.S.

7    Trustee's attempt to utilize the procedure.  But nevertheless,

8    2004 was enacted in 1983; Section 307 was enacted in 1986.

9    Statutory construction rules that the most recent prevails.  We

10   have a statute versus a rule.  There are a lot of reasons why

11   Section 307 would take priority over even Rule 2004.

12        But preliminarily, the Court seems to agree that the

13   U.S. Trustee's position in that regard, although somewhat

14   reluctantly, but nevertheless, it appears as if we're going in

15   that direction.

16        A review of the statutory history shows that Section

17   586, enacted in 1978 following the experience of the original

18   U.S. Trustee pilot program, identified a finite list of duties

19   for the U.S. Trustee, but also there was a catchall provision

20   in Section 586(a)(3)(G) which authorized the U.S. Trustee to

21   perform the duties prescribed for the U.S. Trustee under Title

22   11 as well as Title 28, and such duties were to be consistent

23   with Title 11 and Title 28, as the Attorney General may

24   prescribe.

25        Thereafter in 1986, Section 307 was enacted which,

1   and this is the test we're stuck with.  It's the plain meaning

2   and wording of the statute is what we have to use as a court,

3   and once we examine the plain meaning and wording of the

4   statute, it can lead to only one conclusion, and that is that

5   Congress intended to broaden the scope of duties and authority

6   of the U.S. Trustee even further.

7            It's not an enabling statute as has been suggested by

8   Countrywide in its brief, an enabling statute for 586; it's

9   separate and apart, stands on its own footing, and in fact, as

10  I indicated, appears to trump 586 and broaden the authority and

11  jurisdiction of the actions of the U.S. Trustee; statutorily

12  broaden the jurisdiction of this agency.

13           Common sense reading of the statute leads to only one

14  conclusion, and that it is that it is not restricting, as

15  Countrywide would have the Court accept by Countrywide's

16  interpretation.  In fact, although Countrywide's interpretation

17  is interesting and appealing as to the effect of the various

18  statutes, and I'll get into that in a minute, nowhere in Mr.

19  Connop's presentation did he address how we deal with the clear

20  and plain language of 307, and that's important here.  And the

21  Court, as I indicated, is required to give that the most

22  consideration when considering the interpretation of a statute.

23           Section 307 specifically states 'The United States

24  Trustee may raise and may appear and be heard on any issue in

25  any case or proceeding under this Title but for the filing of a

1   plan.'

2         Now, Mr. Connop indicated that under no circumstances

3   -- he waffled a little bit there when asked -- does the Trustee

4   have the power to conduct or notice a 2004 exam.  He didn't say

5   because of the clear language of the Rule per se, but he said

6   there's no statutory empowerment or no specific statute

7   allowing for it.  But for the specific wording of Rule 2004,

8   the Court believes that 307 clearly, in its plain meaning and

9   understanding, would provide and allow the U.S. Trustee to

10  otherwise conduct a 2004 exam.

11        Countrywide points to many other instances of

12  specific authority granted the United States Trustee and

13  various other statutory grants of authority in the Bankruptcy

14  Code as evidence of the restricting nature of Section 307, more

15  so in the brief rather than the argument today, and Countrywide

16  asks, rhetorically, why else would Congress include these

17  specific grants of power if 307 was intended as anything other

18  than an enabling statute for 586?

19        As I indicated, this Court is required to reconcile

20  allegedly conflicting statutory language if at all possible.

21  To adopt the construct that Countrywide posits would be

22  contrary to the broad, expansive language and clear meaning of

23  Section 307 and the discretionary authority granted by it.

24  Therefore, this Court believes the better explanation for the

25  many grants of specific statutory U.S. Trustee powers are

1   intended to exist in harmony with Section 307.

2         They are Congressional directives regarding those

3   areas in which Congress, in some instances, mandates U.S.

4   Trustee involvement or encourages U.S. Trustee involvement, to

5   act in specific aspects of the Bankruptcy Code.  This is a

6   better reconciliation of the various statutory grants which

7   both pre-date Section 307 and post-date Section 307 rather than

8   adopting Countrywide's attempt to create a conflict between

9   Section 307's purpose and the intent of these specific

10  statutes.

11        Furthermore, case law, in this particular Circuit at

12  least, supports and is consistent with this interpretation of

13  the powers and authority of the United States Trustee as

14  granted by Section 307.

15        Further, the test for determining the U.S. Trustee's

16  standing in those cases in which the issue has been addressed

17  is a liberal one; at least that's the Rule in the Third

18  Circuit.  And furthermore, Countrywide really has provided no

19  contrary case law in this regard.

20        Therefore, Section 307 is to be broadly construed.

21  It's not simply viewed as an enabling act for Section 586.

22  Rather, it's an independent grant of standing and jurisdiction

23  enlarging the U.S. Trustee's authority.

24        Countrywide discussed at some points that there were

25  a number of cases that weren't even open when the Trustee

 1  brought their notice for 2004 exam, and they were opened in a

 2  collateral proceeding at Miscellaneous Number 07-203 by the

 3  Chapter 13 Trustee, apparently.  But since we determined that

 4  Section 307 is a broad grant of authority to the United States

 5  Trustee, it naturally follows that one of the powers the U.S.

 6  Trustee possesses is the authority to move to open closed

 7  bankruptcy cases.

 8          Furthermore, there is case law in the Third Circuit

 9  that clearly supports this notion and the authority of the

10  Trustee in this regard.  If the U.S. Trustee possesses the

11  statutory authority to raise any issue and appear in any case

12  or proceeding, it logically follows that the U.S. Trustee is

13  able to open cases in order to raise issues and be heard on

14  them.  So the Trustee, the U.S. Trustee, at least in this

15  Court's mind, does possess the ability, if it had to, to go

16  ahead and seek the opening of these cases which had previously

17  been opened.

18          And that matter is pending, I understand, in

19  Miscellaneous Number 07-203 as to whether or not that was

20  appropriate, but it appears as somewhat of a moot point here in

21  light of the interpretation this Court gives to Section 307,

22  although I don't think this is, as you're going to see, it's

23  not really important to the Court's ultimate decision in this

24  case what I believe at this time will be the ultimate decision;

25  but I'm going to further reflect on what's gone on here today

1    and what's been told to me.

2            So, the *Benvenudo*, *Carleski,* *Bach,* and *Topper* cases,

3    which all represent prior closed cases, if pushed, this Court

4    would most likely allow the U.S. Trustee to move to open and

5    grant the opening, assuming the appropriate standard is met for

6    that.

7            In the brief, not so much in today's argument

8    although it was touched upon, Countrywide raised the defense of

9    *res judicata*.  We have closed cases, confirmation orders are

10   *res judicata*, and that is absolutely true in the Third Circuit.

11   There is case law, recent case law in this particular District,

12   relying on prior Third Circuit authority that stands for that

13   proposition.  The problem is, the principle of *res judicata*,

14   for purposes of barring the U.S. Trustee from filing a notice

15   of 2004 examination, really is not applicable.  There's no

16   merit to that defense.

17           In this Circuit, for the defense of *res judicata* to

18   apply, there must be an identity of the parties.  Countrywide

19   has not shown that the U.S. Trustee was a party to any of the

20   confirmation orders.  At best, that defense would only apply to

21   the Chapter 13 Trustee who, nobody appears to argue, is

22   independent of the U.S. Trustee, nor were the issues or causes

23   of action currently contemplated actually litigated in the

24   confirmation proceedings, resulting in a final judgment on the

25   merits of the issues currently before the Court.

1          So, as a result of all the foregoing, the Court

2    initially, at least at this point, feels inclined to find that

3    the U.S. Trustee most likely possesses the power and authority

4    to request a 2004 examination of Countrywide.  The question

5    then becomes: Can the U.S. Trustee exercise this power in the

6    seven pending what I call 'context cases'?

7          We'd all agree; I don't think there's any dispute

8    that the elements of the 2004 examination set forth in Federal

9    Rules of Bankruptcy Procedure 2004(a), is that on the motion of

10   any party in interest, the Court may order the examination of

11   any entity.  Now, the term of art or phrase 'any party in

12   interest' is somewhat in play, but nevertheless, that's the

13   language of Rule 2004.

14         2004(b) goes on to discuss the scope of the

15   examination.  And we're talking about an examination here.  Mr.

16   Connop raises the fact that this is an investigation.  Mr.

17   DePasquale didn't care how it was phrased.  Well, I think it is

18   important.  This is not an investigation.  2004 does not allow

19   an investigation; it allows for an examination.  There's

20   absolutely no authority for an investigation in Rule 2004.

21         It's pretty clear that the scope of the examination

22   under 2004 'may relate only to the acts, conduct, or property

23   or to liabilities and financial condition of the debtor or to

24   any matter which may affect the administration of the debtor's

25   estate.'  The Court believes that's the critical phrase in this

1    particular proceeding.

2          In looking at the seven -- where there were ten --

3    context cases, individually and in a vacuum, the majority of

4    the problems sought to be examined by the U.S. Trustee appear

5    somewhat benign.  Admittedly, the issues currently at play in

6    the *Hill* case, at least on the record created today, appear to

7    be somewhat problematical for Countrywide, but again, these are

8    just allegations on the record, and there are no findings

9    whatsoever as of this stage.  But those specific matters are

10   being addressed in the pending contested matter.

11         A number of the context cases may be explained away

12   as counsel error, negligence, and procedural failings.  The

13   Court can only assume the seven context cases are the most

14   egregious examples of alleged Countrywide misconduct that the

15   U.S. Trustee can find in this District arising over the last

16   number of years or, I'd assume, more would have been presented

17   to the Court.

18         I understand that ten were originally presented;

19   three withdrawn because the debtors did not want to participate

20   by filing the appropriate release, so we had ten at one time.

21   Nevertheless, there does appear to be a common pattern, thread,

22   or theme running through all of the current context cases

23   involving the manner in which Countrywide calculates and

24   determines the extent of its bankruptcy claim.

25         A number of the relief from stay cases are involved;

1    several proof of claim issues and two post-discharge injunction

2    violation cases exist, of which *Hill* is one.  All cases involve

3    the calculation of the debtor's obligation to Countrywide while

4    in bankruptcy.  The common thread running through all the cases

5    is the manner in which Countrywide computes its bankruptcy

6    claim at various stages of the bankruptcy proceeding.

7              In the relief from stay cases, its computation of the

8    Countrywide claim for purposes of filing and prosecuting the

9    motion for relief from stay in the first place.  In all the

10   context cases, there appears to have been miscalculations and

11   errors made in the claim determination process.

12             In the proof of claim cases, again, it goes to

13   calculation of the Countrywide claim for bankruptcy purposes.

14   Usually in the proof of claim cases, it's involved in the

15   earlier stages of the cases, whereas the claim calculation in

16   the relief from stay cases arise at any time during the case, I

17   guess, except for the one case -- I think it's *Carleski* --

18   where the three motions to dismiss were filed.  In that case, I

19   don't think the time for payment had even run.  So, that was

20   early on in the bankruptcy process, and that's a little

21   different from a relief from stay case.

22             Finally, the post-discharge injunction cases involve

23   the manner in which Countrywide computes its claim after a case

24   is closed.  Questions surely arise as to why Countrywide fails

25   to honor the terms of the order approving the Trustee's final

1    account when it specifically states that all payments are

2    current as of a specific time.

3         How is notice of this particular order handled

4    internally by the staff person receiving the notice?  How is it

5    posted on the account?  Many of those questions seem to be

6    answered in the *Hill* contested matter, and that too will form a

7    part in what the Court believes the final resolution of this

8    matter will be.  As such, the matters sought to be examined by

9    the U.S. Trustee affect the administration of the estate,

10   therefore meeting the requirement of 2004(b), and a 2004 exam

11   would appear otherwise appropriate.

12        So the next question that must be answered is: What

13   is the scope of the examination and the materials sought to be

14   produced from Countrywide?  Even the U.S. Trustee has

15   acknowledged at various times in these proceedings that the

16   right of the examining party in a 2004 exam is not unlimited or

17   totally open-ended.

18        The Court does not agree with the proposition

19   proposed by Countrywide that this allows the U.S. Trustee

20   totally unfettered access to the business dealings of

21   Countrywide.  No, it does not.  There is a scope limitation in

22   the 2004 examination.  Furthermore, the Court has the authority

23   and ability to further limit that scope.  Scope is determined

24   on a case-by-case basis, depending on the circumstances before

25   the Court.

1              But, even though, unlike discovery in an adversary

2    proceeding or a contested matter, the scope of the exam has

3    been described as a quote 'fishing expedition', nevertheless,

4    there is an initial threshold or burden that must be met before

5    the fishing expedition is allowed to proceed.

6              As Mr. Connop indicated, the Court in the *Continental*

7    *Forge* case out of this District, added some requirements to the

8    scope issue with respect to 2004 examinations, especially with

9    respect to third parties not involved in the bankruptcy

10   process, unlike Countrywide who is in fact involved in the

11   bankruptcy process.  In *Continental Forge*, Judge Bentz stated

12   'Examination of witnesses having no relationship to the debtor

13   affairs and no affect on the administration of the estate is

14   improper.'  Judge Bentz set the outer limit for the 2004 exam.

15   Absolutely there's no right to go beyond that threshold.

16   That's the upper bar for purposes of determining how far a

17   fishing expedition may extend.

18             Case law has described this threshold requirement as

19   something akin to what this Court believes is probable cause in

20   a criminal case.  As Mr. DePasquale indicated and I think Mr.

21   Connop as well, it's pretty clear that the threshold

22   requirement and term of art that we use is good cause.  There

23   has to be a showing of good cause.  That is the limiting

24   factor; the limiting element of a 2004 exam.

25             Good cause is determined on a case-by-case analysis,

1    depending on the particular facts involved.  Even the fishing

2    expedition must be limited to a specific body of water.  And to

3    continue with the fishing analogy and metaphor, how deep in the

4    water we allow the expedition to go or the nets to fall or

5    extend is subject to court control as well.

6         Here, Countrywide simply raises a per se objection

7    though.  At no time has this Court been given any specific

8    information or indication as to the burden that this fishing

9    expedition may have.

10        Now, Mr. Connop has argued and cited the comments in

11   the Florida cases indicating that -- I'm not sure what the

12   purpose of those Florida cases was -- but general conclusions

13   as to how burdensome and oppressive going back in closed cases

14   and finding out this information would be.  There are no

15   specifics, and I'm going to get into that because we're going

16   to go through the specific requests here and find out just what

17   may or may not be allowed.  But there is no specific indication

18   of what the cost and burden would be, and so the Court will

19   specifically find that Countrywide has failed, to the extent it

20   has a burden in that regard, with respect to that

21   determination.

22        All agree for purposes of discovery, at least in the

23   *Hill* matter we've agreed, that the scope of discovery in

24   adversary proceedings and contested matters, not production,

25   and I think there's a difference there in the terms we use even

1   though we throw them around and interchange them without

2   recognition of what we were actually referring to.

3          The scope of discovery as it relates to a particular

4   case or controversy involving an adversary proceeding or

5   contested matter is any matter not privileged that is relevant

6   to the claim or defense of any party and appears reasonably

7   calculated to lead to the discovery of admissible evidence.

8   That's Federal Rules of Civil Procedure 26(b)(1), which is

9   incorporated into these proceedings.

10          The Rules of Civil Procedure go on; that relevant

11   evidence means evidence having any tendency to make the

12   existence of any fact that is of consequence to the

13   determination more probable or less probable than it would be

14   without the evidence.  That's Federal Rules of Evidence 401.

15          In reviewing the information for which the United

16   States Trustee seeks production, preliminarily it appears to

17   this Court that the areas of examination in which testimony is

18   sought and the United States Trustee seeks to question the

19   Countrywide witnesses would appear to be discoverable even

20   under the tighter standards of the Federal Rules of Civil

21   Procedure, much less the fishing expedition standard for a 2004

22   exam.

23          And I say that because in the seven context cases,

24   the first four requests are identical; general propositions for

25   information which, when we did our analysis, compared to what's

1   been produced already by agreement of Countrywide in the *Hill*

2   case, appears to be already subject to turnover.  The language

3   may not be identical, but it's pretty close.  And Countrywide

4   withdrew its motion for protective order in that case and

5   agreed to provide all that information.  So, the Court is

6   somewhat puzzled as to whether this is an academic exercise or

7   there's some real substance.  And I'm going to give the parties

8   an opportunity to explain that to the Court.

9           With respect to questions five through 12 of each of

10  the subpoenas or requests for production, those relate to

11  specific cases.  And in all the seven remaining context cases,

12  the Court's understanding is there is a release obtained by the

13  debtor, so we've overcome that hurdle.  It's also the Court's

14  understanding that as far as the loan histories and accounts,

15  those have already been produced in the Miscellaneous Number

16  07-203, so again, the Court is somewhat puzzled and scratching

17  its head as to where the argument is here.

18          Nevertheless, the Court is of the mind, even if this

19  was limited to a discovery issue as Mr. Connop has indicated,

20  the preferred way in an adversary or contested matter, all this

21  information would be subject to discovery under the Federal

22  Rules of Civil Procedure.  And the reason I say that is

23  26(b)(1) identifies the scope of discovery, which I've just

24  explained to you, and the Federal Rules of Evidence define

25  relevant information, which is pretty broad.  The scope of

1    discovery, as long as it's reasonably calculated to lead to

2    admissible or relevant evidence, would be subject to the

3    discovery requests and any objection would be denied.

4           Not only that, under the Federal Rules of Evidence,

5    and specifically Federal Rules of Evidence 404(b), evidence of

6    other acts is not admissible to prove character and not

7    admissible to show action in conformity therewith, but it may

8    be admissible for other purposes, such as proof of intent,

9    plan, knowledge, or absence of mistake or accident.

10          Furthermore, Federal Rules of Evidence 406 goes on to

11   say that, in regard to habit and routine practice, that

12   evidence of habit or of the routine practice of an organization

13   is relevant to prove the conduct of the organization on a

14   particular occasion was in conformity with the habit or routine

15   practice.

16          So, even if we are limited to the discovery standard

17   in an adversary or contested matter, items five through 12 of

18   each of the subpoenas regarding each specific case, based upon

19   this Court's preliminary review, would be discoverable in any

20   pending adversary or contested action.  So for those reasons,

21   the Court views the requests here not to be tantamount to the

22   fishing expedition that your typical 2004 exam may rise to, but

23   really would be similar to discovery that would be allowable in

24   any pending adversary proceeding or contested action and has

25   actually been produced in the *Hill* case, which forms one of the

1    context cases.

2            Now, even though Mr. Connop cries foul with respect

3    to the fact that old cases were being opened by the U.S.

4    Trustee or the Chapter 13 Trustee prior to that, there still

5    remain three cases in the context cases that were opened or

6    have been opened without U.S. Trustee involvement.  Obviously

7    the *Hill* case; we're very familiar with that.  That was opened

8    on motion of the debtor.

9            Likewise *Stemple*, Case Number 03-11792, which

10   involves an objection to the claim filed by the debtor, where

11   discrepancies in the claim amount were advanced by Countrywide

12   was open at the time of the 2004 notice being filed.

13           *Olbetor*, Case Number 04-33361, was also open at the

14   time the U.S. Trustee's notice of 2004 exam was filed.

15           So, any foul as a result of the Trustee going back

16   and opening up long-closed cases really is rendered moot,

17   because we have three context cases that already were opened

18   without U.S. Trustee involvement.  And even Mr. Connop would

19   agree that, under 307, even though the U.S. Trustee can't file

20   a notice of a 2004 exam, the U.S. Trustee does have standing to

21   appear and raise issues.  In fact, that happened in *Hill*.

22           So, the Court believes that based upon all this, it's

23   time to review the requests for discovery and find out where

24   the fight really is, and why.  Now, I asked -- I ordered the

25   parties to communicate and get together and resolve the

1   discovery requests.  Based upon the telephone conversation we

2   had with all parties earlier in the week that is now part of

3   the record, the Court was advised that the parties met in good

4   faith and tried to resolve their differences and couldn't

5   resolve any.

6           Now, I am surprised because when the Court reviewed

7   these issues, as I indicated, most of them have been agreed to

8   by Countrywide already in the *Hill* case, and there's not much

9   left over.  And for purposes of the other specific information

10  from the seven context cases, it would appear it's all

11  discoverable anyhow, even under the more strict standard of the

12  Federal Rules of Civil Procedure as set forth in Rule 26.

13          So, I'm a little disappointed, once again, that the

14  parties can't come together and follow their obligations under

15  the Federal Rules of Civil Procedure regarding discovery, under

16  this Court's order, and just in a manner as professionals to

17  expedite and resolve issues that should not be before the

18  Court.

19          Now, I'm not going to go any further than that, but

20  we're going to go through these discovery requests, and if the

21  Court determines there's some gamesmanship, lack of good faith

22  in resolving these discovery requests, the Court will take the

23  appropriate action.

24          And now I'm going to tell you what we're going to do;

25  what the Court is inclined to do, depending on what we hear

1   further from counsel and depending on what the Court decides as

2   we go forward and I assimilate the argument and positions taken

3   by each side now that you've further clarified what's contained

4   in your briefs, and determine what the Court will ultimately

5   do, even though I've given you an indication of where things

6   seem to be going.

7           Ultimately the Court, unless I hear objections from

8   the parties in this regard, believes that the appropriate

9   approach in this matter is to stay all the context cases and

10  the 2004 examinations requested in those cases but for the *Hill*

11  matter.  The *Hill* matter has been opened; there's no issue as

12  to the U.S. Trustee coming in after the fact trying to open it

13  up.  There's a pending issue there in which Countrywide has

14  acknowledged the right of the U.S. Trustee, the Chapter 13

15  Trustee, and obviously the debtor, to participate.

16          There are issues in the *Hill* matter which affect the

17  bigger issue that the Court has identified, which appears to be

18  how Countrywide determines and calculates its bankruptcy proofs

19  of claim, not how Countrywide determines how it's going to

20  invest any profits or declare dividends or market their other

21  businesses that may fall under the Countrywide umbrella,

22  whatever it may do.  So Mr. Connop, rest assured this is not a

23  wholesale -- the Court is not going to allow wholesale

24  investigation into all the business affairs of Countrywide.

25          Rather, assuming we ultimately allow this 2004

1    examination, the scope of the examination is going to be

2    limited as the Rule suggests, as interpreted by case law and

3    the facts of these particular matters, with the common thread

4    or theme as identified by the Court running through all of

5    them.

6            By staying all the other pending cases and allowing

7    *Hill* to go forward, 2004 exam, we eliminate a number of issues

8    that seem just to cloud the ultimate bottom line here along the

9    authority of the U.S. Trustee to proceed and to the scope of

10   that examination.  So the Court is inclined to take that

11   position.  Again, I'm going to further think about it, but now

12   I'm going to ask the parties and I'm going to ask Mr.

13   DePasquale: What are looking for here?  What are you looking

14   for here that you aren't already getting in *Hill*?

15           **MR. DEPASQUALE:**  Your Honor, in the context of the

16   remaining cases, we simply want to know, again, what the policy

17   was.  How do you formulate what's owed?  How was that

18   communicated to your local counsel?  Is there sufficient

19   supervision there so there's not a payment --

20           **THE COURT:**  Let me stop you right there.  Everything

21   you said is being provided in the *Hill* contested matter, isn't

22   it?

23           **MR. DEPASQUALE:**  Not with respect to the other cases,

24   your Honor, the facts in the other cases.

25           **THE COURT:**  No, no, stop there.  I'm talking about

1   the general concept.  You have filed seven notices of 2004

2   exam, and the first four questions in each one of them are

3   identical.  So, if they answered in the *Hill* case, they've

4   answered every one in the other six cases, isn't that correct?

5           **MR. DEPASQUALE:**  Your Honor, absolutely.  When we

6   filed --

7           **THE COURT:**  All right, let me stop you there.  Okay,

8   that's my point.  Forget about the numbers five to 12 that go

9   to specific cases; that's the easy one.  Tell me about -- And

10  that's the one -- I think all that's discoverable under the

11  Federal Rules of Evidence.  That's all indication of habit or

12  routine or other acts.  That's actually relevant testimony.

13  That doesn't just lead to admissible or relevant testimony;

14  that's relevant testimony.  You don't need to file ten notices

15  of 2004 exam to get that.  You probably could get -- Well,

16  we're going to limit it to the seven since you withdrew the

17  ten, but you probably could have gotten it, but for the

18  financial information, you probably could have even gotten it

19  in the three you withdrew.

20          But having said that, in the first four items that

21  you're requesting, how do they differ from what, on consent, is

22  being provided by Countrywide?

23          **MR. DEPASQUALE:**  Indeed, your Honor, they don't, and

24  I'm not asserting -- One, I'm not asking for redundant

25  discovery.  They are the same.  If --

1          **THE COURT:**  All right, let me stop you there.  Then

2    it's a moot question, isn't it?

3          **MR. DEPASQUALE:**  Indeed, your Honor.

4          However, when --

5          **THE COURT:**  Well, what are we here for?  What are we

6    doing?  Why didn't you come back to me when I told the two of

7    you to meet and work out the discovery requests?  Why didn't

8    you come back and say, 'Items one through four have been

9    provided -- will be provided in the underlying *Hill* contested

10   matter?  Why didn't you do that?

11         **MR. DEPASQUALE:**  Your Honor, I believe that Mr.

12   Connop and I agreed that it would be moot; that one through

13   four, we're getting policy.  I'm not here pursuing something

14   that we're getting in *Hill*.

15         **THE COURT:**  Let me stop you.  Let me stop you.

16         Mr. Connop.

17         **MR. CONNOP:**  Yes, your Honor.

18         **THE COURT:**  Is that your position?  You agree that

19   the *Hill* case provides one through four of the request for

20   production --

21         **MR. CONNOP:**  Yes, your Honor.

22         **THE COURT:**  -- in the subpoena?

23         **MR. CONNOP:**  It does.

24         **THE COURT:**  Why didn't you guys tell me that in our

25   Monday phone call?  You told me you met and you talked and you

74

1    worked real hard but you couldn't come to any agreement.

2          **MR. CONNOP:**  Your Honor, I apologize if we gave that

3    impression.

4          **THE COURT:**  Absolutely you gave that impression.  And

5    I bit my tongue because of the admonition I gave you before

6    about your certification on your protective order, and I

7    figured, well, I could go in and I'm going to inquire of what

8    they actually did, but I'll hold off.  I'm going to keep quiet

9    because, hey, I'm going to take them at their word.  Now you

10   two are telling me we have an agreement to items one through

11   four in the subpoena, is that correct?

12         **MR. CONNOP:**  Your Honor, those will be produced in

13   any event.  It was the --

14         **THE COURT:**  Mr. Connop, can you answer a yes or no

15   question for me, please?

16         **MR. CONNOP:**  Yes, your Honor.

17         **THE COURT:**  Finally.

18         Mr. DePasquale, do you withdraw your request for

19   items one through four now that you have an agreement that

20   that's all provided in the underlying *Hill* contested matter?

21         **MR. DEPASQUALE:**  Yes, your Honor.

22         **THE COURT:**  Unbelievable.  So now we're into the

23   seven context cases, the specific items, is that correct?

24         **MR. DEPASQUALE:**  Yes, sir.

25         **THE COURT:**  Mr. Connop.

1          **MR. CONNOP:**  Yes, your Honor.

2          **THE COURT:**  What's the problem?  Those are specific.

3    Those are seven -- those are tailored to each debtor in a

4    bankruptcy case.  Those are pretty focused.  Those are

5    streamlined.  Now, the one through four, I can agree with you

6    those could have been pretty broad-based.  Until you gave up

7    the fight in the *Hill* matter last week on February 14th; once

8    you did that, in my mind, those were moot.

9          But tell me: What is your problem with items 12

10   through five (sic) in every case other than *Hill*?

11         **MR. CONNOP:**  Your Honor --

12         **THE COURT:**  Pardon me; five through 12.  Pardon me.

13         **MR. CONNOP:**  Your Honor --

14         **THE COURT:**  In every case other than *Hill*.

15         **MR. CONNOP:**  The Court has made pretty clear today

16   what its position is on our fundamental arguments dealing with

17   the powers of the U.S. Trustee to perform the examinations.

18   That was the basis for our dispute with Mr. DePasquale

19   concerning the specific issues.  We did not feel they had the

20   legal authority to engage in that discovery, and we could not

21   agree to simply turn those matters over.

22         However, your Honor, should you ultimately determine

23   that, indeed, the U.S. Trustee is entitled to this discovery,

24   we are not going to lodge continued objections.  We will

25   produce that information subject to the final determination of

1  their authority to conduct these examinations.  Hence, in this

2  context, in this context we are not going to argue

3  specifically, or even generally, that should the Court

4  determine that these matters are subject to examination despite

5  our arguments to the contrary, I'm not going to insist or argue

6  to you, your Honor, that they cannot have access to our

7  computer system for purposes of these proofs of claim or

8  motions for relief from stay.  That is subsumed in your Honor's

9  ultimate conclusion expressed here today or ultimately in a

10  written opinion.  It is now apparently moot.

11          I'm sorry, your Honor; I was contesting --

12          **THE COURT:**  Okay.

13          **MR. CONNOP:**  -- the U.S. Trustee's ability to have

14  that information in the first instance.  Your Honor has

15  indicated they do.

16          **THE COURT:**  Well, I don't know.  I'm still going to

17  chew it over a little bit.  But to be honest with you, you

18  raised some points I'm going to look into.  You know, I'm not a

19  hundred percent sure, but we've worked on it; we went through

20  the briefs and the prior argument.  Based on that, we felt that

21  this is the appropriate result, all things considered, even

22  though the specific language of 2004 still is troublesome.

23          Nevertheless, I think -- But then, I'm a bottom line

24  person, okay, and I understand this battle is being fought all

25  over the globe.  And I'm happy to write an opinion and let this

1   Bankruptcy Court speak for the Western District of Pennsylvania

2   and let it be appealed to the District Court of whatever.

3           But again, my view is here we have the greater good,

4   and that is solving the specific problem that's before me, and

5   sometimes that can be achieved by cooperation and resolution,

6   as was done in *Hill*.  I mean *Hill* seemed to be a perfect

7   example of it.  And when I say '*Hill*', the contested matter.

8   *Hill* is still in play in this matter.

9           But, as a result of the *Hill* resolution, it appeared

10  to this humble Court that this issue pretty much has gone away,

11  especially when you view, you know, even if a contested matter

12  had been filed, the specific information from the seven context

13  cases, assuming the releases had been obtained, which

14  apparently they have, would all be subject to a cursory order

15  of any court allowing it, I mean, if an objection was raised.

16  Pretty basic stuff.  In any lawsuit you're allowed to get other

17  information to show common plan, scheme, design, habit,

18  routine; things like that.

19          So, okay, if that's where we are, then there is still

20  a bigger issue and we'll deal with that then, but as far as the

21  underlying matter then, it sounds as if it's pretty well on its

22  way to resolution.

23          Mr. DePasquale, you asked for an opportunity to file

24  a short brief on the issue of the Court's problem with Rule

25  2004.  Since this is where we're going and now this is really

1    the focus, it's a matter of law as opposed to a result in this

2    particular case, how much time would you like to do that?  I'd

3    like you to -- Not a real long time; I'd like to get going on

4    this.

5         **MR. DEPASQUALE:**  Your Honor, would two weeks be too

6    long?  I want to do an exhaustive search for you.

7         **THE COURT:**  Not at all; that's okay.  Two weeks is

8    fine.  I know you're traveling quite a bit and it's tough, but

9    I know Ms. Hildenbrand does a great job in her briefs and what

10   not --

11        **MR. DEPASQUALE:**  Indeed, your Honor.

12        **THE COURT:**  -- so I assume she'll be carrying some of

13   the water, doing some of the heavy lifting on this.  But two

14   weeks is fine.

15        **MR. DEPASQUALE:**  Thank you for your indulgence.

16        **THE COURT:**  Mr. Connop.

17        **MR. CONNOP:**  Yes, your Honor.

18        **THE COURT:**  We could -- I don't know, I was

19   originally thinking just giving you the same time for you to

20   give your memorandum a blow out rather than a back and forth.

21   I think I'm going to do that.  I'm going to give you two weeks.

22   You give me your best shot, and then I'll figure out the two

23   arguments.

24        I pretty much have an idea.  I think I see where they

25   are.  I don't know if we really need to further delay the

1    process by giving you extra time after the initial two weeks

2    for you to respond, but -- Very good.  I'll do that, and I'll

3    give you, let's see, today is February 28th.  Two weeks is

4    normally March 14th, but I think it's March 13th now, right?  Is

5    this a leap year?  Yeah, this year it's March 13th.

6         How about March 14th, okay?  We'll give you -- Let's

7    do this, let's do this.  Let's make it March -- I'll make it

8    March 17th, even though that way -- you can always file them

9    early if you have other plans for March 17th, okay?

10        **MR. CONNOP:**  Both briefs --

11        **THE COURT:**  Very good.

12        **MR. CONNOP:**  I'm sorry, your Honor; both briefs are

13   due on that day?

14        **THE COURT:**  Yes.

15        **MR. CONNOP:**  Okay.

16        **THE COURT:**  Both briefs will be due on March 17th on

17   that limited issue.  And I'm going to limit it to five pages,

18   okay.  You don't have to do a lot of historical stuff and

19   background information; we have all that.  Let's focus on that

20   one issue, okay?  And we can read the cases, so a whole lot of

21   commentary isn't necessary, you know, unless the cases really

22   don't stand for what you say they stand for, and then I guess

23   you've got to do a little more commentary.

24        But in any event, short, sweet, to the point.  We'd

25   appreciate that, okay?

1          All right, thank you, folks; appreciate it.  And

2    thank you very much for adjusting your schedules to fit mine.

3    I know there was a belief that I might be there in person today

4    because Pitt played last night in Pittsburgh and I tend to make

5    those games, but unfortunately I had briefs and things to read

6    in anticipation, so I could only watch it on T.V.

7          So anyhow, thank you very much and I appreciate your

8    input, and we'll get a decision out as soon as we have your

9    briefs.  Thank you.

10          **MR. CONNOP:**  Thank you, your Honor.

11          **MR. DEPASQUALE:**  Thank you, your Honor.

12          **THE CLERK:**  All rise.

13     **(This proceeding was concluded at 11:01 a.m.)**

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    **March 10, 2008**

          **Signed**                                        **Dated**



*TONI HUDSON, TRANSCRIBER*