IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In Re:

| | | |
|---|---|---|
| COUNTRYWIDE HOME LOANS, INC., | : | Misc. No. 07-00204 TPA |
| f/k/a COUNTRYWIDE FUNDING CORP., | : | Chapter 13 |
| | : | |
| | : | Related to Document Nos. 12, 13 |

*Appearances:*       Thomas A. Connop. Esq., for Countrywide
Dorothy A. Davis, Esq., for Countrywide
Leonard J. DePasquale, Esq., for the UST
Norma Hildenbrand, Esq., for the UST
David W. Ross, Esq., for the Ch. 13 Trustee

## *MEMORANDUM OPINION*

This case concerns the power of the office of the United States Trustee ("UST") to obtain information from a secured creditor in a number of bankruptcy cases pursuant to *Notices of Examination under Fed.R.Bankr.P. 2004* and *Subpoenas Duces Tecum*. The creditor, Countrywide Home Loans, Inc. ("Countrywide"), has filed an objection to the *Notices of Examination* and *Subpoenas* and seeks to have them quashed. For the reasons that follow, the Court will deny Countrywide the relief it seeks and permit the requested examination to go forward under the parameters as set forth herein.[1]

---

[1]       The Court's jurisdiction under *28 U.S.C. §§157* and *1334* was not at issue. This is a core proceeding pursuant to *28 U.S.C. §§157(b)(2)(A)* and *(O)*. This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to *Fed.R.Bankr.P. 7052 and 9014(c)*.

## BACKGROUND

*Procedural history of the case*

Several months ago the Chapter 13 Trustee for this District filed substantially identical motions entitled *Trustee's Motion to Compel Countrywide Home Loans, Inc./ f/k/a Countrywide Funding Corp. to Provide Loan Histories and for Sanctions* in 293 separate cases in which Countrywide was a creditor.  On October 18, 2007, the Court entered a consolidation order which consolidated all of these separate motions for administrative purposes at Misc. No. 07-00203. Subsequently, in 10 of those 293 cases[2] the UST ("context cases") filed substantially identical documents entitled *Notice of Examination Under Fed.R.Bankr.P. 2004 and Service of Subpoena (Duces Tecum)* ("Notice of Examination").[3]  In each of these 10 cases, the UST identified actions engaged in by Countrywide that she claims were questionable or raised issues going to the integrity of the bankruptcy system.

On November 2, 2007, the Court entered another consolidation order, this one consolidating the 10 cases in which the UST had filed the *Notices of Examination* under Misc. No. 07-00204.  Since the 10 *Notices of Examination* were substantially identical, the Court further ordered the UST to file a single *Notice of Examination* (with an attached Subpoena Duces Tecum

---

[2]     The United States Trustee for this District (Region 3) is Kelly Beaudin Stapleton.

[3]     The ten cases, collectively referred to as the "context" cases, are: *Hill* (Case No. 01-22574-JAD); *Ramsey* (Case No. 01-31062-JAD);  *Benvenuto* (Case No. 02-20946-JKF); *Stemple* (Case No. 03-11792-WWB); *Karleski* (Case No. 04-31355-JKF), *Bock* (Case No. 04-32812-BM), *Olbeter* (Case No. 04-33361-JKF); *Ennis* (Case No. 05-11985-WWB); *Topper* (Case No. 05-20772-TPA), and *Roberts* (Case No. 05- 25324-TPA).  Shortly before the final hearing on this matter, the UST notified the Court that she was unable to secure a consent for disclosure of financial information from the Debtors in three of the cases: *Ramsey*, *Ennis*, and *Roberts*.  The UST withdrew these three cases from consideration and has apparently abandoned her efforts to conduct witness examinations and secure documents in those cases.  Thus, only seven, "context" cases remain in dispute.

2

("Subpoena")) by November 7, 2007, with such single *Notice of Examination* to then have effect in all of the context cases.[4]

The UST timely filed the single *Notice of Examination,* Document No. 6. On November 9, 2007, Countrywide filed an *Objection to Notices of Examination*, Document No. 12, and a *Motion to Quash Notices of Examination*, Document No. 13. On November 13, 2007, the UST filed a *Response to Objection to Notice of Examination*, Document No. 15, and an *Objection to Motion to Quash*, Document No. 16. On November 15, 2007, the Court convened a status conference to discuss all pending matters in this consolidated proceeding. The Court issued an Order on November 20, 2007, which stayed Countrywide's obligation to respond to the *Notice of Examination* and *Subpoenas*, set a briefing schedule, and directed the Parties to address a number of pertinent issues in their briefs.

The Court heard final oral arguments from the Parties on February 28, 2008, and allowed for the filing of supplemental briefs by each Party as of March 17, 2008. All such briefs have been filed. The matter is now ripe for decision.

*The Documents and Testimony Sought by the UST*

The *Notice of Examination*, which the UST says was filed pursuant to *Fed.R.Bankr.P. 2004(c)* and *9016*, indicates that the UST seeks to examine the "corporate representative" of

---

[4]        Reference in this Opinion to *Notice of Examination* or *Subpoena*, in the singular, should be understood in the context of this "effectiveness" in all of the context cases unless otherwise stated.

Countrywide regarding "its bankruptcy procedures as they relate to the Debtors' financial affairs, the

administration of their estate, and the impact of Countrywide's bankruptcy procedures on the

integrity of the bankruptcy process in the Western District of Pennsylvania."  The *Subpoena Duces*

*Tecum* ("Subpoena") component of the *Notice of Examination* directs Countrywide to produce a

variety of documents,[5] and Countrywide is further directed to produce an authorized representative

of the company to be examined on a variety of topics.[6]


*Countrywide's Objection*s


Countrywide objected to the *Notice of Examination* on a number of grounds.  Most

generally, and most significantly for purposes of this *Opinion*, Countrywide objects that the *Notice*

*of Examination* exceeds the statutory scope of the UST's powers and duties and contends that the

UST lacks standing to conduct the examination or compel production of the requested documents.

A fair summary of Countrywide's position in this regard is found in the conclusion portion of its

*Objections*, which states:

> The UST cannot show a basis under 28 U.S.C. §586, 11 U.S.C. §307, or
> Fed.R.Bankr.P. 2004 for the discovery it seeks. The mere pendency of a
> bankruptcy case does not open the door for the UST to hale a creditor into
> an examination room to give sworn testimony and produce documents
> relating to its general corporate affairs.  The UST's powers are not without
> limit and Rule 2004 has its bounds.  Both would be exceeded exponentially
> if the Notices of Examination and Subpoenas are not quashed.

Countrywide's *Objections to Notices of Examination,* at 7, Document No. 12.  Whether the UST

---

[5]      The full text of Exhibit "A" to the *Subpoena* is set forth in Appendix "A" to this Opinion and Order.

[6]      The full text of Exhibit "B" to the *Subpoena* is set forth in Appendix "B" to this Opinion and Order.

possesses the authority to conduct a *Rule 2004* examination is the primary objection raised by
Countrywide to be resolved in deciding this matter.  If Countrywide is correct, the *Rule 2004* process
may not move forward and any other objections become moot. Countrywide also raises various other
general or "per se" objections based on overbreadth and vagueness, exceeding the scope of *Rule
2004(c)*, inconvenience and burden, invasion of the attorney-client and work-product privileges,
proprietary and confidential nature of information sought, impermissible fishing expedition, and
relevance. Only if the primary objection is overruled, must these other objections be considered as
necessary.

The *Motion to Quash* filed by Countrywide raises essentially the same issue as the
*Objections* although elaborating on Countrywide's position.  Countrywide contends that the UST's
powers and duties are circumscribed by the list set forth in *28 U.S.C. §586(a)* and that none of those
powers and duties permits the UST to proceed with the *Notice of Examination* and *Subpoena*.
Countrywide further argues that *Section 307* of the Bankruptcy Code, *11 U.S.C. §307*, which provides
that the UST "may raise and may appear and be heard on any issue in any case or proceeding under
this title", does not serve as a basis for the UST to obtain the information it seeks in this case.
Countrywide claims the power granted the UST under that statute may only be exercised in a
particular case or proceeding whereas here the UST is essentially seeking discovery related to general
policies and procedures employed by Countrywide in its business affairs.  Countrywide also argues
that the scope of the *Notice of Examination* is beyond what is allowed by *Fed.R.Bankr.P. 2004(b)*.
Countrywide argues that *Rule 2004* exists for the purpose of identifying assets and transactions
involving the Debtor's estate and it may not be used as a device to launch into a wholesale
investigation of a non–debtor's private business affairs.  Finally, Countrywide asserts there is no

5

statutory foundation for the UST to take on the role of a "watchdog" to protect the integrity of the

bankruptcy system.

### The UST's Response

Not surprisingly, the UST has a different view of matters.  The UST claims she enjoys

broad legal authority pursuant to *11 U.S.C. §307, 28 U.S.C. §§586(a)(3)(G)* and *(a)(5)*, and *Rule 2004*

to conduct the "examination" at issue in this case. She argues that Congress intended the UST to

actively oversee the administration of bankruptcy cases and to intervene whenever particular actions

threaten an abuse of the bankruptcy system or its procedures.  The UST denies being engaged in any

kind of fishing expedition for "whim or curiosity" and points to issues existing in the context cases

related to inaccurate proofs of claim, unwarranted motions for relief from stay, and unfounded

demands for payment after debtor discharge.  The UST contends that these issues call for an inquiry

into whether Countrywide has accurately accounted for funds received from the Debtors and the

Chapter 13 Trustee, accurately calculated escrow account balances, and accurately calculated

mortgage arrearages. The UST believes that, pursuant to the powers conferred upon her by *11 U.S.C.*

*§307*, an examination of Countrywide is necessary, if not essential, to her efforts to determine

whether any further action against Countrywide is appropriate.

## DISCUSSION

*History of the Office of the UST*

In order to properly evaluate the extent of the UST's power to subpoena documents and conduct the examination at issue in this case, it will be helpful to begin with a brief look at the history underlying the creation of that office. Prior to passage of the *Bankruptcy Reform Act of 1978* ("1978 Act"), *P.L. 95-598*, all administrative and judicial functions in the bankruptcy system were handled by the bankruptcy court judges themselves. Many observers concluded that the handling of both administrative and judicial functions by the bankruptcy courts had eroded public confidence in the bankruptcy system. For instance, a bankruptcy judge might appoint a private trustee to administer an estate who would subsequently appear before that same judge to make recommendations regarding estate matters. In such circumstances, it is not hard to understand a trustee's possible reluctance to vigorously take a position contrary to the view of the judge who made the appointment.

To correct the situation, the *1978 Act* sought to create a separation between the administrative and judicial aspects of bankruptcy, leaving bankruptcy judges free to resolve disputes untainted by knowledge of and involvement in administrative matters that were unnecessary and perhaps even prejudicial to an unbiased judicial determination. The *1978 Act* addressed this goal by creating the UST pilot program originally scheduled to run through 1984 but later extended to 1986. *See P.L. 98-353*. The USTs who were appointed in this pilot program were given responsibility for many of the administrative functions that had previously been handled by the bankruptcy courts.

7

In order to provide the new pilot program office of UST with additional separation and independence from the bankruptcy courts, Congress housed the UST within the Department of Justice.  The UST was to be a appointed by the Attorney General, and was therefore a part of the executive branch of government, not the judicial.  The *1978 Act* created a new Chapter 39 under Title 28 of the United States Code. *See P.L. 95-598 at §224; 28 U.S.C. §§581 et. seq*.  This new Chapter, entitled "United States Trustees", includes the previously mentioned *28 U.S.C. §586* which sets forth a list of the various duties of the UST and outlines the supervision of the UST to be exercised by the Attorney General.

After the UST pilot program operated for a number of years, and as was required by a provision of the *1978 Act*, the Attorney General submitted a report to Congress in April 1983 that outlined the results of the  pilot program.  In this report the Attorney General  strongly supported a continuation and expansion of the program.  Congress agreed that the UST pilot program had been successful.  The program was expanded to a nationwide basis (with the exception of a few judicial districts) and the office of UST was made a permanent part of the bankruptcy system by the passage and enactment of the *Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986* ("1986 Act"), *P.L. 99-554*.     The Attorney General's report also strongly recommended that the UST program be continued as part of the Department of Justice.  Congress adopted that approach as well in the *1986 Act*. The *1986 Act* also added a new provision to the Bankruptcy Code, entitled "United States Trustee", which states:

> The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title but may not file a plan pursuant to section 1121(c) of this title.

*11 U.S.C. §307.*

8

*The Power of the UST*

To a large extent, the Court's decision in this case depends on a choice between the competing views expressed by the UST and Countrywide as to the relationship between *28 U.S.C. §586(a)* and *11 U.S.C. §307*. As indicated in the discussion above, *Section 586* was created by the *1978 Act* and it contains a "laundry list" of fairly particularized UST duties.[7] On the other hand, *Section 307* was created by the *1986 Act* and contains a broad and general authorization for the UST to raise, appear and be heard on any issue in any case or proceeding. The position of the Parties with respect to the interplay between these two statutory provisions can be briefly summarized.

Countrywide argues that the UST, as an agency of the United States government, has only the powers specifically granted to her by Congress. Countrywide says that the powers of the UST are primarily set forth in *Section 586(a)*, although there are some additional specific duties set

---

[7]      Since its enactment in the *1978 Act, Section 586* has been the subject of several amendments. *See, e.g., P.L. 99–554* (October 27, 1986); *P.L. 103- 394* (October 22, 1994); *P.L. 109-8* ( April 20, 2005). When first enacted as part of the *1978 Act, Section 586(a)(3)* was a relatively simple provision with no subsections simply directing that each UST shall "supervise the administration of cases and trustees in cases under Chapter 7, 11, or 13 of Title 11." P.L. 96-598 at §224(a). The current version of *Section 586(a)(3)*, with its "laundry list" feature of UST duties set forth in subsections (A) through (L) was substantially the product of the *1986 Act*. See P.L. 99-554 at §113(a)(3). As relevant to the present case (which involves only chapter 7 and 13 proceedings), the current version of *Section 586(a)(3)* directs the UST to "supervise the administration of cases... under chapter 7 [and] 13... by, whenever the United States trustee considers it to be appropriate":  reviewing applications for compensation and reimbursement under *Section 330* of the Bankruptcy Code and filing comments regarding the same *(Section 586(a)(3)(A))*; monitoring plans under chapter 13 and filing comments regarding the same *(Section 586(a)(3)(C))*; taking action the UST deems appropriate to ensure that all required reports, schedules and fees are timely and properly filed *(Section 586(a)(3)(D))*; notifying the US attorney of all matters relating to actions which may constitute a crime and assisting the US Attorney in carrying out prosecutions *(Section 586(a)(3)(F))*; monitoring the progress of  cases and taking action to prevent undue delay in such cases *(Section 586(a)(3)(G))*; and  monitoring applications filed under *Section 327* and filing comments regarding the same *(Section 586(a)(3)(I))*. Additionally, *Section 586(a)(5)* directs the UST to "perform the duties prescribed for the United States trustee under title 11 and this title, and such duties consistent with title 11 and this title as the Attorney General may prescribe".

forth in a number of provisions scattered throughout the Bankruptcy Code.[8] According to

Countrywide, it is these provisions that delineate the powers of the UST, with *Section 307* merely

functioning as an enabling provision to grant the UST the standing necessary to perform her duties.

Countrywide argues that "*Section 307* simply does not contain any substantive power – it is a grant

of standing to participate in cases and proceedings and perform statutorily defined and limited

duties." Countrywide's *Brief in Support of Its Objections and Motion to Quash*, at 10, Document No.

30 ("Countrywide's Brief").   Countrywide points out that nowhere in *Section 586* (or in any of the

other Bankruptcy Code provisions identified in footnote 8, above) is there a grant of power to the

UST to conduct the sort of "investigation" being attempted here.   Countrywide further argues that

the standing conferred on the UST by *Section 307* is limited to actual (pending) cases or proceedings.

Countrywide believes there is no such actual case or proceeding with respect to any of the context

cases that had previously been closed when the UST filed its *Notices of Examination* or in any of the

open cases in which the matters of controversy identified by the UST had already been resolved.

On the other hand, according to the UST the Court's primary focus should be directed

to *Section 307* which the UST argues gives her broad authority to raise and be heard on any issue

---

[8]     Countrywide points to the following Bankruptcy Code provisions as extending powers and duties to the UST
in addition to those set forth in *28 U.S.C. § 586(a)*: *Section 110(j)* (bring civil actions against bankruptcy petition preparer); *Section
111* (review and approve non–profit budget and credit counseling agencies); *Section 303(g)* (appoint interim trustee in an involuntary
case); *Section 321* (serve as trustee in case if necessary); *Section 327(c)* (object to trustee's employment of a professional); *Section
330(a)* (participate in hearings on compensation of officers); *Section 332* (appoint consumer ombudsman); *Section 341* (convene and
preside at first meeting of creditors); *Section 343* (examine the debtor); *Section 345* (approve certain corporate sureties); *Section 526*
(bring action against debt relief agency); *Sections 701(a)* and *703(a)* (appoint or serve as interim trustee); *Section 704* (file reports
on whether individual debtor filing is presumptively abusive); *Section 705(b)* (consult with creditors' committee); *Section 707(a)(3)*
(move for dismissal of a Chapter 7 case); *Section 707(b)* (move to dismiss an individual debtor case found to be abusive); *Section
727* (object to or seek revocation of a discharge); *Section 1102* (appoint Chapter 11 committees); *Section 1104* (request appointment
of a trustee or examiner); *Section 1105* (request removal Chapter 11 trustee); *Section 1112(e)* (seek conversion of Chapter 11 case);
*Section 1114* (appoint a committee of retired employees); *Section 1163* (appoint a person from a specified list in a railroad case);
*Section 1202* (appoint a Chapter 12 trustee); *Section 1224* (object to confirmation of a Chapter 12 plan); *Section 1302* (appoint the
standing Chapter 13 trustee); and *Section 1307* (request conversion or dismissal of Chapter 13 case).

under the Bankruptcy Code.[9]  The UST argues that *Section 586* cannot be viewed as a limitation on

her powers.  Rather, *Section 586* and the other Bankruptcy Code provisions delineating specific

duties of the UST are non-exclusive, non-limiting complements to the broad power conferred by

*Section 307.*  Finally, the UST argues that even under the more circumscribed view of her power as

advanced by Countrywide, she nevertheless has the statutory authority to look into Countrywide

activities by conducting *Rule 2004* examinations, pointing to *Sections 586(a)(3)(G)*, and *586(a)(5)*

as specific statutory bases for such action.

        After careful consideration of the arguments made by both sides, the Court concludes

that the UST's position is the correct one.

*The Statutory Language*

        When interpreting a statute, the role of the Court is to give effect to the intent of

Congress.  *See Negonsott v. Samuels*, 507 U.S. 99, 104 (1993);  *Rosenberg v. XM Ventures,* 274 F.3d

137, 141 (3d Cir. 2001).  It is presumed that Congress expresses its intent through the ordinary

meaning of its language, so every exercise of statutory interpretation begins with an examination of

the plain language of the statute. *Id.*; *In re Alberts*, 381 B.R. 171, 177 (Bankr.W.D. Pa. 2008) (citing

*Lamie v. United States Trustee,* 540 U.S. 526, 534 (2004), and *BP America Production Co. v. Burton,*

___ U.S. ___, 127 S.Ct. 638, 644 (2006)).  If the meaning of the statute is clear, and implementation

of it does not lead to an absurd result, the inquiry ends there.  *Hartford Underwriters Insurance Co.*

*v. Union Planters Bank, N.A.,* 530 U.S. 1,6, 120 S. Ct. 1942, 147 L.Ed.2d 1 (2000).  If, however, the

---

[9]        Except, as is clear from the specific terms of *Section 307*, the UST may not file a reorganization plan under
Chapter 11.

11

plain meaning of a provision is not self-evident because it is capable of more than one meaning the

Court may need to go further. As the Third Circuit has explained:

> But just because a particular provision may be, by itself, susceptible to
> differing constructions does not mean that the provision is therefore
> ambiguous. "The plainness or ambiguity of statutory language is determined
> by reference to the language itself, the specific context in which that
> language is used, and the broader context of the statute as a whole."
> *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S. Ct. 843, 136 L. Ed.2d
> 808 (1997). Statutory context can suggest the natural reading of a provision
> that in isolation might yield contestable interpretations. Specifically, in
> interpreting the Bankruptcy Code, the Supreme Court has been reluctant to
> declare its provisions ambiguous, preferring instead to take a broader,
> contextual view, and urging courts to "not be guided by a single sentence or
> member of a sentence, but look to the provisions of the whole law, and to its
> object and policy." *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S. Ct. 353, 93
> L. Ed.2d 216 (1986).

*In re Price,* 370 F.3d 362, 369 (3d Cir. 2004). The *Price* court further noted that statutory

construction is a "holistic endeavor," something that is particularly true with respect to construction

of the Bankruptcy Code. *Id.*

Rather than the interpretation of a single statutory provision, the task for the Court in

this case involves the reconciliation of two provisions in different statutes.[10] It is a well-established

canon of statutory construction that provisions in different statutes should, if possible, be interpreted

so as to effectuate both provisions. *See In re Udell,* 454 F.3d 180, 184 (3d Cir. 2006). Thus, while

remaining faithful to a "plain reading" of the provisions at issue, the Court must also strive for an

interpretation of *Sections 307* and *586* that gives effect to both if possible.

---

[10]    Although *Sections 307* and *586* are in different statutes, *Titles 11* and *28,* respectively, they both address the same
subject matter and should thus be construed *in pari materia. See, e.g., Federal Trade Comm. v. A.P.W. Paper Co.,* 328 U.S. 193, 202
(1946); *In re Kaiser Aluminum Corp.,* 2005 WL 735551 *3 (D. Del. 2005) (*Section 1341* of ERISA construed *in pari materia* with
*Section 1113* of the Bankruptcy Code.)

There are several other rules of statutory construction that may be relevant in the present case. One is that the text of a statute should not be read in such a way as to make part of the statute superfluous or redundant. *Connecticut National Bank v. Germain,* 503 U.S. 249, 252-54 (1992); *National Association of Home Builders v. Defenders of Wildlife*, __ U.S. __, 127 S. Ct. 2518, 2536 (2007). Another is that when Congress enacts a new statute courts presume that the legislators considered previous laws and passed the later law in harmony with the policy embodied in the earlier statute, in the absence of any express repudiation or modification. *Hellon & Associates, Inc. v. Phoenix Resort Corp.*, 958 F.2d 295 (9th Cir. 1992).

Applying the above principles leads to the conclusion that the UST does have the authority to seek and obtain a 2004 Examination in the proper circumstances. Clearly, *Section 307* is written in extremely broad language. Indeed, it is difficult to conceive of how *Section 307* could have been written in any broader language. The Court thus has no difficulty concluding that the plain meaning of the power to "raise" and to "appear and be heard" as to any issue in any bankruptcy case or proceeding includes the ability to conduct examinations pursuant to *Rule 2004* in the right circumstances. Countrywide, in apparent acknowledgment as to the otherwise far-reaching scope of the *Section 307* language, argues that it was only intended to be an enabling statute with the limited purpose of granting standing to the UST to perform the many specific duties set forth in *Section 586* and the various provisions of the Bankruptcy Code noted previously. *See n. 8, above.*

In that vein, Countrywide suggests that *Section 307* was only enacted to address the purported "confusion" that then existed (i.e., in 1986) as to whether the UST had standing to perform the specific duties listed in *Section 586* and the other, related provisions. *See Countrywide's Brief,*

pg 9. Countrywide's argument in this regard must fail.  There is nothing whatsoever in the statutory language of *Section 307* that supports Countrywide's argument.  Countrywide has cited no other, substantial authority in support of such a construction.[11]   If there truly had been confusion in the courts over whether the UST had standing to perform duties prior to the enactment of *Section 307*, one would assume that would be reflected in the case law of the period, but none has been cited. Moreover, if the Congressional intent behind *Section 307* was merely to confer standing and not to grant additional power, it would have been easy and natural to simply state that in the language of the statute.  *See, e.g., 18 U.S.C. §1956(b)(4)* (federal receiver appointed in money laundering cases "shall have standing equivalent to that of a Federal prosecutor" in seeking certain information about a defendant's assets).  Thus, the Court believes that the most natural and plain meaning of *Section 307* is that of a grant of expanded power to an office that was widely perceived to have proven its merit during the pilot program era.[12]

---

[11]       The only authority Countrywide cites to establish the alleged "confusion" that existed as to the UST's standing to perform duties prior to the enactment of *Section 307* is an article in a state bar journal.  *See* Ericka Palmer Rogers, *United States Trustee System, 2* March-Nevada Lawyer 16 (1994).  The author of that article states:

> Early in the development of the U.S. Trustee system there was discussion as to the standing of the United States Trustee.  The resolution of this issue is 11 U.S.C. § 307 which provides that the U.S. Trustee may raise, appear and be heard on any issue in any case or proceeding with the exception that the U.S. Trustee may not file a plan in a Chapter 11 case.

*Id.* at *17*. Presumably, this is the point of the article upon which Countrywide is relying.  (Countrywide simply cites to the article in general, so it is difficult to be sure).  There is, however, no citation to any authority in the article to support the author's contention respecting the purpose behind *Section 307*. As such, the Court can only view this as the opinion of the author entitled to little consideration.

[12]       Although the Court finds that the broad, general power of *Section 307* provides a statutory basis for the UST to proceed under *Rule 2004*, as previously noted, the UST has also advanced *Sections 586(a)(3)(G)* and *586(a)(5)* as alternative sources of such power.  *Section 586(a)(3)(G)* authorizes the UST to "monitor the progress" of cases and "take such action" as she deems appropriate to prevent undue delay.  It is somewhat of a stretch to conclude that the *Rule 2004* exams sought by the UST here would be done to prevent undue delay.  As for *Section 586(a)(5)*, it provides that the UST shall perform the duties prescribed for her under Titles 11 and 28.  Title 11 of course, includes *Section 307* with its broadly worded grant of power.  Thus, *Section 586(a)(5)* is certainly consistent with, and perhaps strengthens, the conclusion that the UST has the power to act here pursuant to *Section 307*. However, *Section 586(a)(5)* does not itself contain any independent grant of power.  If it does, it adds nothing beyond what is in *Section 307*.  Therefore, the Court sees no need to base its decision on that provision.

The Court readily acknowledges that the drafting "across statutes" found here between *Section 307* and *Section 586* does not present a model of legislative clarity. After all, if the scope of *Section 307* is really as broad as the Court believes it to be, was it even necessary for Congress to add the specific laundry list of duties under *Section 586(a)(3)* in the same legislation (the *1986 Act*) that created *Section 307*? *See n. 7, supra.* Perhaps not as a matter of pure logic since the broad power created by *Section 307* in the UST encompasses the "lesser" powers of that laundry list, making the list redundant.

However, statutes, particularly complex ones like the Bankruptcy Code and its related provisions in Title 28, cannot simply be reduced to their component parts and then subjected to tests of strict semantic logic. The numerous provisions and amendatory accretions over time in the Bankruptcy Code make it almost inevitable that certain inconsistencies will become apparent on close examination. Along those lines, the Supreme Court has noted that redundancies across statutes are not unusual events in drafting, and so long as there is no "positive repugnancy" between the two laws, a court must give effect to both. *See Connecticut National Bank,* 503 U.S. at 253.

At bottom, the Court cannot avoid the fact that the overall tenor of the *1986 Act* was a recognition of the success of the UST program and the intent to expand its presence, both geographically and in the scope of its powers and duties. Given that, the Court believes that the most natural reading of the statute is the one set forth in this Opinion. Additionally, *Section 586(a)(5)*, with its reference to the UST's performance of duties "prescribed ... under Title 11", as well as to those "consistent with Title 11 ... as the Attorney General may prescribe", is a further indication of an intent for expansiveness in the UST's power and not the cramped power that would result in giving the *Section 586(a)(3)* "laundry list" priority over *Section307.*

15

Countrywide also argues that giving *Section 307* its plain meaning would render *Section 586* and the other specific-duty provisions in the Bankruptcy Code superfluous.   However, the Court concludes that under its reading *Section 307* can be "harmonized" with *Section 586* and the other provisions so that they are not rendered superfluous.

The Court views *Section 586* and the others referenced statutory provisions as setting forth specific matters in which Congress has concluded that the UST could or should become involved, within the overall context of the broad power granted by *Section 307*.  While many of the issues that Congress intended the UST to become involved in were foreseeable, and thus amenable to specific grants of power or duty, others were not.  The deliberately broad language of *Section 307* ensures that the UST has the ability to act in areas where Congress did not specifically foresee and provide an explicit provision for the UST to do so.  This reading of the statute does not render *Section 586* and the other provisions superfluous.  These provisions, although perhaps not  "necessary" as a matter of strict logic given the overarching grant of power to the UST provided in *Section 307*, are nevertheless meaningful in their own right because of the insight they provide into how Congress intends the UST to exercise that power.[13]   On the other hand, if the Court were to adopt Countrywide's suggested reading of the statutes it would have to effectively "read out" the "any issue" language from *Section 307* by ignoring that language and treating it as superfluous.

---

[13]        An analogous example selected at random may help explain.  Pursuant to *28 U.S.C.  §516* the U.S. Attorney General is given broad authority to conduct all litigation in which the United States or one of its agencies or officers is a party.  In the year 2000 Congress created the *Valles Caldera Trust* as a wholly-owned government corporation for the purpose of managing the Valles Caldera Nature Preserve in New Mexico. *See 16 U.S.C. §698v-4.* The statute provides that the *Valles Caldera Trust* "shall be represented by the Attorney General"  in any litigation arising out of its activities. *16 U.S.C. §698v-4(j).* Could it be seriously contended that the Attorney General would not have the power to represent the Trust in litigation if Congress had not included this provision?  It is clear that Congress was not broadening the power of the Attorney General by enacting *Section 698v-4(j)*, but rather highlighting its intention for the Attorney General to act in an area where he already had the power to do so pursuant to *Section 516.*

Although only mentioned in passing in its Brief, at final argument Countrywide claimed that *11 U.S.C. §1109(b)* supports its view that the UST lacks the power to act here. *Section 1109(b)* provides:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee may raise and may appear and be heard on any issue in any case under this chapter.

*11 U.S.C. §11109(b)*. It is obvious that the operative language in this provision is very similar to the language of *Section 307*. Countrywide argues that if the UST is permitted to conduct a *Rule 2004* examination under *Section 307* then by the same token creditors, equity security holders, and other parties in interest may do so under *Section 1109(b)*. Countrywide raises the prospect of creditors taking advantage of this opportunity to examine other creditors not only on matters in connection with the particular case in question but as to their involvement in any other Title 11 or Chapter 11 matter. The apparent point of Countrywide's argument is that recognizing the authority of the UST to conduct these examinations could have the unintended consequence of leading to an unregulated "free-for all" of examinations by parties in interest at least in Chapter 11 cases and by analogy, in Chapter 13 cases.

The Court finds Countrywide's argument concerning *Section 1109(b)* also to be without merit. In the first place, the picture painted by Countrywide is a purely hypothetical one. Aside from the UST's effort currently under consideration, the Court is not aware of any clamor to conduct *Rule 2004* examinations of non-debtors. Countrywide has offered no evidence in support of such anticipated conduct. Nor is there any apparent reason why such activity may suddenly begin simply because of the ruling in this case. The decision in this matter should not be based on a

17

scenario that will likely never occur.  Second, the Court is not convinced that its ruling in favor of

the UST's right to conduct a  *Rule 2004* examination pursuant to *Section 307* in the present case

necessarily requires it to conclude that a party in interest possesses the same power pursuant to

*Section 1109(b)*.  The UST occupies a unique position within the bankruptcy system, and it may well

be that the Court would arrive at a different conclusion on the issue of  a party in interest's power to

conduct *Rule 2004* examinations pursuant to *Section 1109(b)* despite the similarity in language

between it and *Section 307*.  As it is, that issue is not presently before the Court and no ruling is made

on it.

Finally, even assuming Countrywide is correct in its analysis, Countrywide neglects

to factor in the Court's ability to monitor and control *Rule 2004* activities to prevent the abuse of that

process.  According to Countrywide, allowing any party in interest (in this case the UST) to exam

a third party to the extent requested in this case opens the floodgates for potential abuse of the *Rule

2004* exam process.  Such a position is grounded more in hyperbole than fact.  The Court always

remains available to rein in or restrict any attempt to abuse the process.  *See, e.g., In re Analytical

Systems, Inc.*, 71 B.R. 408, 412 (Bankr. N.D. Ga. 1987) (courts can fashion appropriate protective

order with respect to *Rule 2004* exams to provide any necessary due process safeguards.)  *See also,

Matter of Marin Motor Oil, Inc.,* 689 F.2d 445, 453 (3d Cir. 1982) (rejecting the contention that

multitudes of individual creditors and stockholders were likely to intervene in adversary proceedings

pursuant to *Section 1109(b)* if that provision were given a broad interpretation and finding that

bankruptcy courts have sufficient means to control any confusion, disorder or expense that might

result from those who do seek to intervene.)

18

*Case Law Supporting a Broad View of the UST's Powers*

In addition to the conclusion derived from the plain meaning interpretation of the statute, applicable case law supports a finding that the powers of the UST in this regard are broad indeed. This recognition serves as another factor favoring the view that *Section 586* and the other provisions should not be construed to function as "brakes" on what the UST is permitted to do.

The Court of Appeals for the Third Circuit has made the broad nature of the UST's authority clear in a series of cases. In *U.S. Trustee v. Price Waterhouse,* 19 F.3d 138 (3d Cir. 1994), the UST appealed from a district court order affirming a bankruptcy court order which approved the employment by several debtors-in-possession of an accounting firm that held a claim against their respective estates for pre-petition services. No creditor had objected to the employment, only the UST. The Third Circuit asked the parties to brief the question as to whether the UST possessed the necessary standing to pursue the appeal. After considering the parties' responses the court concluded, without an extended discussion, that the UST did possess standing to pursue the appeal pursuant to the broad general grant of power found in *Section 307*. No mention was made by the court of a need to find a specific grant of power in *Section 586* or elsewhere before the UST could so act.

In the subsequent case of *In re Columbia Gas Systems, Inc.,* 33 F.3d 294 (3d Cir.1994), the Third Circuit again found in favor of the UST on an issue of standing, this time providing a more detailed discussion. The debtor in that case had submitted proposed investment guidelines which the bankruptcy court approved over an objection by the UST who claimed the proposed guidelines were in violation of *11 U.S.C. §345(b)*. The UST appealed and the district court

19

reversed finding that the proposed investment guidelines did not meet the requirements of *Section 345(b)* which are mandatory, not merely suggestions.  The debtors then appealed to the Third Circuit arguing, *inter alia*, that the UST lacked standing to object to the investment guidelines because the UST had no pecuniary interest in the case and no "pertinent statutory duties" that would provide a basis for standing.  The Court flatly rejected the debtors' argument regarding the UST's standing, citing to *H.R. Rep. No. 764, 99th Congress, 2d Sess. 24* (1986), reprinted in *1986 U.S.C.C.A.N. 5227, 5237,* as evidence of congressional intent that the UST be given standing to raise, appear and be heard on any issue in any case or proceeding. 33 F.3d at 295-96.

The *Columbia Gas* Court noted that, although the House report does list certain specific matters within the responsibilities of the UST,  "in discussing the standing of the U.S. Trustee the Report did not limit it to the specific duties" set forth in the Report.  33 F.3d at 296.  The Court held that Congress had enacted *Section 307* to reflect this intent, and that "[it] is difficult to conceive of a statute that more clearly signifies Congress's intent to confer standing." *Id.*  In addition to *Price Waterhouse*, the Court cited with approval cases from other circuits in which various challenges to the UST's standing were rejected and *Section 307* was found to provide the UST public-interest standing without the need to assert a pecuniary interest.  *See*, *e.g., In re Revco D.S., Inc.,* 898 F.2d 498 (6th Cir. 1990) (UST had standing to appeal bankruptcy court's decision not to appoint an examiner under 11 U.S.C. §1104(b)(2)); *In re Plaza de Diego Shopping Center, Inc.,* 911 F.2d 820 (1st Cir. 1990) (UST had standing to appeal district court appointment of a trustee based on statutory responsibility to represent and protect the public); *In re Clark,* 927 F.2d 793 (4th Cir. 1991) (UST had standing to appeal the denial of a motion to dismiss Chapter 7 case for substantial

20

abuse).  *See* 33 F.3d at 296-97, and additional cases cited therein.[14]

In the more recent case of *United Artists Theatre Co. v. Walton,* 315 F.3d 217 (3d Cir. 2003), the court reaffirmed its broad view of the UST's powers under *Section 307*.  Citing *Columbia Gas*, the court held that the lack of pecuniary interest in the outcome of a bankruptcy proceeding did not deny the UST standing to challenge a proposed indemnification provision.  The court noted that USTs are "officers of the Department of Justice who protect the public interest by aiding bankruptcy judges and monitoring certain aspects of bankruptcy proceedings."  315 F.3d at 225.

The Court also finds persuasive a number of bankruptcy cases in which courts have specifically addressed the interrelationship between *Sections 307* and *586*.  For instance,  in *In re Miles,* 330 B.R. 848 (Bankr. M.D. Ga. 2004), the UST moved to dismiss or transfer venue in a Chapter 13 case filed in the Middle District of Georgia by debtors who were Alabama residents.  The

---

[14]    Another Third Circuit case, *Matter of Marin Motor Oil, Inc, supra,* provides some further guidance here on several points germane to the present case.  In *Marin* the Chapter 11 trustee initiated two adversary proceedings and the official creditors' committee sought to intervene in them, relying upon *11 U.S.C. §1109(b)*, which in relevant language and as previously noted, is very similar to that found in *Section 307* providing that a party in interest "may raise and may appear and be heard on any issue in a case under this chapter."  (The only differences are that *Section 307* refers to "case or proceeding" rather than just "case", and refers to "this title" rather than "this chapter").  The parties opposing the creditors' committee's attempted intervention argued that the term "case" used in *Section 1109(b)* did not encompass adversary proceedings.  The court rejected that "narrow interpretation" of the term.  It noted that most litigated matters in a bankruptcy case occur in adversary proceedings, and that the narrow interpretation being proposed would "drastically restrict the rights of parties to appear and be heard", something the court was not willing to do.

The *Marin* court's broad interpretation of the power of a party in interest pursuant to *Section 1109(b)*, of course, mirrors the expansive reading of the UST's powers under *Section 307* as made in *Columbia Gas* and the other cases cited.  The opposing parties in *Marin* also pointed out that the provision in the Bankruptcy Code authorizing the creation of creditor committees and setting forth their responsibilities, *11 U.S.C. §1102*, does not specifically mention the right of such committees to appear and be heard.  The court found that to be of no help to the opposing parties because *Section 1109(b)* does specifically deal with that subject and permits a committee to act.  In other words, the *Marin* court rejected an argument much like the one Countrywide makes here concerning *Section 307* and found that *Section 1109(b)* was a substantive source of power.  Finally, the court found that the power given to the committee in *Section 1109(b)* was more than merely the right to participate as an amicus, noting that the power to "raise" an issue went beyond the ability to submit briefs on an issue that had already been raised by someone else.  *Id.* at 454.  Thus, the court recognized the committee's full right of participation in the matter.

Although *Marin* was decided in a somewhat different context, the Court views it as being entirely consistent with a determination in the present case that the UST has the power to act under *Rule 2004*.

debtors , much like Countrywide in the present case, argued that the UST lacked standing to make

such a motion under *Section 307* because the broad language of that provision was subject to the

specific duties enumerated in *Section 586*.  The bankruptcy court in *Miles* flatly rejected the debtors'

argument, finding that there was nothing in the Bankruptcy Code or case law which would limit the

UST's ability to be heard under *Section 307* and no authority existed to suggest that the list of duties

under *Section 586* was exclusive. 330 B.R. at 849-50 .  The *Miles* court also referred to the legislative

history of *Section 307* to the effect that when Congress adopted that provision it was not meant to be

limited to the duties delineated under *Section 586.  Id.* at *850 (*quoting from H.R.  Rep. No.  99-764,

at 27 (1986), reprinted in 1986 U.S.C.C.A.N. 5227, 5240.)  To similar effect, *see In re LWD, Inc.*,

342 B.R. 514 (Bankr. W.D. Ky. 2006) (UST could bring adversary proceeding pursuant to *Section

307* alleging that defendants' actions resulted in improper  diminishment of the estate's assets to the

detriment of creditors notwithstanding contention that UST had exceeded the scope of duties and

responsibilities set forth under *Section 586*).

In addition to its position that *Section 307* does not provide a general source of power

for the UST to conduct an examination and obtain discovery under *Rule 2004*, Countrywide also

argues that the UST should not be permitted to proceed in this matter because the *Notice of

Examination* is unrelated to any "case" or "proceeding" within the meaning of *Section 307.*

Countrywide cites *In re Attorneys at Law and Debt Relief Agencies,* 353 B.R. 318 (S.D. Ga. 2006),

in support.  In that case, the court held that the UST lacked standing to prosecute an appeal of a *sua

sponte* general order issued by the bankruptcy court to the effect that certain provisions regulating

debt relief agencies did not apply to attorneys whose activities fell within the scope of the practice

of law.  The court in *In re Attorneys at Law* acknowledged that the power Congress granted to the

UST under *Section 307* is "undeniably broad", but is not unconditional.  In particular, the court noted

that *Section 307* limited the UST to the authority to appear in active cases and proceedings.  It found

that a "case" refers to a matter initiated by the filing of a bankruptcy petition, and a "proceeding"

refers to everything that happens within the context of a bankruptcy case.  353 B.R. at 322-23.  The

court pointed out that no bankruptcy petition had ever been filed initiating the *sua sponte* general

order in dispute and no case or proceeding was in existence at the bankruptcy court level or created

by the order.  Thus, the court concluded that the UST lacked standing to pursue the appeal.

Without even needing to comment further on the decision in *In re Attorneys at Law*,

it is apparent that the case is clearly distinguishable from the matter before this Court.  All of the

*Notices of Examination* under consideration were issued in the context of bankruptcy cases that were

previously filed in this Court.[15]  The requirement under *Section 307* for the existence of a case or

proceeding has clearly been met.

### The Language of Rule 2004

Despite determining that the UST is authorized to raise and be heard on any

appropriate matter in the current proceedings, because of the issues currently pending before it, the

---

[15]    Countrywide  points out that some of the cases had already been closed at the time the Notices of Examination
were served.  See Countrywide *Brief* at 11.  Strictly speaking, however, at the time the UST's Notices of Examination were filed any
closed cases had already been reopened  pursuant to the Consolidation Order in the Chapter 13 Trustee matter docketed at Misc. No.
07-00203.  The Consolidation Order in that case, entered on October 18, 2007, provided that any of the 293 cases in which the
Chapter 13 Trustee had filed a  *Motion to Compel* that were then closed were thereby reopened.  The UST filed its *Notices of
Examination* in the 10 "context cases" on October 19, 2007.  Even if the closed cases had not already been reopened, the Bankruptcy
Code contemplates reopening closed cases on a liberal basis.  The UST possesses standing to move to reopen a closed case.  *See* 11
*U.S.C. §350(b)*; *Fed.R.Bankr.P. 5010*;  *In re Winburne,* 196 B.R. 894, 900 (Bankr. N.D. Fla.1996); *In re Stewart,* 154 B.R. 711
(Bankr. N.D. Ill. 1993).  Thus, the fact that some of the 10 (now 7) "context cases" had been closed, for the above reasons and for
reasons to become apparent later in this Opinion, is of no moment in the Court's determination in this matter.  Furthermore, as is
discussed *infra*, the Court will "consolidate" all of the *Rule 2004* requests for documentation at issue here under the *Hill* case
proceedings, a matter that was indisputably an open case with pending issues raised by the Debtor at all relevant times.

Court's review is not ended.  When considering whether the UST can actually request and convene a 2004 Exam, in addition to reviewing the UST's statutory authority, the Court is also required to consider the specific language of *Rule 2004*, the vehicle under which the UST is attempting to proceed.  In straightforward fashion, *Rule 2004(a)* provides:

> On motion of any party in interest, the court may order the examination of any entity.

*Fed.R.Bankr.P. 2004(a)*.  Based on the clear language and construction of the Rule, coupled with the statutory authority granted the UST by *Section 307*, if the UST qualifies as a "party in interest" then *Rule 2004* contemplates that she can convene a 2004 Exam and engage in discovery pursuant to the Rule.  Unfortunately, the term "party in interest" is not expressly defined in either the Bankruptcy Code or the Bankruptcy Rules.

The Bankruptcy Code does include a provision that contains examples of who or what qualifies as a "party in interest", at least for cases under Chapter 11.  *See 11 U.S.C. §1109(b)* ("including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee").  However, pursuant to *11 U.S.C. §102(3)* the word "including" is not to be construed as a limiting term.  As such, the list in *Section 1109(b)* is not an exhaustive list.  *See In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985); *In re Combustion Engineering, Inc.*, 391 F.3d 190, 214, n. 21 (3d Cir. 2004).  The holding in *Amatex* required courts to "determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation." 755 F.3d at 1042.

24

Applying this test for purposes of *Rule 2004,* the Court concludes that the UST is a "party in interest" in this case. The UST has a sufficient stake in this case because she has been charged to act as a watchdog to protect the integrity of the bankruptcy system. *See, e.g.*, *In re Revco D.S., Inc.*, *supra,* 898 F.2d at 500, *In re Mazzocone,* 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995), *In re Georgetown Steel Co., LLC*, 306 B.R. 549, 556 (Bankr. D. S.C. 2004), *In re Eagle Picher Holdings, Inc.*, 2005 WL 4030132 *4 (Bankr. S.D. Oh. 2005), *In re Fibermark*, 2006 WL 723495 *8 (Bankr. D. Vt. 2006), *In re Ventura*, 375 B.R. 103, 107 (Bankr. E.D.N.Y. 2007), *In re South Beach Securities, Inc.*, 376 B.R. 881, 892-93 (Bankr. N.D. Ill. 2007). *See also In re Parsley*, 2008 WL 622859 *4-5 (Bankr. S.D. Tex. 2008). Assuming for the moment that the UST has at least averred sufficient allegations of fact to raise the possibility of Countrywide's abuse of the bankruptcy system, the UST certainly has an interest in looking further into this possibility for no other reason than she is required to do so because of her statutory duties as interpreted by applicable case law. *See, e.g.*, *In re Castillom,* 297 F.3d 940, 950 (9th Cir. 2002) (UST is the watchdog of the bankruptcy system charged with preventing fraud and abuse).

Considerable case law exists in further support of this Court's finding that the UST qualifies for various purposes as a "party in interest" under the Bankruptcy Code. Many of those courts' findings in this regard rely upon the clear language of *Section 307* to reach that conclusion. *See In re Internet Business Equipment, Inc*., 23 F.3d 311, 317 (10th Cir. 1994); *In re Columbia Western, Inc*., 183 B.R. 660, 664 (Bankr. D. Mass. 1995); *In re Gold Standard Baking, Inc.*, 179 B.R. 98, 104 (Bankr. N. D. Ill. 1995); *In re Gideon, Inc.,* 158 B.R. 528, 530 (Bankr. S.D. Fla. 1993); *In re BAB Enterprises, Inc.,* 100 B.R. 982, 985 (Bankr. W.D. Tenn. 1989); *In re Allen,* 2007 WL 1747018 *2, n.5 (Bankr. S.D. Tex. 2007); *In re Costello,* 150 B.R. 675, 678 (Bankr. E.D. Ky. 1992).

25

The Court agrees with these cases. The UST is equivalent to a party in interest for many purposes, including for purposes of *Rule 2004*. As such, the language of *Rule 2004(a)* provides further support for the conclusion that the UST has the power to require Countrywide to produce documents and provide a witness for purposes of examination.

Therefore, based upon the statutory language, as well as the relevant case law, the Court concludes that it is within the power of the UST to seek the production of documents and the examination of witnesses pursuant to *Rule 2004.* However, this authority is not unfettered. The Court agrees with Countrywide's position that there must be some limitation on this power to prevent it from being abusively exercised. As such, consideration of the appropriate limitations to place on the UST's power in the context of this case is necessary for the purpose of determining the extent to which the document production and examination may proceed.[16]

### *The UST's Burden and Scope of Her Power*

Countrywide points out that a finding of an unchecked power in the UST to pursue examinations of creditors under *Rule 2004* could lead to full-scale "investigations" by the UST that would unfairly intrude into the private business affairs of creditors and chill their participation in the

---

[16]      There is another possible limitation on the UST's ability to invoke the *Rule 2004* procedure. Some courts have found that when an adversary proceeding or a contested matter is pending that it is improper for one of the parties to use a *Rule 2004* examination as a substitute for, or in addition to, the normal discovery provided by *Fed.R.Civ.P. 26, et. seq.* (incorporated into bankruptcy proceedings by *Fed.R.Bankr.P. 7026-7036* and *9014(c)*). *See 10 Collier on Bankruptcy* at ¶7026.1 (2007) at n.10, and cases cited therein. Consistent therewith, Countrywide believes the UST may never conduct a *Rule 2004* examination. *Transcript of Hearing* February 28, 2008 at 38, Document No. 60. However, this potential limitation does not appear to be applicable here because there is no pending adversary proceeding or contested matter at this docket. And, while there is a pending contested matter in *Hill* (a Motion to Enforce Discharge) in which the UST has participated to an extent, she has not sought leave to join as a party in that matter. Accordingly, even if the Court were to adopt this limitation it would not change the result of this decision.

bankruptcy process.[17]  That is a legitimate concern which the Court takes seriously.  While the UST

was undoubtedly intended to be a "watchdog" of the bankruptcy system, that cannot and should not

be viewed as providing a license for the UST to engage in potentially invasive and expensive *Rule*

*2004* discovery based on nothing more than her own curiosity.  Such a license would be inimical to

bedrock principles underlying the relationship between the federal government and the people

(intended in the broad sense, including corporations such as Countrywide.)[18]

    Accordingly, the Court concludes that when a creditor objects the UST must meet a

threshold standard of "good cause" before she will be permitted to conduct examinations and require

the production of documents pursuant to *Rule 2004*.  *See, e.g.*, *Matter of Wilcher* 56 B.R. 428 (Bankr.

N.D. Ill. 1985) (imposing standard of good cause for Rule 2004 discovery  directed to creditor); *In*

*re Continental Forge Company, Inc.*, 73 B.R. 1005 (Bankr. W.D. Pa. 1987) (examinations of

---

[17]    In fact, throughout its closing argument in this matter Countrywide chose to characterize the UST's actions in this case as an "investigation" rather than an examination under *Rule 2004*.

[18]    The Fourth Amendment protection against unreasonable searches and seizures applies to commercial buildings and corporations as well as to individuals.  *See Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978).  Thus, cause and concern for possible abuse if the UST were given completely free rein to proceed under *Rule 2004* is justified.  Courts have recognized in similar contexts, that the mere possibility of abuse cannot be used to thwart  legitimate government inquiry.  For instance, in *United States v. Bisceglia,* 420 U.S. 141 (1975) the Court found that the Internal Revenue Service had the statutory authority to issue a "John Doe" summons to a bank to discover the identity of a person engaged in bank transactions suggesting the possibility of liability for unpaid taxes. In so holding, the Court recognized that "investigations" pursued by the IRS do involve some invasion of privacy and "may be abused, as all power is subject to abuse." However, the Court held that the solution to that possibility was not to restrict the IRS's authority. The Court noted:

> Substantial protection is afforded by the provision that an Internal Revenue Service summons can be enforced only by the courts.... Once a summons is challenged it must be scrutinized by a court to determine whether it seeks information relevant to a legitimate investigative purpose and is not meant 'to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any further purpose reflecting on the good faith of the particular investigation.'...The cases show that the federal courts have taken seriously their obligation to apply this standard to fit particular situations, either by refusing enforcement or narrowing the scope of the summons.

*420 U.S. at 146* (citations omitted).  This Court is adopting the same approach with respect to *Rule 2004* examinations by the UST. If the UST's effort in that regard is challenged, as it has been here, the Court will scrutinize the effort to ensure that the UST is acting with a legitimate purpose and not abusing her power.

witnesses having no relationship to the debtor's affairs and no effect on the administration of the

estate is improper; a threshold requirement of good cause determined on a case by case basis must

first exist.); *Fed.R.Bankr.P. 2004(b)*.

      The question of whether the UST has shown sufficient good cause to pursue a *Rule*

*2004* examination and the type of discovery implicitly allowed by the Rule in a given matter is not

suited to application of a mechanical test.  Rather, a totality of circumstances approach is required,

taking into account all relevant factors.  Consistent with this approach it is appropriate to apply the

"good cause" standard in what may be termed a "sliding scale" manner or balancing test.  That is to

say, the level of good cause required to be established by the UST before she can obtain certain

documents or pursue a certain line of inquiry in a *Rule 2004* examination involving a creditor will

vary depending on the potential intrusiveness involved.  *See, e.g., In re Fearn*, 96 B.R. 135, 138

(Bankr. S.D. Ohio 1989) (scope of Rule 2004 examination should not be so broad as to be more

disruptive and costly to the party to be examined than beneficial to the party seeking discovery); *In*

*re Express One International, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (same); *In re Eagle-*

*Picher Industries, Inc.,* 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (same); *In re Texaco, Inc.,* 79

B.R. 551, 556 (Bankr. S.D. N.Y. 1987) (same).  *See also In re Hammond*, 140 B.R. 197, 201 (S.D.

Ohio 1992) (court must balance the examiner's interests against the debtor's interest in avoiding the

cost and burden of disclosure.)

      Under this standard inquiries that are tightly-focused on the creditor's relationship

with a particular debtor will require a relatively low level of good cause because they represent a low

level of intrusion into the creditor's business affairs and a low risk of abuse.  Inquiries that seek far-

reaching information on policies and procedures of general application in the creditor's operation will require a correspondingly higher showing of good cause because they are inherently more intrusive and present a greater potential for abuse.  This initial burden on the UST to justify its *Rule 2004* examination and the concomitant scope of the exam are necessarily interrelated concepts.  Use of this sliding scale approach will provide the Court with the flexibility to analyze a *Rule 2004* examination request by the UST on a case-by-case basis and tailor an acceptable scope when it is challenged by the creditor.

Regardless of whether the UST has met the required good cause standard, the Court is also mindful of the permitted scope of discovery under *Rule 2004*, which is limited to:

> the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may effect the administration of the debtor's estate, or to the debtor's right to a discharge.

*Fed.R.Bankr.P. 2004(b)*.  The Court is further mindful that, while *Rule 2004* allows a fishing expedition to some extent, it may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs.  *Matter of Wilcher*, *supra*.  Subject to the foregoing considerations, it is appropriate to review the scope of what is being sought by the UST and determine the extent of discovery to be permitted.  Before turning to that task, however, it is first necessary to consider recent occurrences in two, other pending matters that affect this case.

*Developments in Related Cases*

Thus far the Court has described the approach it would take in regards to the pending

29

issues if the matter were being decided in a vacuum. Such is not the case. Instead, developments in

two related matters are highly relevant here, which in the end, significantly simplify the Court's

analysis. The two matters in question involve the *Consolidated Proceedings* filed at Misc. No. 07-

00203 which were initiated by the Chapter 13 Trustee and *In re Hill*, Case No. 01-22574, one of the

individual, "context cases" involved in this proceeding as well as in Misc. No. 07-00203. Because

of the significance of the developments in those related matters it is necessary to explain them both

in some detail.[19]


*In Re Consolidated Proceedings, Misc. No. 07-00203*


As was indicated, this matter concerns 293 separate but similar motions filed by the

Chapter 13 Trustee asking the Court to compel Countrywide to provide loan histories and to impose

sanctions for Countrywide's alleged failure to timely process Chapter 13 Trustee distribution

payments in pending cases. These 293 motions were consolidated by the Court at Misc. No. 07-

00203. Among the 293 cases are the seven, remaining, individual "context cases" involved in this

matter.[20] At a December 5, 2007 status conference in Misc. No. 07-00203 the Parties advised the

Court that they had agreed to submit the entire matter to mediation. The Court approved the

approach and entered an Order on December 6, 2007, directing the Parties to report back with a

---

[19]    The *Federal Rules of Evidence* apply in bankruptcy proceedings. *Fed.R.Evid. 101; Fed.R.Bankr.P.9017.* This includes *Fed.R.Evid. 201(c)* which permits a court to take judicial notice of adjudicative facts whether requested to do so by the parties or not. This authority includes the power to examine the record of prior bankruptcy proceedings and take judicial notice of them. See, e.g., *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 416 n.3 (3d Cir. 1988). In this case, the Court believes it is necessary to take judicial notice of relevant events occurring in both the *Hill* case and the Chapter 13 Trustee's case at Misc. No. 07-00203, particularly as they relate to Countrywide's voluntary agreement to provide discovery in those cases. The Court would further note that both Countrywide and the UST have participated in those other proceedings and were obviously aware that what happened there might well have an effect or impact on this case.

[20]    See n. 3, above.

proposed time frame for mediation, and if possible, an agreed-upon mediator.  On December 10,

2007, based on an agreement between the Parties, the Court entered its *Consent Order Establishing*

*Procedures for Countrywide Home Loans, Inc.'s Production of Loan Histories to the Chapter 13*

*Trustee*, Document No. 93 ("Consent Order").  By this *Consent Order* Countrywide became obligated

to provide the respective "loan history" to the Chapter 13 Trustee for each of the 293 Debtors

involved in the proceeding except for any who might "opt out" by filing a timely objection to

disclosure of their loan history before the date for the planned disclosure.

        The *Consent Order* directed the Chapter 13 Trustee to hold the respective loan

histories in confidence.  The following provision was also included in the *Consent Order*:

> (8)        The Trustee has represented that she has no intention of disclosing
> the Loan Histories to the UST merely because of the UST's
> initiation of the matters pending at *Miscellaneous No. 07-00204*.
> However, nothing in this Order shall be deemed as a restriction on
> the Trustee's duty to make any disclosure pursuant to her
> obligations under *18 U.S.C. §3057*.

*Consent Order* dated December 10, 2007, Document No. 93.  The Court views Countrywide's

voluntary agreement to turn over the respective loan histories to the Chapter 13 Trustee, including

those from the seven, context cases, as highly relevant to the present case.  At the very least, it

negates any objection by Countrywide in this matter that requiring it to turn over the seven, specific

loan histories involved herein would be "overly burdensome" or would implicate any insurmountable

confidentiality concerns.

31

*In Re Hill, Case No. 01-22574*

On June 25, 2007, the Debtor in this case filed a *Motion to Enforce Discharge,* Document No. 59 ("Sanctions Motion") alleging that Countrywide had violated the Discharge Order entered by the Court in March 2007 in various respects. The case, which had been closed, was formally reopened on August 8, 2007 by Court Order resulting from a Motion filed by the Debtor, not the UST. It is significant that all of this occurred prior to any action taken by the Chapter 13 Trustee in Misc. No. 07-00203 or the UST in Misc. No. 07-00204. As part of the proceeding on the *Sanctions Motion*, the Debtor, the Chapter 13 Trustee and the UST each served discovery requests on Countrywide. This discovery consisted of the typical discovery sought by a litigant pursuant to *Fed.R.Bankr.P. 7033, 7034*, and *7036*, and not pursuant to *Rule 2004*. Countrywide initially resisted certain of the discovery requests from the Debtor and the Chapter 13 Trustee by filing a *Motion for Protective Order,* Document No. 127. However, at a hearing held on February 14, 2008 Countrywide informed the Court that it had agreed to withdraw the *Motion for Protective Order*. Thereafter, Countrywide agreed to provide all of the discovery being sought without further objection. *See Transcript of Hearing on Motion for Protective Order*, February 14, 2008, at 64-66, Document No. 160. It was agreed by the parties that a copy of the discovery responses were also to be served on the UST. *Id.* at 67-68. This agreement by Countrywide was made part of a *Consent Order* entered by the Court on February 19, 2008, Document No. 154.

The Court views the voluntary agreement by Countrywide to provide the requested discovery in the *Hill* case as tantamount to a waiver of any objections as to any corresponding

32

discovery requests in question here.[21]  Therefore, to the extent that any of those discovery requests are duplicative of what is being sought in the present case, the Court overrules Countrywide's objections in that regard without more.

The effect of the developments in these two cases on the present case will be discussed in more detail below.

*The Documents Being Sought by the UST, Generally*

The documents being sought by the UST in this matter are set forth in Exhibit "A" to the *Subpoenas*.  12 categories of documents are described.  *See Appendix "A", below*.  For purposes of this analysis, the documents can be conveniently organized into two groups.  The documents in the first group (consisting of Categories 1-4) are general in nature, relating to Countrywide's policies and procedures and requiring production of the same documents in response to each of the *Subpoenas*.  Obviously, if production of these documents is made with respect to any one of the context cases, the UST will receive the same documents as if production were made as to all the context cases. The document requests in this first group represent the highest potential for intrusion into the private business affairs of Countrywide, hence a higher level of "good cause" must be shown before disclosure will be required.  The documents in the second group (consisting of Categories 5-12) are specific to each of the context cases because they relate to the account of the individual debtors in each context case rather than to the general policies and procedures of Countrywide. Before requiring a response to these documents a lower level of "good cause" will be required.

---

[21]        At the time of oral argument on this matter, Countrywide essentially agreed to this prospect.  *See Transcript of Hearing on Motion for Protective Order*, February 14, 2008, at 64-66, Document No. 160.

*The Documents in Categories 1-4*

As indicated above, if production of the documents in these categories is made as to any one of the context cases there is no need to consider any of the other context cases because they all involve the same documents. That is exactly the situation in which Countrywide finds itself because of its voluntary agreement to turn over the documents requested by the Debtor and the Chapter 13 Trustee in the *Hill* case. Without getting into an extensive discussion as to a comparison between the document requests in *Hill* and those at issue in the present case, it suffices to say that the UST has acknowledged that the documents it will receive (or already has received) in *Hill* will be satisfactory as a response to Categories 1-4 in this case. The Court took care to confirm this at the February 28, 2008 oral argument:

| Court: | But having said that, in the first four items that you're requesting, how do they differ from what, on consent, is being provided by Countrywide [in *Hill*]? |
|---|---|
| DePasquale: | Indeed, your Honor, they don't, and I'm not asserting–One, I'm not asking for redundant discovery. They are the same. If– |
| Court: | All right, let me stop you there. Then it's a moot question, isn't it? |
| DePasquale: | Indeed, your Honor. ..... |
| Court: | Is that your position? You agree that the *Hill* case provides one through four of the request for production– |
| DePasquale: | Yes, your Honor. |

*Transcript of Hearing,* February 28, 2008 at 72-73, Document No. 60. Thereafter, Mr. DePasquale, on behalf of the UST, was asked "point blank" by the Court if the UST was withdrawing her request for Categories 1-4 documents in light of the agreement by Countrywide in *Hill* at which time the UST

answered in the affirmative.  *Id* at 74.

Because the UST has conceded that in *Hill* she will be receiving all documents responsive to Categories 1-4 in the *Subpoenas*, and because she has actually withdrawn those document requests, the Court need not make a determination whether the UST has shown a sufficiently high level of "good cause" to obtain those documents pursuant to *Rule 2004*.  The matter is moot.

*The Documents in Categories 5-12*

The documents being sought in Categories 5-12 are specific as to each of the debtors in the seven context cases.  The exact language of the requests is set forth in *Appendix "A"* to this Opinion, *infra*, but  in general they include such things as the particular note and mortgage for each "context" case, the respective loan payment history, documents related to preparation of and support for the specific proof of claim, documents related to receipt and recordation of payments on the specific loan, and documents related to attempts to collect the debt from the respective debtor or otherwise communicate with each debtor.

The exact, current status of Countrywide's objections to these document requests is somewhat unclear.  The following exchange between the Court and counsel for Countrywide occurred at the February 28, 2008 argument:

> Court:                    But tell me, what is your problem with items five through 12 (sic)
>                                 in every case other than *Hill*?
>                                 ...

35

| Connop: | The Court has made pretty clear today what its position is on our fundamental arguments dealing with the powers of the U.S. Trustee to perform the examinations.  That was the basis for our dispute with Mr. DePasquale concerning the specific issues.   We did not feel they had the legal authority to engage in that discovery, and we would not agree to simply turn those matters over. |
|---|---|
|  | However, your Honor, should you ultimately determine that, indeed, the U.S. Trustee is entitled to this discovery, we are not going to lodge continued objections.  We will produce that information subject to the final determination of their authority to conduct these examinations. |

*See Transcript of* Hearing, February 28, 2008, at 75-76.  As is apparent from the preceding sections of this Opinion, the Court has in fact now finally determined that the UST has the power to obtain discovery pursuant to *Rule 2004* provided she demonstrates the requisite good cause.  On one reading of Counsel's statement quoted above, it may be that Countrywide is therefore pressing no further objection to these document requests because of the Court's ruling.   However, because Countrywide's position on that issue is less than clear, and because of the element of "good cause" that the Court has found must be shown, the Court will proceed to rule on Countrywide's remaining objections.


*General Showing of Good Cause by Trustee in this Case*


The Court has little difficulty concluding that the UST has met her initial burden of sufficient "good cause" to proceed with the Countrywide *Rule 2004* exam and obtain receipt of the documentation sought by her in advance of the examination in Categories 5-12.  There are a number of reasons for this conclusion.  Most importantly, the UST has shown sufficient proof of a "common thread" running throughout the context cases sufficient to at least raise the possibility of a systemic problem worthy of the UST's attention.  That is to say, the UST has not simply randomly chosen

cases and demanded documentation from Countrywide.

As an initial matter, the documents at issue relate very precisely to the specific debtors' loans, the interaction between Countrywide and each debtor, and the interaction between Countrywide and this Bankruptcy Court. These are not documents that will implicate any private business affairs or strategies of Countrywide, and there is no question that they would be discoverable in traditional litigation between the debtor and Countrywide over the respective loan if the proceeding had been brought as an adversary proceeding or contested matter. Thus, because turning over the documents will not subject Countrywide to an unfair intrusion into its private business affairs, the UST's burden of demonstrating good cause to obtain them is a modest one.

In a vacuum, a number of the events sought to be examined by the UST in the context cases may ultimately be explained away as counsel error, negligence or procedural failings. In reviewing the seven, remaining context cases on an individual basis, the majority of the problems sought to be examined by the UST appear somewhat benign. Then again, the issues currently at play in the *Hill* case, at least based upon the state of the current record, appear somewhat problematic for Countrywide. However, as of now, that proceeding involves mere allegations without any formal findings as yet by the Court. Those specific matters are being addressed in the pending contested matter.

More broadly and as noted, the UST has sufficiently identified a common thread among the context cases to warrant some inquiry on her part. Viewed collectively as a group, the context cases appear to reflect a common pattern, thread, or theme that runs through them involving the manner in which Countrywide, generally, calculates and determines the extent of its bankruptcy claims.

37

Several relief from stay cases are involved in the group of context cases (*In re Topper,* Case No. 05-20772-TPA*; In re Olbeter,* Case No. 04-33361-JKF*; In re Bock,* Case No. 04-32812-BM).  A motion to dismiss case (*In re Karleski,* Case No. 04-31355-JKF), several proof of claim issues (*In re Stemple*, Case No. 03-11792; *In re Olbeter*) and two post-discharge injunction violation cases (*In re Hill*, Case No. 01-22574-JAD; *In re Benvenuto*, Case No. 02-20946-JKF) are also identified.  All of these cases generally involve and call in question the calculation by Countrywide of the debtor's obligation to it while in bankruptcy or after discharge.  The common thread running through all the cases is the manner in which Countrywide computes its bankruptcy claim at various stages of the bankruptcy process.

In the "relief from stay" cases, as in the "motion to dismiss" case, Countrywide's computation of its bankruptcy claim for purposes of filing and prosecuting the motions, and the reasons for any miscalculations and errors made by Countrywide in the claim determination process when making the initial decision to file the motions, is at issue.

In the "proof of claim" cases, again, the essence of the issue goes to Countrywide's "in house" calculation of its claim for purposes of the pending bankruptcy.  As to be expected, in the proof of claim cases the miscalculation of the Countrywide claim occurs in the earlier stages of the cases while the claim calculation in the relief from stay type cases can arise at any time during the case.

Finally, the "post-discharge injunction" cases also involve the manner in which Countrywide computes its outstanding claim even though the focus of the claim computation process

38

arises after Countrywide receives the notice of the debtor's discharge and the bankruptcy case is closed.  Questions surely arise as to why Countrywide fails to honor the terms of the respective discharge orders or the orders approving the Trustee's final account which, in this District, specifically state that all payments are current as of the date of the Trustee's last distribution payment.  How is notice of these particular orders handled internally by the staff person(s) receiving the notice?  How are they posted on the respective accounts?  It might be argued that many of these same questions will also arise in and most likely be answered in the *Hill* contested matter.  Nevertheless, the scope of the *Hill* contested matter is technically restricted solely to the claim calculation process after a case is closed as opposed to issues arising generally throughout the course of a bankruptcy case and involving general issues as to Countrywide's claim calculation process.

It has certainly not been proven that Countrywide did anything wrong in any of these cases and the Court specifically is not making any finding in that regard by this Opinion.  The Court merely finds that the UST has made a showing of a common thread of potential wrongdoing in each of the cases that is sufficient to meet the general standard of good cause necessary for her to proceed under *Rule 2004*.

As was indicated previously, not only must the UST demonstrate good cause to proceed under *Rule 2004*, she must also be pursuing discovery that falls within that which is permitted by the Rule.  In this case the Court finds that the matters sought to be examined by the UST "relate ... to the liabilities and financial condition of the debtor" and also "affect the administration of the debtors' estates" in the seven, context cases as they arise at various times during the bankruptcy case. *Fed.R.Bankr.P. 2004(b).*  Simply stated, this requirement of *Rule 2004(b)* has been met.

*Good Cause as to the Documents*

As stated above, the Court generally finds that the UST has shown sufficient good cause to proceed under *Rule 2004*. Before proceeding further a brief discussion related specifically to the documents sought by the UST in Categories 5-12 (i.e., the ones which remain at issue) will be helpful followed by a similar discussion about the examination.

The Court cannot ignore that Countrywide has already voluntarily agreed to turn over loan histories to the Chapter 13 Trustee in Misc. No. 07-00203. That act by Countrywide will include the "loan histories" of the debtors in the seven cases involved in this proceeding. Although it is not entirely clear what materials are included in those loan histories, it would seem self-evident that to a large extent it will consist of the same documents being sought here in Categories 5-12.[22] For instance, Counsel for Countrywide at Misc. No. 07-00203 represented to the Court that the "master loan history" which Countrywide would be providing for each debtor "contains every debit and credit to that loan from its inception to the date it's printed ... so it is a comprehensive list of the activity on that loan." *Transcript of Hearing* dated Dec. 5, 2007, at 45, Document No. 106. Since Countrywide has already voluntarily agreed to provide this information to the Chapter 13 Trustee there is no reason why the UST should not also receive similar information here. Moreover, Countrywide has already agreed to provide information to the UST in the currently pending contested matter in *Hill* that is potentially far more "intrusive" into its private business affairs than would be the materials sought in Categories 5-12, which are narrowly tailored to the individual debtors in the context cases.

---

[22]    At the time of oral argument Counsel for Countrywide conceded as much advising the Court that once the legal issue was decided Countrywide would not interject any specific objections to the items requested in Categories 5-12 of the *Subpoena*.

The Court has also considered Countrywide's other, "per se" objections with respect to the documents in Categories 5-12 (overbreadth and vagueness, exceeding the scope of *Rule 2004(c)*, inconvenience and burden, invasion of the attorney-client and work-product privileges, proprietary and confidential nature of information sought, impermissible fishing expedition, and relevance). The Court finds no basis for any of these objections, at least on the evidence presented. These objections will also be denied. Although based on the current record, it appears Countrywide has waived the right to do so since it failed to provide any specific evidence of the same, if there are any specific documents that Countrywide believes are protected by privilege the Court will entertain a further, focused motion solely in that regard from Countrywide.

### Good Cause and Permissible Scope of the Rule 2004 Examination

The proposed scope of the *Rule 2004* examination is consistent with the level of good cause demonstrated by the UST. The *Notice of Examination* itself describes the scope of the exam as:

> ...regarding [Countrywide's] bankruptcy procedures as they relate to the Debtors' financial affairs, the administration of their estate, and the impact of Countrywide's bankruptcy procedures on the integrity of the bankruptcy process in the Western District of Pennsylvania.

*See Notice of Examination*, Document No. 6. *See also Appendix "B", below,* for a list of the topics for the examination that was attached to the *Subpoenas* as Exhibit "B." Countrywide has raised four, specific objections related to the examination. First, it objects to the *Notice of Examination* since it claims the UST has no authority to convene or conduct the same and it exceeds the UST's powers and duties. The Court has previously found that the UST does have the power to proceed under *Rule*

41

*2004*, therefore that objection is overruled.

Second, Countrywide claims the scope of the examination is "overly broad, unreasonably vague and ambiguous" as to use by the UST of the phrase "bankruptcy procedures" in its document request.  The Court finds no merit to this objection.  As indicated above, in the *Hill* matter Countrywide has previously withdrawn its objections to producing its policies and procedures concerning debtors generally in bankruptcy, proofs of claim, and filing motions for relief from stay, that is, Categories 1-4 of the document requests herein.  It appears fairly clear that the UST seeks to examine the Countrywide representatives about these policies and procedures.  To the extent there is any question as to overbreadth or vagueness regarding the scope of the exam identified in the *Notice of Examination* itself, that problem is cured by the detailed list of topics attached to the *Subpoena* as Exhibit "B" which is to be read in conjunction with the *Notice of Examination*.  The Court further notes that in this list the UST has restricted the scope of the exam to Chapter 7 and 13 bankruptcy cases.  This limitation is appropriate and in overruling the objection the Court will direct that it be honored.

Third, Countrywide objects that the *Notice of Examination* is beyond the scope of *Rule 2004*.  Again, the Court disagrees.  The scope of *Rule 2004* examinations is recognized as broad, unfettered and in the nature of a "fishing expedition."  *See In re Lev,* 2008 WL 207523 *3 (Bankr. D. N.J. 2008), *In re Silverman*, 36 B.R. 254 (Bankr. S.D.N.Y. 1984), *In re Vantage Petroleum Corp.*, 34 B.R. 650 (Bankr. E.D.N.Y. 1983).  It is therefore proper to give the "scope of examination" provision set forth in *Rule 2004(b)* a broad reading to effectuate the overall purpose behind the Rule.  Applying that standard, the Court finds that the examination the UST seeks to conduct here

42

comfortably falls within the allowed limits under *Rule 2004(b)*, that is, an inquiry into the liability of the respective debtor(s) and into any matter which may affect the administration of their respective estates. This objection is overruled.

Finally, Countrywide objects because the *Notice of Examination* fails to include a time and location for the examination that meets the requirements of *Rule 2004* or *Fed.R.Civ.P. 45*, rendering the examination inconvenient or unduly burdensome. This objection is moot. It has now been several months since the *Notice of Examination* was served, and any timing issue that may have existed under either the *Bankruptcy Rules* or the *Federal Rules of Civil Procedure* has been cured by the passage of time while these objections were being considered. The Court anticipates that the Parties will be able to agree on a mutually convenient time and place for the examination and is prepared to issue an order setting a time and place upon proper motion if they cannot do so.

In summary, the UST has demonstrated the required good cause for the *Rule 2004* examination at issue here. Furthermore, the difference between what is sought from Countrywide by the UST for purposes of the *Rule 2004* examination is broader in degree than that which is sought through normal discovery channels by the Chapter 13 Trustee and the Debtor in the underlying contested matter in *Hill*. Here what is sought is the examination of Countrywide's general practices throughout the entire bankruptcy case for purpose of the bankruptcy claim calculation process as opposed to calculation of the Countrywide claim only after the bankruptcy is closed. Clearly, the basis for the exam is distinguishable from the discovery sought in the *Hill* contested matter, so the pendency of that contested matter is no impediment to the *Rule 2004* examination sought here. *See n 16, supra.*

43

*Res Judicata*

One, final issue must be addressed by this Opinion. Countrywide argues that even if the UST possesses the general authority to conduct examinations under *Rule 2004*, the principle of *res judicata* precludes her from doing so here. Countrywide notes that a number of the seven, context cases had previously been closed and that in all of the other matters except *Hill* the issues raised by the UST were resolved by prior, final orders. The Court has considered Countrywide's contentions on this point and concludes that *res judicata* does not bar the UST from conducting an examination in this case.

In general, the *res judicata* doctrine has three requirements: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action. See *Post v. Hartford Insurance Co.,* 501 F.3d 154, 169 (3d Cir. 2007). Leaving the first of these requirements aside for the moment, it is apparent that Countrywide's argument founders on the second and third. With respect to the second requirement, Countrywide has provided no evidence that the UST was a party in any of the context cases. In fact, quite to the contrary, Countrywide acknowledges that the UST did not appear in those cases. *Countrywide's Brief* at 12. Nor has it even attempted to argue that the UST should be deemed to be in privity with any other party. The failure to meet the second requirement is in itself a sufficient reason to reject Countrywide's *res judicata* argument.

With respect to the third *res judicata* requirement, the Court is not convinced that Countrywide can establish that the UST's present effort under *Rule 2004* is equivalent to a subsequent suit based on the same cause of action as to any of the context cases. The UST is not

44

even pursuing a "suit" at this point. She is merely exercising a procedural device to secure documents and testimony related to a suspicion (based on events occurring in the context cases) that Countrywide is somehow abusing the bankruptcy system. It may well be that after reviewing the documents and hearing the testimony the UST will conclude that there has been no abuse of the system and the matter will simply be dropped, with no suit of any kind ever being pursued. On the other hand, if the UST concludes otherwise and she does wish to pursue this matter further by seeking relief against Countrywide, she will be required to file a motion for sanctions, adversary proceeding, or some other "contested matter" in the nature of a "suit" at which point Countrywide could raise the *res judicata* issue. Thus, as to the third requirement, Countrywide's argument is at best premature.

Given Countrywide's failure to establish either of the final two requirements for *res judicata* discussed above, this argument could be dismissed without further discussion. For the sake of completeness, however, the Court will turn to a discussion of the specific points raised by Countrywide as to closed cases and the finality of the plan confirmation orders.

As to the "closed case" question, merely because some of the context cases under review here had previously been closed does not prevent the UST from conducting an examination. As discussed elsewhere in this Opinion, all of the context cases had been reopened by the time the UST served her *Notice of Examination. See n. 15, supra.* Even if they had not, the Bankruptcy Code provides a liberal standard for reopening closed cases which includes the right of the UST to petition for reopening. Closed bankruptcy cases are routinely reopened for a variety of reasons. Here, the Court is not willing to prevent the UST from acting in this regard simply because some of the cases had been previously closed at one point. Moreover, the *Hill* case was reopened by the Debtor without

any prompting by the UST or the Chapter 13 Trustee, before the *Notice of Examination* was ever served.

In support of its argument on finality, Countrywide cites *11 U.S.C. §1327* and *In re Szostek,* 886 F.2d 1405, 1408 (3d Cir. 1989) for the proposition that a plan confirmation order is *res judicata* and thus bars the UST from acting in this case. However, the court in *Szostek* merely said that "[u]nder §1327, a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." *Id. See also, In re Mellors,* 372 B.R. 763, 769 (Bankr. W.D.Pa. 2007). In this case, the acts and conduct of Countrywide forming the basis for the UST's *Rule 2004* effort in *Hill* (which is also the subject of the *Motion to Enforce Discharge* filed by the Debtor in that case) all occurred <u>following</u> the entry of the confirmation order in that case. Thus, even assuming that the entry of the confirmation order in *Hill* would be a *res judicata* event for purposes of what had taken place before its entry, pre-existence of the formal confirmation order cannot serve to preclude the UST from acting here.

In *Donaldson v. Bernstein,* 104 F.3d 547 (3d Cir. 1997), the court rejected an argument similar to the one Countrywide is making here, finding that a prior plan confirmation order did not have *res judicata* effect with respect to an adversary proceeding for breach of fiduciary duty brought by a Chapter 7 Trustee against the debtor's two principals. The *Donaldson* court distinguished *Szostek* because the alleged liability of the principals was not based on pre-confirmation actions, but rather on post-confirmation failures to comply with the plan and diversion of business opportunities. In so finding, the court flatly stated that "[c]laims for post-confirmation acts are not barred by the res judicata effect of the confirmation order." 104 F.3d at 555. Similarly here, because

46

the acts of Countrywide that triggered the UST's *Notice of Examination* in *Hill* took place after the confirmation order was entered, the UST is not prevented by *res judicata* from conducting the examination.[23]

The *Hill* case represents the most clear-cut instance among the context cases where the UST served her *Notice of Examination* of an ongoing and unresolved matter. Thus, there can be no doubt that the "case or proceeding" requirement of *Section 307* is met as to *Hill* and no doubt that *res judicata* presents no impediment.

Likewise, there is no dispute that the request for documentation in Categories 1-4 accompanying the *Notice of Examination* in each of the context cases is identical. Furthermore, this information has previously been provided in the underlying, contested matter continuing to pend in the *Hill* case. It is apparent that the UST can obtain the very same information by pursuing the document production and examination solely in the *Hill* case as she could if all of the context cases were to similarly proceed. As such, it makes little sense to risk the confusion and potential "clouding" of legal issues that will arise if all of the context cases do proceed when that can be easily avoided. For this reason it is appropriate that the *Rule 2004* examinations and accompanying requests for production contained in the respective *Subpoenas* for all the context cases, but for the *Hill* case, be stayed until further order.

As noted, it was the Debtor, not the UST, who opened the *Hill* case to allow for hearing on the Debtor's *Motion to Enforce Discharge Injunction*. This event occurred well before

---

[23] The same analysis applies with respect to any possible effect of the discharge order since all of Countrywide's actions in question took place after the entry of that order as well.

the UST filed her *Notices of Examination* in the seven, context cases. By staying the other six, context cases, Countrywide's objection going to the authority of the UST to open previously closed cases is rendered moot. Similarly, the defense of *res judicata* is obviated by allowing the *Rule 2004* examination in *Hill* to proceed unabated since no dispute exists that all of the complained of UST conduct post-dates the *Hill* confirmation order. Therefore, such conduct is irrelevant to the defense of *res judicata* rendering the defense moot as it pertains to *Hill*. Since the scope of the examination in all seven context cases is identical, the underlying purpose for the UST in seeking a *Rule 2004* examination in those cases is not frustrated and further duplicative filings and proceedings are avoided.

Finally, because of the "common thread" among the context cases, it is appropriate for Countrywide to produce the documents requested by document Categories 5-12 in each of the stayed, six, context cases under the "umbrella" of the *Rule 2004* examination to be conducted in the *Hill* case. Although evidence of other acts pursuant to *Fed.R.Evid. 404(b)* may not be admissible as proof of the character of a person, or in this case a corporate entity, in order to show action in conformity therewith such conduct is admissible for other purposes such as demonstrating intent, preparation, plan or absence of mistake. Also, pursuant to *Fed.R.Evid. 406* proof of the routine practice of an organization is relevant to show that the conduct of the organization on a particular occasion was in conformity with the routine practice.

Thus, even though except for *Hill* the context cases will be stayed, under traditional notions of discovery pursuant to *F.R.C.P. 26(b)(1),*[24] evidence of how Countrywide acted in

---

[24]     That is, the scope of discovery includes any matter relevant to a pending claim or reasonably calculated to lead to discovery of admissible evidence.

48

connection with the Debtors in those stayed cases may be relevant in *Hill* thereby providing a basis

for the UST to obtain that very information in *Hill. See also Fed.R.Evid. 401.* Since the scope of the

examination is so much broader for *Rule 2004* purposes (i.e., a "fishing expedition") discovery that

falls within the traditional scope of litigation discovery and is not otherwise offensive to the *Federal*

*Rules of Civil Procedure,* is appropriate in this case. Furthermore, because the context cases other

than *Hill* are being stayed, the Court need not consider whether the principle of *res judicata* prevents

the UST from conducting *Rule 2004* examinations in any other of those cases.

### *CONCLUSION*

Pursuant to *11 U.S.C. §307,* the UST, as a party in interest, possesses the authority to

conduct examinations and require the production of documents pursuant to *Fed.R.Bankr.P. 2004*.

However, that right is not unqualified. In recognition of the potential for abuse of this power, if the

party to be examined properly objects, the UST must demonstrate the appropriate "good cause"

before she will be allowed to proceed, with the level of good cause evaluated on a sliding scale that

requires more justification as the level of intrusiveness increases. The UST must also show that the

scope of the proposed discovery fits within that which is allowed by *Rule 2004*.

In this case the Court specifically finds that the UST has met her burden of good cause

and that the documents and examination contemplated by the *Notice of Examination* and *Subpoena*

fit within the parameters of *Rule 2004* because they relate to the financial condition and liabilities of

the debtors and to matters that may affect the administration of the Debtors' estates. The Court also

finds that the UST has shown a common thread among the seven context cases in that all of them

involve questions as to Countrywide's calculation of its claims against debtors in various stages of

the bankruptcy process, including post-discharge.

Finally, for the sake of administrative convenience and to avoid any potential *res judicata* issues, the Court will stay the *Notice of Examination* and *Subpoena* in all context cases except *In re Hill*, Case No. 01-22574-JAD.  In that case, the Court will direct Countrywide to produce documents in Categories 5-12 as to each of the Debtors in the context cases and will direct Countrywide to make a witness or witnesses available to be examined on the topics identified by the UST.

An appropriate Order will be issued.

Dated: April 1, 2008

Thomas P. Agresti
United States Bankruptcy Judge

Case Administrator to serve:
Thomas A. Connop. Esq.
Dorothy A. Davis, Esq.
Leonard J. DePasquale, Esq.
Norma Hildenbrand, Esq.
David W. Ross, Esq.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In Re:

| | | |
|---|---|---|
| COUNTRYWIDE HOME LOANS, INC., | : | Misc. No. 07-00204 TPA |
| f/k/a COUNTRYWIDE FUNDING CORP., | : | Chapter 13 |
| | : | |
| | : | Related to Document Nos. 12 & 13 |
| | : | |

## **ORDER**

The United States Trustee ("UST") having filed a *Notice of Examination*, together with an attached *Subpoena Duces Tecum* at Document No. 6 and Countrywide Home Loans, Inc. ("Countrywide") having filed an *Objection to Notices of Examination* at Document No. 12 and a *Motion to Quash Notices of Examination* at Document No. 13, in response to which the UST filed a *Response to Objection to Notice of Examination* at Document No. 15 and an *Objection to Motion to Quash* at Document No. 16, and the Court having considered the Parties' briefs and oral arguments as to all these matters,

*AND NOW*, this *1st* day of *April, 2008*, for the reasons as set forth in the foregoing *Memorandum Opinion*, it is hereby *ORDERED, ADJUDGED and DECREED* as follows:

(1)     The United States Trustee ("UST") having notified the Court that for administrative purposes she was withdrawing the *Notice of Examination* and *Subpoena Duces Tecum* from three of the cases previously consolidated under this Miscellaneous Case Number, to wit, the cases of *Ramsey* (Case No. 01-31062-JAD), *Ennis* (Case No. 05-20772-TPA) and *Roberts* (Case No.

1

05-25324-TPA), the *Notices of Examination* and *Subpoenas Duces Tecum* previously served on

Countrywide Home Loans, Inc. ("Countrywide") in those cases are ***DISMISSED*** and said cases are

***DECONSOLIDATED*** from this proceeding for all purposes.

(2)      Countrywide's *Motion to Quash Notices of Examination* is ***DENIED*** and the

UST's *Objection to Motion to Quash* is therefore ***DENIED*** as moot.

(3)      The UST having withdrawn Categories 1- 4 of the documents in the *Subpoenas*

*Duces Tecum* in all of the remaining consolidated cases in light of Countrywide's voluntary

agreement to produce the identical documents in connection with a proceeding in the consolidated

case of *In re Hill,* Case No. 01-22574, all *Objections* as to those Categories by Countrywide are

***DENIED*** as moot.

(4)      All further proceedings as to the *Notices of Examination* and *Subpoenas Duces*

*Tecum* in the consolidated cases of *Benvenuto* (Case No. 02-20946-JKF), *Stemple* (Case No. 03-

11792-WWB), *Karleski* (Case No. 04-31355-JKF), *Bock* (Case No. 04-32812-BM), *Olbeter* (Case

No. 04-33361-JKF), and *Topper* (Case No. 05-20772-TPA) are hereby ***STAYED*** pending further

Order of Court.

(5)      All of Countrywide's *Objections* to Categories 5-12 of the documents in the

*Subpoenas Duces Tecum* are ***DENIED.***

(6)      ***On or before April 15, 2008***, pursuant to the *Notice of Examination* and

*Subpoena Duces Tecum* issued in *In re Hill*, Case No. 01-22574, Countrywide shall provide the UST

with all items responsive to Categories 5-12 as to each of the remaining context cases, including the

2

six, consolidated cases stayed pursuant to this Order to the extent it has not already done so pursuant

to its voluntary agreement in the pending matter known as *In Re Selected Cases in Which the Chapter*

*13 Trustee Seeks Relief Against Countrywide Home Loans, Inc./fka Countrywide Funding Corp.* ,

Misc. No. 07-00203

      (7)    In *Hill*, the UST and Countrywide shall confer in good faith to schedule one

or more *Fed.R.Bankr.P. 2004* examinations of a Countrywide designated representative(s) within a

reasonable time and a convenient place within this District to cover the topics of examination as

identified in the *Notice of Examination* and *Subpoena Duces Tecum,* and as limited to Chapter 7 and

Chapter 13 bankruptcy cases.

Thomas P. Agresti
United States Bankruptcy Judge

Case Administrator to serve:
Thomas A. Connop. Esq.
Dorothy A. Davis, Esq.
Leonard J. DePasquale, Esq.
Norma Hildenbrand, Esq.
David W. Ross, Esq.

3

## APPENDIX "A"

Exhibit "A" to the *Subpoena* identifies the following documents to be produced by Countrywide:

1.       All documents evidencing, relating or referring to, or concerning any policy or procedure, written or otherwise published, regarding:
   a.       The protocol for <u>receiving</u> payments made to Countrywide by or on behalf of debtors in bankruptcy cases; and
   b.       The protocol for <u>recording</u> payments that are received by Countrywide, from or on behalf of debtors in bankruptcy cases; and
   c.       The protocol for <u>handling and/or internal processing</u> of payments made to Countrywide by or on behalf of debtors in bankruptcy cases; and
   e. [sic]    The protocol for <u>accounting and applying</u> payments made to Countrywide by or on behalf of debtors in bankruptcy cases.
2..      All documents evidencing, relating or referring to, or concerning any policy or procedure, written or otherwise published, regarding Countrywide's drafting, verifying and filing of proofs of claim in bankruptcy cases.
3.       All documents evidencing, relating or referring to, or concerning any policy or procedure for Countrywide to collect on pre-petition or post-petition debts or claims from debtors in bankruptcy cases, including but not limited to policies or procedures regarding communications or correspondence with debtors in pending bankruptcy cases.
4.       All documents evidencing, relating or referring to, or concerning any policy or procedure, written or otherwise published, regarding the filing, by or on behalf of Countrywide, of Motions for Relief from the Automatic Stay in bankruptcy cases.
5.       A copy of the note and mortgage evidencing the secured status of the mortgage of the Debtors.
6.       All documents evidencing, relating to, or referring to the payment history of the Debtors before and after the bankruptcy case petition date.
7.       All documents evidencing, relating to, or referring to the preparation of and/or the support for the Proofs of Claim filed by or on behalf of Countrywide against the Debtors.
8.       All documents supporting the computation of the amounts reflected in the Proofs of Claim filed by or on behalf of Countrywide for the Debtors, including but not limited to the principal amount of the claim; the total arrearage claimed; the post-petition amounts claimed; the monthly payment amount; and the interest rate.
9..      All documents evidencing, relating to, or referring to all internal and external communications relating to the mortgage of the Debtors.
10.      All documents evidencing, relating to, or referring to any attempt by Countrywide to collect on its debt from the Debtors.
11.      All documents evidencing, relating to, or referring to Countrywide's communication with the Debtors in the above-captioned case before and after the Petition Date.
12.      All documents relating to:
   a.       The <u>receipt</u> of payments made to Countrywide by or on behalf of the Debtors; and
   b.       The <u>recordation</u> of payments that are received by Countrywide, from or on behalf of Debtors; and
   c.       The <u>handling and/or internal processing</u> of payments made to Countrywide by or on behalf of Debtors; and
   e.[sic]    The <u>accounting and application</u> of payments made to Countrywide by or on behalf of Debtors.
   (emphasis in original)

## APPENDIX "B"

Exhibit "B" to the *Subpoena* lists the following topics for examination of Countrywide:

1.       [Countrywide] policies and procedures regarding application of payments on accounts of customers that have filed bankruptcy under Title 11 of the United States Code under chapters 7 and 13.
2.       Countrywide's policies and procedures for filing proofs of claim in bankruptcy cases of customers in chapters 7 and 13.
3.       Countrywide's policies and procedures for filing Motions to Lift the Automatic Stay in bankruptcy cases filed in chapters 7 and 13.
4.       Countrywide's policies and procedures for collection on accounts of customers that have filed bankruptcy under Chapters 7 and 13.
5.       Countrywide's policies and procedures for the treatment of mortgage arrearages for customers that have filed bankruptcy under Chapters 7 and 13 in calculating pre-petition amounts and the applications of post-petition payments.
6.       Countrywide's policies and procedures regarding calculation of escrow accounts and disbursements from escrow accounts.
7.       Countrywide's format or media used for the storage of customer records and the location of the records of customers who have filed bankruptcy under Chapters 7 and 13.
8.       Handbooks, computer files and any other media materials for the training of employees of Countrywide instructing them on how to analyze accounts, apply payments, disburse funds and satisfy or settle the debts of customers that have filed bankruptcy under Chapters 7 and 13.
9.       All documents requested in Exhibit "A" to the subpoena.