FILED
2008 MAY 2 P 4:49
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In Re:

COUNTRYWIDE HOME LOANS, INC.,    :        Misc. No. 07-00204 TPA
f/k/a COUNTRYWIDE FUNDING CORP.  :        Chapter 13
                                 :
                                 :        Related to Document Nos. 72, 89

*Appearances*:        Thomas A. Connop, Esq., for Countrywide
                      Dorothy A. Davis, Esq., for Countrywide
                      T. Patrick Tinker, Esq., for the UST
                      Joseph Sisca, Esq., for the UST

## <u>*MEMORANDUM OPINION*</u>

Presently before the Court are a ***Motion for Stay Pending Appeal Pursuant to Fed.R.Bankr.P. 8005*** ("Stay Motion" ) (Document No.72) filed by Countrywide Home Loans, Inc. ("Countrywide") and a ***Response in Opposition to Countrywide Home Loans, Inc.'s Emergency Motion for Stay Pending Appeal*** ("Response") (Document No.89) filed by the United States Trustee ("UST").  For the reasons that follow, the Court will deny the *Stay Motion.*[1]

---

[1] The Court's jurisdiction to hear and determine the *Stay Motion* arises under *28 U.S.C. §§1334* and *157*.  This is a core matter pursuant to *28 U.S.C. §157(b)(2)(A)*.  Pursuant to *Fed.R.Bankr.P. 8005*, a motion for stay pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to *Fed.R.Bankr.P. 7052* which is made applicable to contested matters by *Fed.R.Bankr.P. 9014*.

### BACKGROUND

*Relevant Procedural History*

On April 1, 2008, the Court issued a Memorandum Opinion and Order concerning subpoenas duces tecum and *Rule 2004* exam notices that the UST had served on Countrywide in 10 (subsequently reduced to seven) "context cases," all of which were consolidated under this docket number. (Document No. 64).[2]  See *In re Countrywide Home Loans, Inc.,* __ B.R. __, 2008 WL 868041 (Bankr. W.D. Pa. 2008). The Court denied Countrywide's Motion to Quash the examination notices and denied Countrywide's objections to Categories 5-12 of the documents identified in the subpoenas. (Countrywide's objections to documents in Categories 1-4 became moot when Countrywide voluntarily agreed to turn over the same materials in connection with a pending Motion to Enforce Discharge in one of the context cases, *In re Sharon Hill ,* Case No. 01-22574, in which the UST is participating, though not as a formal party). For simplicity and to avoid any potential issues related to *res judicata* and the reopening of closed cases, the Court stayed proceedings in six of the context cases and directed the subpoena and exam to proceed in the seventh case, *Hill*. The April 1, 2008 Order directed Countrywide to produce the documents by April 15, 2008 and directed the Parties to confer in good faith to schedule the *Rule 2004* exam(s).

On April 11, 2008, Countrywide filed a *Notice of Appeal* of the April 1, 2008 Order ("April 1st Order") (Document No. 66), as well as a *Motion for Leave to Appeal Filed Subject to Its*

---

[2] This opinion will assume familiarity with the April 1, 2008 Memorandum Opinion and Order. Reference should be made to it for a more detailed history of the case and for a description of the documents being sought by the UST and the areas of inquiry for the *Rule 2004* examination which the UST seeks to take.

*Notice of Appeal* ("*Appeal Motion*") (Document No. 68) in the event the Order is otherwise deemed

not to be a final appealable order.  Pursuant to *28 U.S.C. §158(a)(3)* and *Fed.R.Bankr.P. 8003(b)*,

it is the District Court, rather than this Court, which will decide the *Appeal Motion*.

On April 14, 2008, Countrywide filed the *Stay Motion* currently at issue. On April

15, 2008 an *Agreed Motion for Temporary Stay Pending Appeal* (Document No. 75) was filed by

Countrywide indicating that the UST had agreed to a temporary stay of the *April 1st Order* through

April 29, 2008, so as to allow the Court time to consider the *Stay Motion*. On April 16, 2008, the

Court entered an order granting a temporary stay until April 29, 2008 (Document No. 79).  On April

21, 2008, the Court entered an order enlarging the UST's time to file an answer to the *Appeal

Motion* to May 5, 2008 (Document No. 88).

Oral argument on the *Stay Motion* was held on April 23, 2008 and both sides were

given a full opportunity to present their positions.  The Court indicated that the previously agreed

upon temporary stay should be honored by the UST until the Court issued its decision on the *Stay

Motion* to which the UST agreed without the need for entry of an order to that effect.

### *DISCUSSION*

Both sides agree that the Court must consider four factors when ruling on the *Stay

Motion*: (1) whether Countrywide is likely to succeed on the merits of the appeal; (2) whether

Countrywide will suffer irreparable injury if a stay is not granted; (3) whether a stay would

substantially harm other parties in the litigation; and, (4) whether a stay is in the public interest. *See

Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3[d] Cir. 1991), *In re*

3

*S.A. Holdings Co. L.L.C.,* 2007 WL 1598113 *1 (D.N.J. 2007), *In re Cujas,* 376 B.R. 480, 485

(Bankr. E.D. Pa. 2007). As the party seeking a stay, Countrywide bears the burden of proof on these

factors by a preponderance of the evidence. *See, e.g.*, *In re Wire Rope Corp. of Am., Inc.,* 302 B.R.

646, 648 (Bankr. W.D. Mo. 2003), *In re Level Propane Gases, Inc.*, 304 B.R. 775, 777 (Bankr. N.D.

Ohio 2004), *In re Texas Health Enters., Inc.*, 255 B.R. 185, 187 (Bankr. E.D. Tex. 2000), *In re*

*Eastman Kodak Co. v. Bayer Corp.*, 2005 WL 3090985 *1 (S.D.N.Y. 2005).

While the stay factors themselves are well-established, there is not a uniformity of

judicial opinion as to what test to apply when deciding whether to grant a stay. Some courts hold

that a movant's failure to satisfy any one of the four factors will defeat a motion to stay. *See, e.g.,*

*In re Blackwell*, 162 B.R. 117 (E.D. Pa. 1993), *In re S.N.A, Nut Co.,* 1996 WL 31155 (N.D. Ill.

1996). However, other courts stress a more flexible overall "balancing" of all the factors, so that

a movant's failure to demonstrate one or more of the factors is not necessarily fatal to the stay

request. *See, e.g.*, *In re Bankr. Appeal of Allegheny Health, Educ. & Research Found.,* 252 B.R. 309,

321 (W.D. Pa. 1999). The Third Circuit has stressed that a decision on a motion for stay should

reflect the "individualized considerations relevant to the case at hand." *Republic of Philippines*, 949

F.2d at 658. In light of this direction, the Court concludes that the balancing approach represents

the better view and adopts it in analyzing Countrywide's *Stay Motion*. The Court now turns to a

review of the four stay factors.

(1) *Likelihood of Success on the Merits*

As is true with the overall test for a stay, courts have taken several approaches with

respect to this particular factor. Some courts have simply indicated that this factor requires a focus

on the strength of the case the movant will be able to present on appeal.  *See, e.g.*, *In re Polaroid Corp.,* 2004 WL 253477 *1 (D. Del. 2004).  Taking this approach does put a court in the somewhat awkward, though not impossible, position of trying to objectively assess the likelihood that its ruling will be upheld on appeal.  Other courts avoid this self-assessment difficulty by instead focusing on whether the movant seeks to raise issues on appeal that are substantial, serious, and doubtful so as to make them fair ground for litigation.  *See, e.g.*, *In re Lickman,* 301 B.R. 739, 743 (Bankr. M.D. Fla. 2003).  Finally, a few courts have adopted a "sliding scale" measure under which the movant's burden of showing a likelihood of success will vary depending on the "balance of hardships" the parties will suffer if a stay is not granted.  *Cujas*, 376 B.R. at 486. In other words, under this view if the balance of harm tips decidedly to the movant, then the movant need not show as strong a likelihood of success on the merits as when the balance is more even, or in the respondent's favor. *Id.*

The Court sees some merit in all of these approaches and does not view them as necessarily being mutually exclusive in application.  Rather, they are different ways of looking at the same thing and all may be brought to bear in reaching an overall conclusion as to whether Countrywide has met its burden as to this factor. With that in mind, the Court turns now to a review of the specifics of the present case as they relate to Countrywide's likelihood of success on appeal.

As an initial matter, it is important to be clear exactly what Countrywide intends to raise as issues on appeal.  The issues are stated by Countrywide as follows:

> a.    Whether the Bankruptcy Court has subject matter jurisdiction to authorize an examination by the United States Trustee ("UST") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure when there is no connection between the proposed examination and any effect on a debtor's estate.

5

b.      Whether the Bankruptcy Court erred in holding that the UST is a "party in interest" for the purposes of Rule 2004 of the Federal Rules of Bankruptcy Procedure.

c.      Whether the Bankruptcy Court erred in holding that the UST has the power to take an examination pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure in the absence of a contested matter.

d.      Whether the Bankruptcy Court erred in finding that *11 U.S.C. §307* does not require that there be a contested matter for the UST to appear and be heard.

*See Statement of Issues on Appeal,* Document No. 86 at 3.

These four issues represent the "universe" of what Countrywide seeks to present for appellate review. *See, e.g., In re Columbia Gas Systems, Inc.*, 146 B.R. 106, 110 n. 2 (D.Del. 1992) (referencing cases for the proposition that issues not included in the appellant's statement of issues under *Fed.R.Bankr.P. 8006* are waived on appeal).  The Court, while striving to remain as detached and objective as possible, finds little in these four, narrowly focused issues to suggest that Countrywide is likely to succeed on appeal.  This is particularly true when the issues are considered in context, i.e., that this Court's *April 1ˢᵗ Order* will most likely be reviewed on appeal under a deferential abuse of discretion standard.  *See, e.g.*, *In re Dinublio,* 177 B.R. 932, 939 (E.D. Cal. 1993), *In re Metiom, Inc*., 318 B.R. 263, 267 (S.D. N.Y. 2004).

The first issue raised by Countrywide questions whether it was within this Court's subject matter jurisdiction to authorize the *Rule 2004* examination.  While it is certainly possible that the Court erred in permitting the UST to go forward with an examination in this case, it is frankly puzzling and a bit astonishing that the Court's subject matter jurisdiction to even make that decision

6

would be called into question.[3]  *28 U.S.C. §157(b)(1)* provides that bankruptcy judges may hear and

determine all cases under *Title 11*, and *Fed.R.Bankr.P. 2004(a)* provides that "[O]n motion of any

party in interest, <u>the court</u> may order the examination of any entity" (emphasis added).  The Court

concludes there is little likelihood that Countrywide will succeed on this issue.

The second issue presents a closer question.[4]  Based on arguments by the Parties, and

its own research, the Court acknowledges that the term "party in interest" is not used with perfect

consistency throughout the Bankruptcy Code and Bankruptcy Rules.  After carefully considering

the question this Court concluded that the UST was a party in interest under Rule 2004.  *See In re*

*Countrywide Home Loans, Inc*., 2008 WL 868041 * 11-12.  However, in recognition that this issue

is one on which reasonable minds may differ, the Court finds that Countrywide has at least some

chance of success on appeal as to it.

The third and fourth issues on appeal are best considered together since both posit

that the existence of a "contested matter" is a necessary condition for the UST to act, one pursuant

to *Rule 2004* and the other pursuant to *11 U.S.C. §307*.  As appellate issues go, these two are pretty

narrowly-drawn, and the Court concludes that Countrywide has shown little likelihood of success

on them.  As to *Rule 2004*, nothing in that Rule indicates that examinations thereunder are limited

to the setting of a contested matter.  At oral argument on the *Stay Motion,* Counsel for Countrywide

---

[3]    The Court realizes that its subject matter jurisdiction over a particular matter may be questioned at any time
during the proceedings.  The first time the Court encountered the issue in the context of this case was when Countrywide raised it
in its *Notice of Appeal.*

[4]    It is interesting to note that the issue of whether the UST qualifies as a "party in interest" under *Rule 2004* was
raised not by Countrywide, but rather *sua sponte* by the Court at the February 28, 2008 oral argument.  The Court then directed the
parties to brief the question (Order of February 29, 2008 at ¶4, Document No. 53) and they did so (Document Nos. 61, 62).  For
purposes of the *Stay Motion* the Court will assume this issue has been preserved for appeal by Countrywide.

conceded that *Rule 2004* exams are routinely taken in bankruptcy cases when no contested matter is pending.[5] As to *Section 307*, the statutory language provides that the UST "may raise and may appear and be heard on any issue <u>in any case or proceeding</u>" (emphasis added). The term "case or proceeding" is clearly broader than and encompasses the term "contested matter." *See, e.g.*, *In re Attorneys at Law and Debt Relief Agencies,* 353 B.R. 318, 322-23 (Bankr. S.D. Ga. 2006) ("case" refers to a matter initiated by the filing of a petition seeking relief under the Bankruptcy Code, and "proceeding" refers to everything which happens within the context of a bankruptcy case). It is difficult to see how Countrywide will convince the appellate court that there must be a contested matter before the UST can act.

With the possible exception of the second appellate issue, from a purely "strength of case" aspect, Countrywide has not demonstrated a likelihood of success on appeal. Countrywide does fare better when the focus is shifted to the substantiality and seriousness of the appeal. The Court has no difficulty concluding that the question of the nature and extent of the UST's power to act as a watchdog of the bankruptcy system, and to conduct "discovery" in connection therewith,

---

[5]    Countrywide has another obstacle to success on the third issue it has raised for appeal because the premise on which that issue rests is completely at odds with the position Countrywide had previously taken with this Court. More specifically, Countrywide previously argued to the Court that the UST could not conduct a *Rule 2004* exam within the context of a contested matter or an adversary proceeding because in those settings any discovery would have to be done through the "normal" channel provided by *Fed.R.Civ.P. 26-36.* (incorporated into bankruptcy proceedings by *Fed.R.Bankr.P. 7026-7036* and *9014(c))*. *See In re Countrywide Home Loans, Inc.*, 2008 WL 868041 *12, n.16. For Countrywide to now raise as an issue that this Court erred by holding that the UST can take a *Rule 2004* exam "in the absence of a contested matter" is logically inconsistent with Countrywide's prior position.

is an important one.[6]  Depending on how that question is answered on appeal, it will make a great

deal of difference not only in this case, but in others in which the UST may see a reason to act.  The

Court is also sensitive to the potentially intrusive consequences of its decision.  For these reasons,

the seriousness of the appeal would seem to favor a stay.

The last item for consideration in connection with this first factor is whether the

balance of hardships is such that it should be taken into account when this factor is analyzed.  The

actual "hardships" the Parties may face if a stay is or is not granted will be discussed later in this

opinion.  It will suffice for now to say that there does not seem to be a decidedly tilted balance of

hardship one way or the other.  Therefore, the Court will not need to employ a sliding scale

measurement, as was done for example in *Cujas,* to vary what would otherwise be the standard by

which Countrywide's likelihood of success will be measured.

To sum up the review of this first factor, on balance, Countrywide has not

demonstrated a strong likelihood of success on appeal even though it has identified a serious and

substantial question to present to the appellate court.

## (2) *Irreparable Injury to Countrywide*

In the *Stay Motion* Countrywide argues that it will be irreparably harmed in the

absence of a stay because the UST's investigation will be "costly and intrusive" and because the

---

[6]        Based on the issues for appeal as framed by Countrywide, the Court has serious doubts about whether
Countrywide has preserved for appeal the question of the UST's power, in the broad sense, as the Court portrays it here.  For purposes
of appeal, nowhere does Countrywide simply phrase the issue as to whether or not the UST possesses the power pursuant to *11 U.S.C.
§307* to schedule and conduct a *Rule 2004* exam which was the central focus of Countrywide's objections in the underlying matter.
Nevertheless, for purposes of this analysis, the Court will assume the "broad issue" has been preserved.

"cost, expense and invasion of Countrywide's private business practices by a government agency

acting beyond the scope of its powers as a self-appointed investigator cannot be undone once it has

started." *Stay Motion* at ¶14.  To the extent that this is a complaint about cost and expense, this

Court can summarily conclude that it is an insufficient basis to impose a stay.  It has long been

recognized that mere litigation expense, even if substantial and unrecoupable, does not constitute

irreparable injury.  *See, e.g., Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24

(1974).[7]  Thus, Countrywide's argument as to irreparable injury appears to be reduced to simply

having to undergo what it considers an intrusive and invasive "investigation" by a government

agency which Countrywide believes to be acting beyond its statutory powers.

        In analyzing the potential for any irreparable injury that Countrywide may suffer if

its *Stay Motion* is denied, it is first important to be clear on the current status of this matter.  It

appears that many of the activities contemplated by the Court's *April 1st Order* have already been

completed.  Countrywide has already turned over approximately 6600 pages of documents to the

UST.  These are related to the Countrywide policies and procedures described in Categories 1-4 of

the document requests, and presumably, the individual loan history, Categories 5-12, for the Debtor

in the *Hill* case.  Furthermore, the UST has already examined some Countrywide witnesses with

respect to the policies and procedures.  At the oral argument on the *Stay Motion*, counsel for the

UST indicated that the only documents remaining to be turned over by Countrywide are the

individual loan histories of the Debtors in the other six context cases and that the scope of the

remaining *Rule 2004* exam that the UST seeks to conduct would be limited to those materials and

_____

        [7]        Even if such a consideration were relevant, Countrywide has failed to offer any record proof to support such a
finding.

10

an exploration of whether there is any thread of potential wrongdoing by Countrywide among all of the context cases as outlined in the April 1, 2008 Memorandum Opinion.

In other words, a good part of the "discovery" which formed the backdrop for the Court's decision, including the part that Countrywide had initially argued would be most intrusive, has already occurred and would not be undone by a stay.[8]  A stay would only prevent Countrywide from having to turn over the loan histories of document Categories 5-12 in the other six context cases and to produce one or more witnesses to be examined about those documents and any potential thread of wrongdoing.  In these circumstances, Countrywide is only able to show a minimal level of irreparable harm if the stay is not granted.

Countrywide cannot have a high expectation of privacy interest in the documents yet to be produced.  These relate only to the loan histories of six Debtors, each of which has signed a document consenting to the release of their loan histories to the UST.  These are not the type of confidential or trade secret documents that Countrywide might reasonably expect could be shielded from outside review.  Moreover, these are just the type of documents that would routinely be requested and turned over by litigants involved in a dispute as to the amount owed on a loan. In fact, the Court has previously noted that the loan histories for these other cases would be discoverable in the *Hill* case pursuant to *Fed.R.Evid. 404(b)* and *406* to show intent, preparation, plan, absence of mistake, or conduct in conformity with the routine practice of Countrywide.  *See In re*

---

[8]     It needs to be reiterated that Countrywide voluntarily agreed to turn over the documents in Categories 1-4. Generally speaking, those are the documents relating to Countrywide's policies and procedures for dealing with bankruptcy cases. Prior to agreeing to the voluntary turnover of the documents, they were the focal point of Countrywide's argument as to the intrusiveness of the UST's inquiry.  Not only have these documents already been produced, Counsel for the UST represented to the Court at the oral argument that Countrywide witnesses have already been examined about the policies, apparently with no objection by Countrywide.

*Countrywide Home Loans, Inc.,* 2008 WL 868041 *24.  Thus, even if this Court is found to be
wrong on appeal, it is difficult to see how Countrywide would have been irreparably harmed in the
mean time by having to turn over these documents.

The *Rule 2004* exams that would proceed if the *Stay Motion* is denied could
potentially be somewhat more intrusive, if only because the inherent nature of a witness examination
makes it more burdensome then being required to simply turn over documents.  Even here, however,
it is difficult to see how Countrywide would in any meaningful sense be irreparably harmed if no
stay is granted and this Court is ultimately reversed on appeal.  The subject matter and the scope of
the proposed *Rule 2004* exam is well-defined by the Court's April 1, 2008 Memorandum Opinion
and Order.  At the oral argument, Counsel for the UST confirmed that the only remaining purpose
to be covered in the exam would be the individual Debtor loan histories in the other six context cases
and the common thread of any potential wrongdoing among the context cases.  The Court takes the
word of the UST on that matter and would further note that nothing of record to date would preclude
Countrywide from seeking a protective order if the UST were to try to exceed the permissible scope
of the exam.

At bottom, the ultimate irreparable harm that Countrywide seems to be claiming it
will experience if a stay is not granted is the mere fact of having to produce documents and undergo
an examination that it would have been able to avoid if its position is vindicated on appeal.  That
certainly counts for something although it is highly questionable whether it, alone, can serve as a
sufficient basis for a finding of irreparable injury.  Courts have been sensitive to the potential harm
that could be caused if a litigant is required to turn over privileged or confidential materials pending

12

an appeal challenging a ruling on the protected nature of the materials. *See, e.g.*, *Joint Stock Soc. v. U.D.V. N. Am., Inc.*, 104 F. Supp. 2d 390, 406 (D. Del. 2000) (court would stay order unsealing putatively protected materials to allow defendant to pursue an appeal because once the materials were unsealed any rights or interests defendant was seeking to protect would be lost). However, in the present case, Countrywide does not appear to be arguing that the documents and other information (i.e., testimony) to be disclosed is protected in and of itself because of some privilege or secrecy concern. Rather, it appears Countrywide is only alleging that it is "protected" in the sense that the UST does not have the *authority* to obtain the information. While the issue of the UST's authority is clearly a significant one, under the circumstances of this case, the Court does not believe Countrywide would be irreparably harmed if a stay is not granted.

One final point to consider with regard to this factor is whether irreparable harm can arise because of the possibility that Countrywide's appeal could become "moot" if a stay is not granted. Countrywide did not raise this as an issue in the *Stay Motion* although it did feature prominently as part of the April 23, 2008 oral argument presented by Counsel for Countrywide. In general, the Court does not approve of the practice of raising issues at oral argument that are not even addressed in the corresponding motion or brief of the party. Such a tactic is unfair to opposing counsel and to the Court. Nevertheless, the Court will overlook any issue of waiver or unfairness in this case and examine Countrywide's argument.

Countrywide relied largely on the decision of *In re Cujas*, *supra*, where the court, referring to *In re Adelphia Commc's Corp.*, 361 B.R. 337 (S.D.N.Y. 2007), concluded that upon review of the relevant case law, the majority view holds that "risk of mootness," standing alone,

13

does not constitute irreparable harm while a significant, minority view recognizes that the potential

loss of a party's appellate rights through the mootness doctrine may constitute irreparable harm. *See*

*Cujas*, 376 B.R. at 487. The *Cujas* court elected to adopt the minority view, but with a significant

caveat, stating:

> Thus, in considering the [stay] Motion, I accept the proposition that the
> potential loss of a party's appellate rights through the mootness doctrine
> may constitute irreparable harm. I hasten to add, however, that the existence
> of such harm is no guarantee that an appellant is entitled to a stay pending
> appeal. It is also necessary to go one step further and consider the nature of
> the underlying dispute and the harm that the loss of appellate rights may
> have on the moving party. That harm must then be balanced against the
> potential harm other parties may suffer if the stay is granted.

*Id.*

The Court's initial reaction is that there may be some merit to the minority view as

adopted in *Cujas*. However, there is no need to make a decision whether that same view should be

adopted here because Countrywide's argument founders on a preliminary point, *viz.*, it has not

shown that its appellate rights would be rendered moot if a stay is not granted. Even assuming that

denial of a stay would mean that Countrywide will have turned over the remaining documents and

presented witnesses for examination before its appeal can be heard, that does not mean the appellate

court could not provide relief. In analogous circumstances appellate courts have rejected mootness

arguments because they have noted that if it is determined that the required discovery under review

is found to be unlawful they can still provide a remedy of requiring the return of documents and

possibly issuing a future-use injunction against the use of witness testimony. *See, e.g.*, *In re Grand*

*Jury Investigation,* 445 F.3d 266, 270-73 (3d Cir. 2006) (appeal of order compelling attorney to

produce his notes and to provide testimony was not moot even though attorney had already

complied). These same potential remedies would be available to Countrywide, and thus it cannot

14

show that its appellate rights would be made moot if a stay is not granted.

### (3) *Substantial Harm to Other Parties in the Litigation*

Countrywide argues that neither the Debtors in the context cases nor the UST will suffer substantial harm if a stay is granted.  The Court is inclined to agree with Countrywide on this point.  With respect to the Debtors in the six context cases other than *Hill*, Countrywide correctly points out that in most of the cases the purported misconduct by Countrywide occurred quite some time ago and the Debtors in those cases have either resolved any dispute they had with Countrywide over it or have not pursued it.  As to *Hill*, the Debtor in that case does have an ongoing and unresolved dispute with Countrywide concerning Countrywide's post-discharge activities that is the subject of an Amended Motion to Enforce Discharge filed by that Debtor.  That Motion is the subject of a scheduling order with discovery set to end on May 16, 2008, and a final pre-trial conference set for June 24, 2008.  However, even if the Court were to grant a stay in the present matter, that would not prevent  the parties in *Hill* from proceeding with discovery and with the presentation of the Debtor's case on her Motion.[9]  It thus appears that none of the Debtors would be

---

[9]        Although the UST is not formally a party to the Amended Motion to Enforce Discharge in *Hill*, she along with the Chapter 13 Trustee have been participating in that matter.  Near the end of the status conference held in that case on December 20, 2007 the Court stated it would schedule an evidentiary hearing after a period of discovery, which was to include the UST and the Chapter 13 trustee as participants in discovery. (*See Transcript of Status Conference*, December 20, 2007, at 20, Document).  In regard to this approach, Counsel for Countrywide raised no objection to the effect that the UST or the Chapter 13 Trustee should not be permitted to engage in discovery.  On December 21, 2007, a scheduling order (Document No. 103) was entered confirming that both Trustees were permitted to engage in discovery in *Hill*.  Countrywide never raised any objection to this Order or sought reconsideration of it.  The UST thereafter served discovery requests on Countrywide.  Countrywide provided answers. In late January 2008 Countrywide filed an Amended Motion for Protective Order (Document No. 127)  against the Debtor and the Chapter 13 Trustee, only.  At the hearing on that Motion, Countrywide  noted that it had previously responded to the UST's discovery and the UST was not involved in the Motion. (*See Transcript hearing on Amended Motion for Entry of Protective Order*, February 14, 2008, at 30, Document No. 160).  Later in that same hearing Countrywide made a request to withdraw the Amended Motion for Protective Order because of an agreement it reached with the Debtor and the Chapter 13 Trustee during a recess in the hearing.  The Court granted that request.  A few days later Countrywide filed a Motion for Entry of Consent Order Regarding *Countrywide Home Loans, Inc.'s Motion for Protective Order and Discovery Deadlines* (Document No. 153) which included an acknowledgment that the UST

substantially harmed by the grant of a stay.

The UST claims she will be substantially harmed if a stay is granted because "a stay pending appeal would preclude the United States Trustee from conducting the examination as contemplated by the [April 1, 2008] Order even if the District Court were to affirm the Order." UST's *Response* at ¶17.  It is not readily apparent what the UST means by this, since if she is successful on appeal there would not seem to be anything to preclude the UST from then conducting a *Rule 2004* exam, even if it is after the May 16, 2008 discovery deadline in the *Hill* contested matter, which is not a deadline applicable here.  Perhaps the UST is concerned that the *Hill* contested matter will be completely resolved by the time this appeal is concluded, leaving the UST without a "vehicle" for conducting the *Rule 2004* examination, or perhaps vulnerable to a renewed challenge by Countrywide on grounds of *res judicata* or mootness.  The Court will not presume substantial harm to the UST on the basis of such a speculative possibility.

Additionally, it is significant that any harm that the UST may face if a stay is granted would be largely self-inflicted.  In two separate actions in Florida bankruptcy courts several months ago the UST obtained court orders authorizing essentially unfettered *Rule 2004* exams of Countrywide.  *See In re Del Castillo*, Case No. 07-13601-AJC (Bankr. S.D. Fla. 2007) (Order of November 28, 2007, Document No. 132) and *In re Chadwick*, Case No. 05-37014-PJH (Bankr. S.D.

---

was part of the discovery process in that case.  On February 20, 2008, the Court signed the proposed Consent Order.  It too includes a representation that "discovery will close for all parties, including the UST, on April 16, 2008". (Document No. 154).  (Note: the discovery deadline was subsequently extended to May 16, 2008 at request of the Parties).

The Court has gone through this rather lengthy recitation to make clear its view that Countrywide has consented without objection to the UST's participation in discovery in the *Hill* matter and that the UST's status in that regard represents the law of that case.

Fla. 2005) (Order of December 10, 2007, Document No, 86).[10] The Court understands that

Countrywide attempted to take appeals from those orders, but was rebuffed because the orders in

question were found to be interlocutory.  The Court is unaware of any present impediment to the

UST conducting a *Rule 2004* exam of Countrywide pursuant to the orders in the Florida cases and

made inquiries to Counsel for the UST along those lines at the oral argument on the *Stay Motion*.

Counsel confirmed that the UST has not attempted to conduct exams in the Florida cases and could

only provide some vague legal strategic reason for preferring to lead with an exam in this case rather

than there. That is not a sufficient reason for this Court to conclude that the UST would be

substantially harmed if a stay is granted.


### (4) The Public Interest

The final point for consideration is whether it would be in the public interest to grant

a stay.  This factor does not tip decidedly in either direction.  On the one hand, if Countrywide is

doing anything improperly with respect to its policies and procedures for pursuing claims against

debtors in bankruptcy, it would obviously be in the public interest for that to be determined and

corrected as soon as possible, something that would argue against the grant of a stay.  On the other

hand, it is also clearly in the public interest that a governmental agency, such as the UST, not be

permitted to intrude into the private affairs of a business by overstepping its authority, something

which may counsel in favor of granting a stay while this important matter is decided on appeal.

---

[10]        The existence of these cases was initially brought to the attention of this Court in a brief filed by the UST in this matter (Document No. 31 at 11-12), and  in the reply brief filed by Countrywide (Document No. 34 at 4).  The Court may take judicial notice of the court records from these cases.  *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988), *Total Control, Inc. V. Danaher Corp.*, 359 F.Supp. 2d 380, 383 (E.D. Pa. 2005).

There are thus good arguments on both sides of the "public interest" issue in this case.  Therefore, the Court finds that there will not be a significant difference in the affect on the public interest whether or not a stay is granted.

## *CONCLUSION*

As can be seen from the above discussion, the pertinent factors are mixed at best. As to the first factor, "Likelihood of Success on the Merits", Countrywide has failed to establish that it has a strong likelihood of success on the merits in its appeal of the underlying case.  Nevertheless, the issue that Countrywide seeks to pursue on appeal is a substantial and serious one, and that needs to be taken into account in the Court's overall balancing of the stay factors.  As to the second factor, "Irreparable Harm", Countrywide has failed to show how it would be injured to any significant degree that could not be remedied by a successful appeal even if a stay is not granted.  The cost and expense of complying with the Court's order during the pendency of the appeal is not a relevant consideration.  Although it will be required to produce the loan history files for the six, context cases and testimony in regards to the same, Countrywide has not shown any likelihood that it would lose important appellate rights because of the mootness doctrine in the absence of a stay.

The third factor, "Substantial Harm to Other Parties in Litigation," favors Countrywide's request for a stay because there is no good evidence that either the UST or the Debtors would be harmed in any significant way if a stay was entered.  Finally, the fourth factor, "Public Interest" is essentially a wash.  The public interest is likely to be harmed, albeit only marginally, whether a stay is granted or not.

It can thus be seen that Countrywide has failed to carry its burden with respect to at least two, and possibly three, of the stay factors.  Were this Court to apply the standard that the movant must establish every one of the factors in order to be granted a stay pending appeal, it would be clear that the *Stay Motion* must be denied.  However, as indicated previously, the Court believes that a balancing approach is more appropriate than a somewhat mechanical test.  Thus, even though Countrywide has failed to establish one or more of the stay factors, it is conceivable that a stay could still be warranted if Countrywide can show exceptional merit as to the other factors.  The Court finds the following helpful as a guide to conducting the necessary analysis:

> "[i]n considering whether to grant a stay pending appeal, this court assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public."  Thus, the analysis applied is flexible. The "factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested."  Under weight-based assessments, when the movant is more likely to succeed, the harm required to be shown is less; if success is less likely, then the harm needed must weigh more heavily in the movant's favor.  Therefore, "[w]here the likelihood of success 'is less forceful... a movant would have to make a stronger showing of irreparable harm in order to tip the balance of equity in his favor.'"

*Honeywell Intern., Inc. v. Universal Avionics Systems Corp.*, 397 F. Supp. 2d 537,  548 (D. Del. 2005) (footnotes and citations omitted).

After careful consideration, the Court concludes that the same result is reached when applying the balancing test. Key to the Court's conclusion is Countrywide's failure to demonstrate a likelihood of success on the merits on appeal.  The cases make clear that this factor is of prime importance to the question of whether a stay should be granted, to the point that some courts have referred to this factor as a *sine qua non* of the issuance of a stay pending appeal.  *See, e.g., Long*

19

*John Silver Restaurants, Inc. v. Cole,* 2006 WL 1129403 *1 (D.S.C. 2006).  While the balancing

approach allows a failure to demonstrate a likelihood of success to be overcome if the movant can

nonetheless demonstrate that it has a substantial issue to raise on appeal (as the Court assumes

Countrywide does), that is only true provided the other factors also militate in the movant's favor.

*Honeywell*, 397 F.Supp. 2d at 548. In this case, the other factors clearly do not do so.  Countrywide

has failed to establish that it will be irreparably harmed and has failed to establish that a stay is in

the public interest.  The Court also finds it significant that the substantial issue Countrywide seeks

to raise on appeal will not be lost if a stay is not granted.

       After much thought and careful consideration, for these reasons the Court is

compelled to find that the overall balancing test favors the position of the UST and therefore

concludes that the *Stay Motion* must be denied.  An appropriate order will issue.

Dated: May 2, 2008

_____
Thomas P. Agresti
United States Bankruptcy Judge

Case Administrator to serve:
       Thomas A. Connop, Esq.
       Dorothy A. Davis, Esq.
       T. Patrick Tinker, Esq.
       Joseph Sisca, Esq,
       David W. Ross, Esq.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In Re:

| | | |
|---|---|---|
| COUNTRYWIDE HOME LOANS, INC., | : | Misc. No. 07-00204 TPA |
| f/k/a COUNTRYWIDE FUNDING CORP. | : | Chapter 13 |
| | : | |
| | : | Related to Document Nos. 72, 89 |

**<u>ORDER</u>**

      ***AND NOW***, this ***2nd day of May, 2008,*** for the reasons set forth in the accompanying *Memorandum Opinion*, which includes the Court's findings of fact and conclusion of law pursuant to *Fed.R.Bankr.P. 7052* made applicable to contested matters by *Fed.R.Bankr.P. 9014*,

      It is ***ORDERED, ADJUDGED and DECREED*** that Countrywide Home Loan Inc.'s *Motion for Stay Pending Appeal Pursuant to Fed.R.Bankr.P. 8005* is hereby ***DENIED***.

Thomas P. Agresti
United States Bankruptcy Judge

Court Administrator to Serve:
     Thomas A. Connop, Esq., for Countrywide
     Dorothy A. Davis, Esq., for Countrywide
     T. Patrick Tinker, Esq., for the UST
     Joseph Sisca, Esq., for the UST